16-1290

# United States Court of Appeals for the Federal Circuit

MILO & GABBY LLC, KAREN KELLER,

*Plaintiffs - Appellants*

v.

AMAZON.COM, INC.,

*Defendant - Appellee*

DA FANG SUN, aka Seth L, CHONGQIN WORLD FIRST ELECTRONIC COMMERCE CO., LTD., aka Wotefusi, T. LIU, aka Bin Deal, FAC SYSTEM, aka FAC System LLC, DINGDING ZOU, aka Happy Sunday, QIUMEI ZHANG, aka Hitece, CHARLOTTE XIA, NIMBLE JOY, AMANIALARASHI2165, MONAQO,

*Defendants.*

*Appeal from the U.S. District Court for the Western District of Washington in Case No. 2:13-cv-01932, Judge Ricardo S. Martinez.*

## CORRECTED OPENING BRIEF OF PLAINTIFFS – APPELLANTS

PHILIP P. MANN
TIMOTHY J. BILLICK
MANN LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, Washington 98101
(206) 436-0900

Attorneys for Plaintiffs-Appellants
Milo & Gabby and Karen Keller

JOHN WHITAKER
WHITAKER LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, Washington 98101
206-436-8500

Attorneys for Plaintiffs-Appellants
Milo & Gabby LLC and Karen Keller

March 7, 2016

## CERTIFICATE OF INTEREST

Counsel for Appellants Milo & Gabby LLC and Karen Keller certifies the following:

1. The full name of every party or amicus represented by me is:

   Milo & Gabby LLC and Karen Keller.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   Milo & Gabby LLC and Karen Keller.

3. The parent companies, subsidiaries (except wholly-owned subsidiaries), and affiliates that have issued shares to the public, of the party or amicus represented by me are:

   None.

4. The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   MANN LAW GROUP
   Philip P. Mann
   Timothy J. Billick

   WHITAKER LAW GROUP
   John Whitaker

Dated: March 7, 2016.

Respectfully submitted,

*/s/ John Whitaker*
John Whitaker

# TABLE OF CONTENTS


I. STATEMENT OF RELATED CASES....1

II. APPELLATE JURISDICTIONAL STATEMENT....2

III. STATEMENT OF THE ISSUES....3

IV. STATEMENT OF THE CASE....4

A. Introduction....4

B. The Underlying Dispute....6

C. The Proceedings Below....9

D. The Trial Below....11

V. STATEMENT OF THE RELEVANT FACTS....13

A. Background of Appellants and Associated Intellectual Property....13

B. Background of the Dispute....15

C. Amazon's Actions as a Seller....16

VI. SUMMARY OF THE ARGUMENT....20

VII. ARGUMENTS....22

A. Standard of Review....22

B. Amazon Is A "Seller" Of The Accused Products....22

1. Taking "Legal Title" Is Not Required In Order To Be A "Seller" For The Purpose Of Infringement....24

(a) Consignment Sales....25

(b) Amazon Is "A Person In The Position Of A Seller"....26

(c) "Sale or return" Transactions....27

2. This Court Should Find That Amazon Is A Seller Of The

Accused Products As A Matter Of Law....27

C. Amazon's Liability As The Seller For Patent And Copyright Infringement....29

D. Amazon Has Committed Copyright Infringement....29

1. Amazon Has Already Admitted That The Accused Products Are "Copies" Of Milo & Gabby's Protected Products....31

2. It Is Undisputed That Amazon Stored and Shipped the Accused Products....32

3. Amazon's Own Witness Admitted That Amazon "Distributes" The Accused Products....33

4. Amazon's Distribution Is A "Sale Or Other Transfer Of Ownership"....34

5. The DMCA Safe Harbor Provisions Do Not Apply To The Sale Of Physical Products....35

E. The District Court Erred By Dismissing Milo & Gabby's Passing Off Claim After Being Misled By Amazon....37

1. The District Court's Dismissal....37

2. The Complaint Details The Facts Supporting Milo & Gabby's "Passing Off" Claim....38

(a) The Elements Of Passing Off....39

(b) Milo & Gabby's Complaint Alleged Sufficient Facts To Make Out A Claim of "Passing Off"....40

3. Not Only Was Amazon Put On "Fair Notice", Amazon Admittedly Had "Actual Notice"....41

4. The Attorneys Fees Award Should Be Vacated....43

VIII. CONCLUSION....43

# TABLE OF AUTHORITIES

## TABLE OF CASES

Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009)............22

Harry v. Marchant, 237 F.3d 1315, 1317 (11th Cir. 2001).........................22

Jeff D. v. Otter, 643 f.3d 278 (9th Cir. 2011)............................................22

Casey v. Albertson's Inc., 362 F.3d 1254, 1257 (9th Cir. 2004).................22

Pfaff v. Wells Elecs. Inc., 525 U.S. 55, 67 (1998).......................................24

Pinter v. Dahl, 486 U.S. 622, 642-43 (1988)...............................................24

North Am. Philips Corp. v. American Vending Sales, Inc., 35 F. 3d 1576, 1579-80 (Fed. Cir. 1994)..........................................................................24

Falk v. Brennan, 414 US 190 (1973)...........................................................25

Seaboard Lumber Co. v. U.S., 308 F.3d 1283, 1292 (Fed. Cir. 2002).........27

Pinkham v. Sara Lee Corp., 983 F.2d 824, 828–29 (8th Cir. 1992)...........30

Blue Nile, Inc. v. Ideal Diamond Solutions, Inc., C10-380-TSZ (W.D. Wash. Aug. 3, 2011).....................................................................................30

Foreverendeavor Music, Inc., v. S.M.B., Inc., 701 F.Supp. 791, 793-4 (W.D. Wash. 1988)..............................................................................................30

Harbor Motor Co., Inc. v. Arnell Chevrolet-Geo, Inc., 265 F.3d 638, 643 (7th Cir. 2001)..........................................................................................30

Rogers v. Koons, 777 F. Supp. 1, 2 (S.D. N.Y. 1991).................................30

Hendrickson v. Amazon.com, Inc., 298 F. Supp.2d 914 (C.D. Cal. 2003). .35

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)....................38

Smith v. Montoro, 648 F.2d 602 (9th Cir. 1981)........................................39

Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (2d Cir. 1959) ..................................................................................................................41

J. Josephson, Inc. v. General Tire & Rubber Co., 357 F.Supp. 1047 (S.D.N.Y. 1972)....................41
Bliss v. Gotham Industries, Inc., 316 F.2d 848, 855 (9th Cir. 1963)..........41

## TABLE OF STATUTES

28 U.S.C. § 1338(a)....................2
28 U.S.C. § 1331....................2
28 U.S.C. §1367....................2
28 U.S.C. § 1295(a)(1)....................2
UCC § 9-319....................25
UCC § 2-707A....................26
UCC § 2-326....................27
17 U.S.C. §§ 106....................29
17 U.S.C. § 501....................30
17 U.S.C. § 512....................30
17 USC § 512(c)....................33
17 U.S.C. § 512(c)....................35
17 U.S.C. § 512(c)....................35

## I. STATEMENT OF RELATED CASES

Counsel is unaware of any other appeal in or from the same civil action or proceeding as this matter that was previously before this or any other appellate court.

There are no other cases known to counsel pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## II. APPELLATE JURISDICTIONAL STATEMENT

(a) Jurisdiction in the District Court was based upon 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331 because the action arose under acts of Congress relating to patents and copyrights. Supplemental jurisdiction over the ancillary claims derives from 28 U.S.C. §1367.

(b) This Court's jurisdiction is based on 28 U.S.C. § 1295(a)(1), this being an appeal from a final decision of a District Court in a civil action arising under an Act of Congress relating to patents.

(c) This appeal is timely under Fed. R. App. P. 4. A final judgment was entered by the District Court on November 3, 2015, and an amended final judgment was entered by the District Court on November 4, 2015. A Notice of Appeal to this Court was timely filed on December 1, 2015.

## III. STATEMENT OF THE ISSUES

1. Did the District Court err in holding, as a matter of law, that because Amazon does not take legal title to the products sold through its website, Amazon does not sell, offer for sale or otherwise distribute products within the meaning of the patent, copyright, and Lanham Act statutes.

2. Did the District Court err in holding that the Digital Millenium Copyright Act provides a "safe harbor" against copyright infringement as to *physical goods* distributed from Amazon's "fulfillment centers."

3. Did the District Court err in dismissing Appellant's claim for "palming off," believing, erroneously, that such a claim was not timely raised by Appellants.

4. Did the District Court abuse its discretion in partially awarding attorney's fees to Amazon based on the District Court's clearly erroneous view that "palming off" was not timely raised by Appellants in the proceedings below.

## IV. STATEMENT OF THE CASE

### A. Introduction

The fundamental issues in this case are simple and direct: Does Amazon.com, widely recognized as "the largest Internet-based retailer in the United States," actually sell anything? Does Amazon offer products for sale? Does Amazon distribute products to purchasers?

The District Court below erroneously concluded that Amazon.com does *not* sell products and does *not* even "offer" products for sale. As a result of these conclusions, the District Court held, as a matter of law, that Amazon.com bears no liability whatsoever for products sold through the Amazon.com website that indisputably infringe Appellants' design patents, copyrights and other intellectual property. As a result of these conclusions, Mrs. Keller and Milo & Gabby (hereinafter collectively, "Milo & Gabby") have no choice but to sit back helplessly and watch their business be destroyed while anonymous and unscrupulous overseas "knock-off" artists blatantly copy their products and do so with the eager assistance of Amazon, who provides quick and easy access to the U.S. market.

In response to this sad state of affairs, Amazon and the District Court say essentially, "Sue the foreign manufacturers." The problem, of course, is that these manufacturers are located far overseas, are anonymous fly-by-night fraudsters, and, as a practical matter, are beyond the reach of U.S. courts. As established during the proceedings below, *even Amazon itself* does not know (a) who its suppliers really are, (b) where they are actually located, or (c) where they can actually be found. If Amazon itself cannot find its own "affiliates," how can Milo & Gabby be expected to?

The operative facts in this case are largely undisputed. Amazon provides a forum through which virtually anyone anywhere in the world can set up an account and enter the U.S. market via the Amazon.com website, literally within minutes. Blatantly infringing products were indisputably sold through the Amazon.com website. Pictures of the infringing products were displayed on the Amazon website. Orders for these products were received through the Amazon.com website through customer accounts maintained by Amazon. The infringing products were housed in the United States in warehouses or "fulfillment centers" owned, maintained and operated by Amazon. The infringing products

were placed into boxes clearly marked "Amazon" by Amazon workers, who, in turn, placed these boxes containing the infringing goods with UPS for shipment to purchasers. Amazon, through customer accounts that it, itself, maintains, collected money for the sales through the Amazon.com website. And Amazon, after deducting its share of the proceeds for making the transactions possible, passed on the remainder of these monies to the overseas suppliers who set up sales accounts with Amazon. Despite these largely indisputable facts, the District Court held Amazon does not, and cannot "sell" the infringing products because Amazon never takes "legal title" to them. As will be demonstrated herein, the District Court's improper focus on "legal title" is inconsistent with applicable law and led directly to its improper dismissal of Milo & Gabby's claims.

## B. The Underlying Dispute

Appellant Karen Keller is a trained, experienced and talented product designer residing, with her husband, Steve Keller and four children, in the Seattle area. Over the years, Mrs. Keller has designed a number of successful products, and the Kellers have supported themselves and their family largely through sales of these products.

In late 2004, Mrs. Keller created a series of animal-shaped pillow cases designed and intended to be of appeal to young children. Mrs. Keller applied for and received five U.S. Design Patents and six U.S. copyrights for her unique pillow case designs that are the subject of the underlying dispute. Mrs. Keller and her husband, Steve, then set up Milo & Gabby LLC to bring the new pillowcases to market under the names, “Milo & Gabby” and “Cozy Companions.”

To market and promote the “Cozy Companions” line of animal-shaped pillowcases, the Kellers used photographs of their own younger children resting their heads on the pillowcases. These photographs appear prominently on marketing materials for the “Cozy Companions” pillowcases as well as on packaging for the pillowcases.

For business reasons, the Kellers intended for the “Cozy Companions” pillowcases to be sold at a somewhat high price point and to be sold only through actual brick-and-mortar shops and boutique e-tailer sites. Importantly, the Kellers never intended for the “Cozy Companions” products to be sold through certain Internet websites, such as Amazon.com, that are well-known for selling products at absolute rock-bottom prices.

In mid-2013, the Kellers were shocked to discover that blatant knock-offs of their animal-shaped pillowcases were being offered for sale on the Amazon.com website. To add insult to injury, photographs of the Kellers' own children resting on genuine Milo & Gabby pillowcases were displayed on Amazon.com website and used to promote the knock-off goods. To confirm what they already knew, the Kellers placed orders for the knock-off products using their own Amazon customer account. Sure enough, the products they received proved to be cheap imitations of the genuine Milo & Gabby "Cozy Companion" products.

The knock-off products the Kellers received from Amazon arrived, via UPS, in a box sealed in tape prominently bearing the "Amazon" logo and that clearly came from an Amazon fulfillment center. At trial it was established (and never seriously disputed) that the knock-off products were, in fact, stored in the United States in an Amazon fulfillment center, were placed in the shipping box by Amazon personnel in response to the order received by Amazon, were sealed using the "Amazon" labeled tape by Amazon personnel, and that Amazon personnel created the shipping label affixed to the box and delivered the

box to UPS for shipment. Nor was it disputed that Amazon collected the money paid by the Kellers to purchase the knock-off goods.

At trial, Ms. Keller testified that, shortly after discovery of the knock-off products, she called Amazon several times to complain and left a voice-message expressing her concerns. Although Amazon denied at trial ever receiving the voice-message, the fact remains that Amazon made no effort to remove the knock-off products from its website until several days after the underlying action was filed. Indeed, on at least two occasions the knock-off products re-appeared on the Amazon.com website several weeks and months after the action was filed.[1]

## C. The Proceedings Below

After receiving no relief in response to their phone call to Amazon, Mrs. Keller and Milo & Gabby were forced to sue. On October 24, 2013, Mrs. Keller and Milo & Gabby filed their complaint against Amazon in the Western District of Washington alleging counts for, among other things, (1) patent infringement, (2) copyright infringement, and (3) violations of the Lanham Act.

---

1 To avoid any misunderstanding or unfairness, Amazon did promptly take corrective action after being informed that the knock-off products had re-appeared on the site.

On April 11, 2014, the District Court granted Amazon's motion to dismiss Mrs. Keller and Milo & Gabby's claims for Washington State unfair competition, right of publicity, and trademark counterfeiting as well as their claims for indirect and/or induced infringement. A5. On July 16, 2015, the District Court granted, in part, Amazon's motion for summary judgment. A24. In particular, the District Court dismissed Milo & Gabby's copyright claim in its entirety, finding that "Amazon is not the seller of the alleged infringing products." A33. While acknowledging that Amazon stored the infringing products in its facilities, accepted orders through its website, received monies paid by purchasers, and packaged the products for shipment, the District Court concluded these activities did not constitute sales. The District Court based that conclusion on its finding that "third-party sellers retain full title to and ownership of the inventory sold by the third party." A33.

Based on the District Court's view that Amazon does not "sell" because it does not take title to the sold goods, the District Court also concluded that Milo & Gabby could not base a patent infringement case on actual sales, by Amazon, of the knock-off products. Curiously, the District Court permitted Milo & Gabby's patent infringement case to go

forward on the very narrow, limited question of whether Amazon "offered" the knock-off products for sale.

Finally, the District Court refused to let Milo & Gabby's "palming off" claim go forward based on its entirely erroneous view that Milo & Gabby had not raised that claim earlier. A44. In making this gross error, the District Court simply adopted, without checking, Amazon's unsupported claim that Milo & Gabby hadn't raised "palming off" earlier. However, the billing records of Amazon's counsel clearly indicate that they billed Amazon for research and investigation into the Lanham Act "palming off" claim they later asserted Milo & Gabby never made. Nevertheless, the District Court later awarded Amazon its attorneys fees for this research and investigation.

## D. The Trial Below

Ultimately, the District Court elected to hold a jury trial on the limited question of whether Amazon "offered" the infringing knock-off products for sale. Because the District Court viewed this narrow question as one of law, the Jury would only serve in an advisory role, rather than as the ultimate decider of this question.

Trial was held before a nine person jury between October 26-29, 2015. The District Court informed the Jury that, "The Court has previously determined in this case that certain Third Parties [...] are responsible for providing the products that are accused of infringement. *The Court has also previously determined that Amazon has not sold any of the allegedly infringing products*." A86 (emphasis added). Milo & Gabby was precluded from advancing any arguments that Amazon had, in fact, sold the infringing knock-off products. With their hands thus tied behind their back, Milo & Gabby were forced to try to prove "offers" for sale without being able to point to actual sales as the best evidence that such "offers" occurred.

Ultimately, the Jury answered the questions presented in favor of Amazon, and the District Court accepted the Jury's advisory findings and entered judgment in favor of Amazon. This appeal is a result of the various findings made by the District Court in the case below.

# V. STATEMENT OF THE RELEVANT FACTS

## A. Background of Appellants and Associated Intellectual Property

Plaintiff-Appellant Milo & Gabby ("Milo & Gabby") was founded by Mrs. Karen Keller and Mr. Steven Keller, a husband-and-wife team of product designers. A151. Inspired by their four children and two beloved family pets, they set out to create an adorable line of "Cozy Companion" pillowcases; eight animal-shaped, 100% cotton pillowcases that blend two favorite things of children: stuffed animals and pillows (the "Cozy Companion Products"). *Id.*; A1941-42. The genuine Cozy Companion Products are designed to be hypo-allergenic, washable, high-quality pillowcases for children to transform an ordinary pillow into a stuffed-animal. A1941-42.

To help promote the family-friendly brand of Milo & Gabby, the Kellers used photographs of their children resting on the Cozy Companion Products in the company's advertising. A151; A1951-53. These images and advertisements of the patented Cozy Companion Products were also prominently displayed on Milo & Gabby's website. A166-169; A1952-56.

Milo & Gabby and Mrs. Keller are the owners of all right, title, and interest in the following U.S. Design Patents:

| Patent | Title | Issued |
|---|---|---|
| D520,798 | Dog-Shaped Pillow Case | May 16, 2006 |
| D521,299 | Rabbit-Shaped Pillow Case | May 23, 2006 |
| D521,792 | Cat-Shaped Pillow Case | May 30, 2006 |
| D523,677 | Dinosaur-Shaped Pillow Case | June 27, 2006 |
| D551,889 | Pony-Shaped Pillow Case | October 2, 2007 |

A155; A203-221.

In addition, the actual Cozy Companion Products are themselves protected by copyright registrations as follows:

| Copyright | Title |
|---|---|
| 1-976817132 | Dog-Shaped Pillow Case |
| 1-97905743 | Rabbit-Shaped Pillow Case |
| 1-978660959 | Cat-Shaped Pillow Case |
| 1-976528811 | Dinosaur-Shaped Pillow Case |
| 1-985504482 | Pony-Shaped Pillow Case |
| 1-992407599 | Fish-Shaped Pillow Case |

A155; A222.

Milo & Gabby's website and the images thereon are also protected by other valid U.S. copyrights, and are displayed in association with proper copyright management information, including a proper copyright notice and other information identifying the copyright owner of the several works. A155, A222.

Milo & Gabby designed, sold, and distributed its products to retailers and online "e-tailers" throughout the United States and internationally, with some commercial success. A152. For instance, in 2012, Milo & Gabby entered into an exclusive license arrangement in Asia, and since then the company has made promising gains. *Id.*; see also, A1957-1959. Milo & Gabby's licensee, Petite Elin, sells the Cozy Companion products in South Korea, Japan, and China. A1959. Before the actions of Amazon and others, Milo & Gabby aimed to further expand its operations by entering into license agreements throughout North America. *Id.* However, those efforts were halted when Amazon.com began selling direct knock-off copies of Milo & Gabby's Cozy Companion Products. *Id.* at ¶ 13.

**B. Background of the Dispute**

In or about June 2013, Mrs. Keller saw her Cozy Companion Products being offered for sale by Amazon. A1960-62; A1974. As shown in Exhibits B and C to the complaint (A170-189), Amazon offered and sold knock-off versions of the Cozy Companion Products ("Accused Products") using Milo & Gabby's photographs of the Keller children. A153; see also A1963-72, A1963 ("That is an image of my youngest

daughter on the bunny pillowcase."), A1964 ("That's an image of my son on the dinosaur pillowcase.").

Upon seeing the products on Amazon's website, Mrs. Keller called Amazon's legal department several times and left a voicemail with the company's automated voicemail system. A1973-1975. When the Kellers purchased some of the Accused Products from Amazon, they used Mr. Steve Kellers' Amazon account. A1967; A1976-1981. These products ultimately arrived in Amazon-branded boxes. See, Exhibit D, A190-199; A1976-1981. The Kellers were able to immediately discern that these products were, in fact, knock-off products. A1978.

Throughout this dispute, Amazon maintained that it was not the infringing party. However, when Amazon answered the complaint, it admitted that the Accused Products were shipped from Amazon fulfillment centers. A365, ¶ 21. Amazon later admitted that the infringing products are substantially similar to the designs covered by the Milo & Gabby patents. A86.

## C. Amazon's Actions as a Seller

At trial, Mr. Christopher Poad, Amazon's corporate representative, testified that Amazon acts as a seller in every step of a

transaction. Every product sold by Amazon has a "product detail page," where a description of the goods is provided. A2132. This description is subject to rigorous oversight and control by Amazon. Amazon also displays a price of the goods it hosts on its site. See, e.g., A2159. Indeed, Amazon's counsel, during discussion of jury instructions, further admitted that the content provided on the product listing pages contain all necessary detail to constitute an "offer" for purposes of contract law. A2194, 16-22 ("We're not debating that the product listing pages communicate that those are an offer to sell by the third-party sellers."). Amazon processes the payment for its consumers and its retailers, and disburses the funds to the seller. A2129.

Amazon, identical to a consignment seller, makes it possible for "anyone" to sell products with Amazon. A2136, lines 22-24 ("And so anyone can come to our website and fill in a few forms and sign up and start selling products."). Mr. Poad proceeded to show precisely how anyone could set up a seller account with Amazon, much like how a consignment seller would allow anyone to use its storefront. A2138-40. Mr. Poad also confirmed that "all of the third-party sellers in this matter agreed to the 'business solutions agreement.'" (A2140) and that

all of the third party sellers at issue in this case also agreed to the "Selling on Amazon" terms and conditions. A2150.

As a separate suite of services, Amazon offers so-called "Fulfillment by Amazon" ("FBA"). Third-party-sellers that use Amazon's FBA services, must abide by an additional set of requirements. A2165. Mr. Poad testified on direct examination concerning the expansive FBA service. A2161-A2162:

> The way it works is that if you're a seller, you send your products in bulk, in a box or whatever, to an Amazon fulfillment center. That's received by people who work in Amazon fulfillment centers, our associates, put on a shelf.
>
> It's still the seller's inventory. It's still their stock. It's just sitting on an Amazon shelf. And then when the customer comes and sees the seller's offer and buys the product from the seller, Amazon gets the product from the shelf, ***puts it in a box, and sends it to the customer*** on behalf of the seller. We charge a fee for that service.
>
> Q Is that what happened with the FAC box that's sitting up there?
>
> A Yes.
>
> A2162 (emphasis added).

On cross examination, Mr. Poad again testified concerning Amazon's roles in distribution for FBA users. A2248. Amazon's actions

were never in serious factual dispute. What *is* in dispute, is how Amazon's actions should be treated as a matter of law.

## VI. SUMMARY OF THE ARGUMENT

The District Court erred in concluding that Amazon neither sells nor offers the accused products for sale. In particular, the District Court erroneously believed that a transfer of "legal title" to the infringing products to Amazon is needed before Amazon can "sell" products. Applicable case law, as well as long-established rules of contract, do not require that a seller hold legal title to a product in order to sell it. Indeed, consignment sales are one well established way in which a seller ("consignee") can sell a product whose legal title rests with another, i.e., the "consignor."

In adopting an overly restrictive and legally faulty interpretation of "sale," the District Court improperly dismissed Milo & Gabby's claims for patent infringement, copyright infringement, and violation of the Lanham Act.

The District Court further erred in dismissing Milo & Gabby's claim for passing off. Apparently without checking the record, the District Court simply accepted Amazon's factually incorrect claim that Milo & Gabby never raised a passing off claim. In point of fact, such a claim was raised very early on, and the billing records of Amazon's own

counsel in this matter show, beyond dispute, that, as late as August 14, 2014, Amazon's counsel even billed Amazon for “Research[ing] requirements for passing off and false advertising claims under the Lanham Act *as alleged by Milo & Gabby.”*

Finally, the District Court abused its discretion in continuing to award Amazon its attorneys’ fees in connection with moving to dismiss the passing off claim, even after Milo & Gabby pointed out and demonstrated that the passing off claim had, in fact, been raised in a timely manner.

# VII. ARGUMENTS

## A. Standard of Review

This Court reviews the District Court's grant of summary judgment and motions to dismiss *de novo*. Questions of contract interpretation are reviewed de novo. See, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009); *Harry v. Marchant*, 237 F.3d 1315, 1317 (11th Cir. 2001).

This Court reviews the District Court's grant of an award of attorneys fees for abuse of discretion. See, *Jeff D. v. Otter*, 643 f.3d 278 (9th Cir. 2011) (citing *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004)).

## B. Amazon Is A "Seller" Of The Accused Products

Amazon has admitted nearly every element of every claim against it. Amazon has conceded that the accused products are substantially similar to Milo & Gabby's proprietary intellectual property. Amazon has conceded that Milo & Gabby's intellectual property is valid. The single common element of Milo & Gabby's claims that Amazon continues to deny is whether Amazon "sells" the accused products. Amazon erroneously argued below that without acquiring "legal title,"

Amazon cannot be a "seller" as a matter of law. A441-A442. Unfortunately, the District Court accepted Amazon's position without analysis, and ruled that Amazon *cannot* be a "seller" of the accused products because Amazon does not acquire "legal title" to the products sold through the amazon.com marketplace. The District Court ruled as follows:

> [T]he Court rejects Plaintiffs' contention that Amazon is liable for [copyright] infringement based on its sales and shipment of physical items. Here, the evidence demonstrates that Amazon is not the seller of the alleged infringing products. A496 at ¶ 12. Likewise, third-party sellers retain full title to and ownership of the inventory sold by the third party. A493 at ¶ 4. Plaintiffs have provided no evidence to the contrary with respect to any specific third party involved with the products in this case. Accordingly, the Court concludes that Amazon was not the seller of the products at issue here.

A33-34 (citations converted to the appendix).

The only factual assertion relied upon by the District Court is that Amazon does not take "legal title" to the accused products. The District Court erred because taking "legal title" to a product is not, and never has been, a requirement for being a "seller."

### 1. Taking "Legal Title" Is Not Required In Order To Be A "Seller" For The Purpose Of Infringement

This Court applies traditional contract principles to determine whether a party is a "seller" for the purpose of an infringement analysis. See, e.g., *Pfaff v. Wells Elecs. Inc*., 525 U.S. 55, 67 (1998)(traditional contract principles apply to offers for sale in infringement analysis). There are numerous circumstances where an entity is deemed to be the "seller" without taking legal title to products; "legal title" is merely one factor in the consideration of whether one is legally a "seller." See, e.g., *Pinter v. Dahl*, 486 U.S. 622, 642-43 (1988)("In common parlance, a person may offer or sell property without necessarily being the person who transfers title to, or other interest in, that property.").

Indeed, as this very Court has recognized, the concept of passing "legal title" has very little to do with the tortious act of infringement. See *North Am. Philips Corp. v. American Vending Sales, Inc*., 35 F. 3d 1576, 1579-80 (Fed. Cir. 1994) ("[N]o policy [is] furthered by according controlling significance to the passage of legal title here. This case has nothing to do, for example, with the proper allocation of the risk of loss between parties to the underlying sales contracts.")

**(a) Consignment Sales**

The sales by Amazon of the accused products are essentially consignment sales. Under a consignment sale, a "consignee" takes physical possession, but not legal title, of goods from a "consignor." The consignee then sells the goods on behalf of the consignor. *Id*. In such a transaction, the consignor *is* the seller of the goods. For instance, in *Falk v. Brennan*, 414 US 190 (1973) the U.S. Supreme Court noted as follows:

> [A] consignment seller's gross sales might properly be measured by his gross receipts from sales of the product, even though he did not actually hold title to the product that he sold. Realistically, such a seller is in the business of selling the product that is consigned to him, and *he is functionally in a position no different from that of a seller who has purchased the product before resale*.
>
> *Falk v. Brennan*, 414 US at 199 (emphasis added).

Indeed, under the Uniform Commercial Code, "the consignee is deemed to have rights and title to the goods *identical* to those [of] the consignor" even though legal title never passes to the consignee. UCC § 9-319 (emphasis added). In other words, while the goods are in the possession of the consignee (Amazon), the consignee (Amazon) is deemed to have rights and title to the goods *identical* to those of the

true owner. Accordingly, taking legal title is unnecessary for a consignee to be a "seller" of goods.

**(b) Amazon Is "A Person In The Position Of A Seller"**

Under the Uniform Commercial Code a "person in the position of a seller" includes "anyone who otherwise holds a security interest or other right in goods similar to that of a seller." See UCC § 2-707A. In the instant action, Amazon undeniable satisfies the definition of a person in the position of the seller. It is undisputed that Amazon holds all rights to the infringing products of its affiliates in this case except *solely* for legal title. For example, Amazon has possession of the products and the unfettered right to consummate the sale of those products with no further input or control by its affiliates. A526. Once that sale is consummated, Amazon packages up the product and ships it to the purchaser. A536; A534-A543. Indeed, Amazon even *gift wraps* the products if requested. A539. Amazon can return the goods or destroy them at Amazon's own choosing. A537. Amazon can freely commingle the accused products with its own. A536. In short, Amazon can do anything it wants with the products, just as if it held legal title.

Accordingly, Amazon is a "person in the position of a seller" as defined by the UCC.

**(c) "Sale or return" Transactions**

Another example where a person to whom "legal title" is not transferred but nonetheless is deemed the "seller" is the "sale or return" transaction. "Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return." See UCC § 2-326. In such a case, the person to whom the goods are delivered makes the sale and is considered to be the seller. *Id*.

The "sale or return" status for commercial transactions is yet another example of a "sale" of a product being made by an entity that does not hold "legal title" to that product.

**2. This Court Should Find That Amazon Is A Seller Of The Accused Products As A Matter Of Law**

Questions of contract interpretation are questions of law. *Seaboard Lumber Co. v. U.S.*, 308 F.3d 1283, 1292 (Fed. Cir. 2002)("this

court conducts *de novo* review of issues of law such as contract interpretation."). Since the issue before this Court is whether Amazon is a "seller" or "in the position of a seller" based on the undisputed facts, it would be appropriate for this Court to render a decision and conclude that Amazon is a seller as a matter of law. *Id*.

Amazon's agreements between itself and its affiliates, as well as the testimony of its only witness at trial, prove that sales made using the amazon.com platform are consignment sales and that Amazon is a seller. More specifically, Amazon maintains its own place of business at which it may deal in similar goods. A2132; A2255. Amazon deals in its own goods under its own name, which is obviously different than the names of its affiliates. Amazon takes physical possession of the goods that are delivered to it for sale. A2161-A2162. Amazon maintains possession of those goods until they are sold. *Id*. The sale transaction occurs without any further involvement by the manufacturer. A2129.

Amazon maintains oversight and control over the "product detail pages" set up by its affiliates on the amazon.com platform. A2159. Amazon transfers possession of the accused products directly from the Amazon fulfillment center to the purchaser. A2162. Amazon's

compensation is a percentage of the proceeds of the sales transaction. A2261.

Again, holding legal title is not required to be a seller. And aside from legal title, Amazon holds every exclusive right that can be held in the accused products that are in its possession. Accordingly, it is undeniable that Amazon is the "seller" of the accused products, or at a minimum is in a position identical to that of the seller.

### C. Amazon's Liability As The Seller For Patent And Copyright Infringement

The District Court erroneously dismissed Milo & Gabby's copyright infringement and patent infringement claims based on its erroneous conclusion that Amazon is not a "seller" of the accused products. A33; A44-A46. However, as set out at length above, Amazon is in fact a "seller" of the accused products, and accordingly, Milo & Gabby's patent infringement and copyright infringement claims should be reinstated.

### D. Amazon Has Committed Copyright Infringement

One of the exclusive rights under The Copyright Act is the right to "distribute copies" of a pictorial or sculptural work. 17 U.S.C. §§ 106;

113(b). The Copyright Act defines copyright infringement as a distribution of unauthorized copies of a work by sale or other transfer of ownership. 17 U.S.C. § 501.

Copyright infringement is a strict liability offense. *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 828–29 (8th Cir. 1992); *see also, Blue Nile, Inc. v. Ideal Diamond Solutions, Inc.*, C10-380-TSZ (W.D. Wash. Aug. 3, 2011)(citing *Foreverendeavor Music, Inc., v. S.M.B., Inc.*, 701 F.Supp. 791, 793-4 (W.D. Wash. 1988)). The defendant's intent is accordingly irrelevant for purposes of establishing liability. *See also, Harbor Motor Co., Inc. v. Arnell Chevrolet-Geo, Inc.*, 265 F.3d 638, 643 (7th Cir. 2001) (newspaper that assisted in the actual preparation of an infringing advertisement was a direct, not contributory, infringer); *Rogers v. Koons*, 777 F. Supp. 1, 2 (S.D. N.Y. 1991) (art gallery that sold infringing sculptures was a direct infringer).

Using an indefensible and unsupported rationale, the District Court applied the safe harbors from the Digital Millennium Copyright Act (17 U.S.C. § 512 *et. seq*. Or "DMCA") to find that Amazon did not distribute *physical* copies of the Accused Products and *physical* copies of

the photographs on the associated packaging. See, A33, 39. Using comparably attenuated rationale, the District Court stated Amazon is not the seller of the goods at issue, so it cannot be found liable for direct copyright infringement. A33.

As noted above, Milo & Gabby and Mrs. Keller are the rightful owners of numerous valid copyrights on the images that appear on the physical packages of the pillowcases, as well as the pillowcases themselves, and it is undisputed that Amazon distributed infringing copies of the protected works for FAC System. As set out below, regardless of whether or not Amazon acts as a "seller" (it does), there is no dispute that Amazon is liable for copyright infringement because it acts as a distributor of the infringing products and physical images.

### 1. Amazon Has Already Admitted That The Accused Products Are "Copies" Of Milo & Gabby's Protected Products

Amazon conceded that the accused products are substantially similar to Milo & Gabby's proprietary intellectual property. See A2425-A2426. Amazon conceded that Milo & Gabby's proprietary intellectual property is valid. A2425-2426. Accordingly, Amazon conceded that

infringement occurred; it merely denies that *it* is liable for that infringement.

### 2. It Is Undisputed That Amazon Stored and Shipped the Accused Products

When Amazon answered the complaint, it admitted that the Accused Products were shipped from Amazon fulfillment centers. A365, ¶ 21 ("Amazon admits that third-party seller FAC Systems participated in the Fulfilled by Amazon service, through which certain items are offered for sale by a third-party seller, but shipped to the customer from an Amazon fulfillment center."). This admission was continually reiterated throughout discovery. See, e.g., Amazon Supplemental Responses to Interrogatory No.7, A610-A611 ("...Amazon packs [the inventory] and ships it to the customer.").

Before the District Court erroneously dismissed Milo & Gabby's copyright infringement claims on Amazon's Motion for Summary Judgment, Amazon admitted again that it distributes products through its FBA suite of services. See, Dung Phan Declaration (A309); Exhibit A (A325 Selling on Amazon terms, A341 FBA terms). As described within the FBA terms of service, Amazon required FAC Systems to ship its

products to Amazon. A342 ("You will ship Units to us in accordance with applicable Program Policies."). However, Amazon could still refuse to accept an "Unsuitable Unit" that would otherwise infringe intellectual property rights. *See,* A342, A350. In Opposition, Milo & Gabby reminded the District Court that in addition to receiving, inspecting, and shipping the Accused Products for FAC Systems, Amazon exercised immense control over the distribution of the Accused Products. See, A577-78. For instance, Amazon can repackage, re-label, destroy, and commingle inventory it receives. *Id*. Plaintiffs-Appellants further argued that Amazon's actions with *physical* inventory are not protected by the safe harbor provisions of the DMCA, 17 USC § 512(c). See, A585-A586.

The District Court even acknowledged that Amazon stores and ships products through its FBA services (A26) and that it provided such services to one of the third-party sellers mentioned, FAC System. A27.

### 3. Amazon's Own Witness Admitted That Amazon "Distributes" The Accused Products

The above facts were confirmed at trial, when Amazon's only witness, corporate representative Mr. Christopher Poad, testified that

Amazon helps sellers with "the delivery or shipping of their products." A2130. On cross-examination, Mr. Poad reiterated Amazon's roles in distribution: "Q: You distribute products from the fulfillment center, correct? A: Yes." Poad Cross-examination, A2248. Mr. Poad continued to describe how Amazon warehouse workers handle goods covered by FBA services, namely, by physically placing them in totes, removing them from totes, placing them in boxes, placing tape on those boxes, fixing labels to those boxes, and sending them to shipping provider. A2249; A2264-66.

#### 4. Amazon's Distribution Is A "Sale Or Other Transfer Of Ownership"

As Set Out Above, Amazon's Transfer Is A "Sale" of the accused products and, accordingly, Amazon is liable for violating Milo & Gabby's exclusive rights. Alternatively, the transactions performed by Amazon easily constitute an "other transfer of ownership" as contemplated under the Copyright Act. Accordingly, Amazon is liable for copyright infringement.

### 5. The DMCA Safe Harbor Provisions Do Not Apply To The Sale Of Physical Products

As a final matter, the District Court erred by applying Digital Millennium Copyright Act ("DMCA") immunity to Milo & Gabby's copyright infringement claims. In its order partially granting Amazon's Motion for Summary Judgment, the District Court used the DMCA to defend Amazon's position that it does not distribute *physical goods*. A33-34. The only legal authority relied upon by the District Court is *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp.2d 914 (C.D. Cal. 2003), which is inapplicable here. Indeed, in *Hendrickson*, the lower court relied on DMCA immunity (the DMCA "safe harbor" provision). However, put simply, the DMCA safe harbor only applies online; it does not apply to physical goods sold in cardboard boxes shipped from standing warehouses. 17 U.S.C. § 512(c)("A service provider shall not be liable . . . for infringement of copyright by reason of the storage at the direction of a user of material *that resides on a system or network*"). The DMCA safe harbor provisions simply do not apply *unless* the infringing material "resides on a system or network."

It can hardly be argued that a piece of fabric in a cardboard box on a concrete floor of a warehouse in Kentucky "resides on a system or network." But the District Court below believed that the *Hendrickson* court held "that under similar circumstances Amazon was an internet service provider for the third party and not a seller." Even if that were true (and Milo & Gabby strongly disagrees), that statement is irrelevant concerning physical goods that exist in the real world.

A cursory reading of *Hendrickson* itself confirms that the DMCA does not and cannot apply to distribution of physical goods. In analyzing the committee notes from the DMCA, the *Hendricksen* court found that "[t]he term activity is intended to mean activity *using* the material *on the system* or network. The Committee intends such activity to refer to wrongful activity that *is occurring on the site* ...." *H.R.* at 53 (emphasis added). *Hendrickson*, 298 F.Supp.2d at 917. Accordingly, the court in *Hendrickson* noted that the wrongful activity must be occurring on the site to enjoy DMCA immunity. In contrast to the instant case, the *Hendrickson* court found that Amazon "*never possessed* the DVD, and never had the opportunity to inspect the item." *Id.* Accordingly, the

*Hendrickson* court extended DMCA immunity, although improperly. Significantly, the *Hendrickson* decision has never been reviewed by an appellate court until now.

## E. The District Court Erred By Dismissing Milo & Gabby's Passing Off Claim After Being Misled By Amazon

The District Court committed clear error by dismissing Milo & Gabby's "passing off" claim for unfair infringement based on its erroneous conclusion that Milo & Gabby had not put Amazon on "fair notice" of that claim. Indeed, not only did Milo & Gabby provide "fair notice" of its claim, Amazon's own submissions prove it had full knowledge of precisely what Milo & Gabby's claim was under the Lanham Act.

### 1. The District Court's Dismissal

Amazon moved for summary judgment on Milo & Gabby's Lanham Act claim. A426. Milo & Gabby opposed summary judgment by arguing, *inter alia*, that the facts fully supported Milo & Gabby's claim of "passing off" under the Lanham Act. A590; A564-A598. In its reply, Amazon tacitly conceded that the "passing off" claim is supported by the facts, and argued instead that Milo & Gabby had not previously raised

the "passing off" claim and therefore it should be dismissed. The District Court took Amazon at its word and summarily dismissed Milo & Gabby's Lanham Act claim on the sole basis erroneously argued by Amazon.

The District Court erroneously concluded that "Plaintiffs have never raised these theories of liability in their Complaint, nor have they alleged any facts in their Complaint *providing notice to Defendant* that they intended to advance such theories." A44. That ruling was simply wrong and it should be vacated. The truth is that Milo & Gabby had detailed that exact claim to both Amazon and the District Court almost two years prior.

#### 2. The Complaint Details The Facts Supporting Milo & Gabby's "Passing Off" Claim

The Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). Accordingly, a complaint that recites sufficient facts to provide "fair notice" of Milo & Gabby's claim is sufficient to survive a

summary dismissal. Milo & Gabby's complaint easily satisfies that standard, and that was explained in detail in Milo & Gabby's opposition to Amazons Rule 12(b)(6) motion at the pleading stage.

**(a) The Elements Of Passing Off**

Passing off (sometimes also referred to as "palming off") is essentially the same cause of action under both Washington State law as under Section 43(a)(1) of the Lanham Act. See *Smith v. Montoro*, 648 F.2d 602 (9th Cir. 1981).

In *Smith v. Montoro*, the Ninth Circuit stated:

> Implied passing off occurs when an enterprise uses a competitor's advertising material, or a sample or photograph of the competitor's product, to impliedly represent that the product it is selling was produced by the competitor. Such practices have consistently been held to violate both the common law of unfair competition and section 43(a) of the Lanham Act.

*Id* at 604. (internal citations omitted).

Accordingly, the only facts that need be alleged to put Amazon on notice of Milo & Gabby's "passing off" claim are that (1) Amazon used Milo & Gabby's advertising material but (2) did not deliver Milo & Gabby's products. Those facts were not only adequately pled, they are undisputed.

### (b) Milo & Gabby's Complaint Alleged Sufficient Facts To Make Out A Claim of "Passing Off"

In its Complaint, Milo & Gabby recited claims for unfair competition arising under the Washington State law and under the Lanham Act. See A156-A157. Amazon moved to dismiss Milo & Gabby's Washington State unfair competition claim, and Milo & Gabby submitted its response detailing the basis of Milo & Gabby's unfair competition claim. More specifically, Milo & Gabby explained that its unfair competition claim was based on the the tort of "passing off" (also referred to as "palming off"). Milo & Gabby explained its claim as follows:

> As alleged in the Complaint, Amazon advertised Milo & Gabby's own products on the amazon.com web site. In fact, Amazon uses Milo & Gabby's own advertising materials which obviously promote Milo & Gabby's products. However, the products that Amazon actually sold were not the products it advertised, i.e., Milo & Gabby's products; rather, Amazon shipped the Amazon knock-offs.
>
> The Complaint recites all the classic "palming off" facts: Representing to the public that the goods offered and sold by Amazon are in fact the Milo & Gabby products when they are not. Palming off is the most classic form of unfair competition. Accordingly, Amazon's motion to dismiss Milo & Gabby's unfair competition claim should be denied.

A261-A262 (internal citations omitted).

So not only did Milo & Gabby allege all the facts necessary to support its claim of passing off in its complaint, it explicitly identified its legal theory based on those facts in its early pleading-stage filings.

Moreover, "passing off" is a *per se* violation of the Lanham Act. See *Norwich Pharmacal Co. v. Sterling Drug, Inc.*, 271 F.2d 569 (2d Cir. 1959); *J. Josephson, Inc. v. General Tire & Rubber Co.*, 357 F.Supp. 1047 (S.D.N.Y. 1972). As a *per se* violation, Milo & Gabby need not prove any additional facts other than those that are already undisputed: That Amazon displayed Milo & Gabby's actual product and advertising materials, yet delivered a knock-off product. Nothing more need be proven. *Bliss v. Gotham Industries, Inc.*, 316 F.2d 848, 855 (9th Cir. 1963).

The District Court's erroneous reliance on Amazon's misrepresentation that Milo & Gabby had not adequately raised "passing off" as a claim is simply wrong and should be vacated.

### 3. Not Only Was Amazon Put On "Fair Notice", Amazon Admittedly Had "Actual Notice"

On Amazon's motion, the District Court awarded attorneys fees against Milo & Gabby after erroneously dismissing Milo & Gabby's

Lanham Act claim. Fortuitously for Milo & Gabby, the District Court ordered Amazon to substantiate its fees claim with contemporaneous billing records, which Amazon did. When Milo & Gabby reviewed those billing records, Milo & Gabby located definitive proof that not only was Amazon on "fair notice" of Milo & Gabby's passing off claim, Amazon was *in fact* fully aware of that claim.

Although Amazon redacted most of every time entry submitted, at least one time entry proves that Amazon was in fact *fully aware* that Milo & Gabby had alleged passing off under the Lanham Act. In support of Amazon's fees motion, Amazon submitted the following billing entry of Amazon's counsel:

| | |
|---|---|
| 8/14/2014 | Research requirements for passing off and false advertising claim under the Lanham Act as alleged by Milo & Gabby |

"Passing off" time entry (A1062).

It cannot seriously be argued that Amazon was not on "fair notice" that (1) Milo & Gabby had alleged (2) "passing off" (3) "under the Lanham Act" when all three of those facts are admitted by Amazon's own counsel in its billing entry.

The District Court's conclusion that Milo & Gabby's "passing off" claim was never raised prior to Milo & Gabby's response to Amazon's summary judgment motion is manifestly erroneous and should be vacated.

**4. The Attorneys Fees Award Should Be Vacated**

Once this Court vacates the District Court's dismissal of Milo & Gabby's Lanham Act claim, the District Court's award of attorneys fees under the Lanham Act should be vacated as well. More specifically, the District Court concluded that its award of attorneys fees below was based on a finding that this case was an "exceptional case" under the Lanham Act. Accordingly, the District Court awarded attorneys fees to Amazon as the "prevailing party." However, with Milo & Gabby's Lanham Act claim reinstated, Amazon is no longer the "prevailing party" under the Lanham Act and an attorneys fees award is improper. Accordingly, Milo & Gabby requests that this Court also vacate the District Court's award of attorneys fees.

## VIII. CONCLUSION

For all the foregoing reasons, Appellants Karen Keller and Milo & Gabby respectfully request that the Final Judgment issued by the

District Court be vacated, that this Court hold as a matter of law that Amazon is the seller of the products accused of infringement and that this case be remanded for further proceedings consistent therewith.

Dated: March 7, 2016. Respectfully submitted.

Philip P. Mann
Timothy J. Billick
MANN LAW GROUP
John Whitaker
WHITAKER LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, Washington 98101
(206) 436-0900
*phil@mannlawgroup.com*
*john@wlawgrp.com*

Attorney for Plaintiffs/Appellants

# Addendum

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MILO & GABBY, LLC and KAREN KELLER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | CASE NO. C13-1932 RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM IN PART |

## I. INTRODUCTION

This matter is before the Court upon Defendant's Motion to Dismiss, In Part pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. # 8. Defendant Amzon.com, Inc. ("Amazon") asks the Court to dismiss Plaintiffs' claims for unfair competition, right of publicity, trademark counterfeiting, and indirect patent and copyright infringement. Having considered the parties' memoranda and the relevant law, the Court grants Amazon's motion to dismiss Claims III, V, and VII of the Complaint with leave to amend. Plaintiffs' request for relief seeking redress for inducement, willful, or contributory infringement is stricken, and Plaintiffs are ordered to show cause why FAC System, LLC should not be joined as a necessary party.

## II. BACKGROUND

Plaintiffs make the following factual allegations. Plaintiff Milo & Gabby, LLC is a Washington State limited liability company that designs and sells animal-shaped pillow cases, among other accessories and bedding products. Plaintiff Karen Keller and her husband are the founders and product designers of Milo & Gabby, LLC ("Milo & Gabby"). Dkt. #1, ¶ 7. The couple's four children and two family pets inspired the Kellers to create the Cozy Companion Pillowcases product line for Milo & Gabby. The line consists of eight animal shaped pillowcases that function as a combination of a pillow and a stuffed animal.

Plaintiffs are the authors and owners of various U.S. Copyrights and U.S. Design Patents. On September 11, 2007, the Milo & Gabby design mark was registered with the U.S. Patent and Trademark Office and was assigned U.S. Trademark Registration Number 3291697. *Id*. at ¶ 8. In addition, Milo & Gabby's website and marketing images are protected by valid U.S. copyrights. *Id*. at ¶ 10.

Over the past five years, Milo & Gabby has designed, sold, and distributed their products to retailers and e-tailers throughout the United States and internationally. *Id*. at ¶ 11. During this time, Milo & Gabby's animal-themed children's accessories have seen commercial success. *Id*. In 2012, Milo & Gabby entered into an exclusive license arrangement in Asia, and since then the company has made promising gains. *Id*. Milo & Gabby aims to further expand its operations by entering into license agreements throughout North America. *Id*. at ¶ 12. However, Milo & Gabby claims these efforts were halted when Amazon.com allegedly began selling direct knock-off copies of Milo & Gabby's Cozy Companion Products. *Id*. at ¶ 13.

Defendant Amazon is a company that operates a widely used internet service retail website at http://www.amazon.com. Amazon enables third-party vendors to sell and distribute a variety of products to the public while Amazon "fulfills" the orders through amazon.com.[1]
On October 24, 2013, Plaintiffs Milo & Gabby, LLC and Karen Keller (collectively, "Plaintiffs") filed the instant lawsuit alleging that Amazon was using Plaintiffs' intellectual property to wrongfully market, sell, and distribute inferior-quality knockoffs of Plaintiffs' animal-shaped pillowcases on the amazon.com website.[2]

Amazon filed the instant Motion to Dismiss and moves to dismiss Counts III, V, and VII of Plaintiffs' Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Amazon also moves to dismiss Count I pursuant to Rule 12(b)(6) to the extent that Count I purports to state a claim of patent infringement pursuant to either 35 U.S.C. § 271(b) or (c), or, in the alternative, to strike Plaintiffs' requests for related injunctive and exceptional relief. Similarly, Amazon requests dismissal of Count II to the extent it purports to state a claim of indirect copyright infringement or, alternatively, to strike Plaintiffs' request for related injunctive relief.

## III. DISCUSSION

### A. Standard of Review

In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face."

---

[1] FAC System, LLC ("FAC System") is one such third-party seller. Until recently, FAC System used Amazon's retail website amazon.com to offer animal-shaped pillowcases for sale. *See* Dkt. #1 at Ex. C.

[2] Amazon urges this court to order that FAC System be joined as a necessary party under Fed. R. Civ. P. 19(a). Amazon contests Plaintiffs' pursuit of a complaint against Amazon "despite exhibits to the complaint making clear that the seller of the pillowcases at issue is FAC System." Dkt. #8, p.3 (*citing* Dkt. # 1, Ex. B at 1 (Screen capture of allegedly infringing product on amazon.com noting that the product is "[s]old by FAC System LLC and Fulfilled by Amazon")). Amazon further argues that FAC should be joined as a necessary party because (1) complete relief cannot be accorded among the existing parties and (2) FAC System may have a legally protected interest in the subject of this action. Dkt. #8, n.1 (*citing Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) (discussing standard for joinder under Rule 19(a)); Fed. R. Civ. P. 19(a)(2) ("If a person has not been joined as required, the court must order that the person be made a party.")). Plaintiffs failed to address this issue.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. 556). In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). The Court is not, however, bound to accept the plaintiff's legal conclusions. *Iqbal*, 129 S. Ct. at 1949-50. While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Under Fed. R. Civ. P. 12(b)(6), dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1055 (C.D. Cal. 2004) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990)). The court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *Id.* (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996)). Further, where a complaint's state law claims are preempted by federal law, the claims are subject to dismissal under Rule 12(b)(6). *Id.* (citing *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002).

**B. Count III – Unfair Competition**

Plaintiffs' complaint alleges Amazon violated Washington's Consumer Protection Act ("CPA"). Specifically, Plaintiffs' claim for unfair competition states:

> Defendant Amazon violated RCW Chapter 19.86 due to its unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade or commerce. By offering for sale, selling, importing, and distributing actual products that include infringing materials, Amazon is directly liable for its own actions, as set forth above. Amazon has sold, imported, and delivered the Amazon knock-offs to consumers in this district.

Dkt. # 1, ¶ 33–34.

Amazon challenges Plaintiffs' unfair competition claim as insufficient under federal pleading requirements. Amazon first argues that paragraph 33 of the unfair competition claim amounts to nothing more than a formulaic and impermissible recitation of the elements of a CPA claim. Dkt. #8 at p. 6. Second, Amazon contends that Plaintiffs' use of the term "infringing" refers to—and incorporates by reference—Plaintiffs' two preceding causes of action for patent and copyright infringement. *Id*. Amazon also argues that the phrase "as set forth above" incorporates the first two claims by reference. Because the claim fails to articulate a basis for relief that is distinct from Plaintiffs' causes of action for patent and copyright infringement, Amazon contends that Plaintiffs' unfair competition claim is preempted by federal patent and copyright law. *Id*.

Washington's CPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . .." RCW 19.86.020 (2009). To sustain an unfair competition action under the CPA, a plaintiff must demonstrate (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) that impacts the public interest (4) causing an injury to the plaintiff's business or property with (5) a causal link between the unfair or deceptive act and the injury suffered. *Nat'l Products, Inc. v. Gamber-Johnson LLC*, 699 F. Supp. 2d 1232, 1242 (W.D. Wash. 2010) (citing *Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1132 (9th Cir. 2002)).

A CPA claim may be preempted by federal copyright law when the state claim incorporates by reference and merely restates federal patent and copyright claims. *See Litchfield v. Spielberg*, 736 F.2d 1352, 1358 (9th Cir. 1984) (holding that because the unfair competition and misrepresentation claims are "restatements of the copyright infringement claims, they are preempted by federal copyright law"); *see also Blue Nile, Inc. v. Ice.com, Inc*., 478 F. Supp. 2d 1240, 1247 (W.D. Wash. 2007) ("Plaintiff cannot both expressly rely on the copyright allegations in all of its state law claims *and* assert that the state law claims are outside copyright's subject matter for purposes of avoiding preemption.") (emphasis in original). The same reasoning also applies to preemption under patent law. *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 904 (9th Cir. 1992) (patent law "establishes a zone of preemption broader than that of copyright law: Even if Congress has left an area unprotected, the fact that patent law *could* reach it preempts state-law protection.") (citing *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 230–32 (1964)); *Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 237–38 (1964).

The Ninth Circuit has adopted a two-part test to determine whether a state law claim is preempted by the Copyright Act. The test requires the court to first determine whether the "subject matter" of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102[3] and 103.[4] Second, if the subject matter prong has been met, the court must

---

[3] § 102. Subject matter of copyright: In general
(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
(1) literary works;
(2) musical works, including any accompanying words;
(3) dramatic works, including any accompanying music;
(4) pantomimes and choreographic works;
(5) pictorial, graphic, and sculptural works;

determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106.[5] *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137–38 (9th Cir. 2006); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001).

Here, Plaintiffs seek to protect their photographs for use in marketing. It is undisputed that these photographs are "pictorial works" that can be copyrighted. 17 U.S.C. § 102(a)(5). Thus, the work that Plaintiffs seek to protect falls within the "subject matter" of the Copyright Act, and satisfies the first prong of the preemption test. Whether the CPA claim states equivalent rights as the copyright claim, however, is less clear. As drafted, the CPA claim lacks sufficient factual allegations to state a CPA claim. Because the claim language "as set forth above" is vague, it is unclear whether that language fully incorporates the copyright and patent infringement claims by reference or whether the CPA claim attempts to incorporate factual matter from the factual summary of the Complaint that might otherwise support a viable CPA

---

(6) motion pictures and other audiovisual works;
(7) sound recordings; and
(8) architectural works.

[4] § 103. Subject matter of copyright: Compilations and derivative works
(a) The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.
(b) The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

[5] § 106. Exclusive rights in copyrighted works
Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

claim.[6] At best, the Complaint as a whole is ambiguous and as drafted, Plaintiffs' CPA claim asserts no new or different allegations to distinguish it from Plaintiffs' patent or copyright infringement claims. Therefore, the CPA claim asserts rights indistinguishable from those rights expressly granted, and thus preempted, by the Copyright Act. Accordingly, Count III is dismissed without prejudice.

**C. Count V - Right of Publicity**

Under RCW 63.60.050, a right of publicity claim accrues when:

> Any person who uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or if any person disseminates or publishes such advertisements in this state, without written or oral, express or implied consent of the owner of the right, has infringed such right. An infringement may occur under this section without regard to whether the use or activity is for profit or not for profit.

RCW 63.60.050 (2013).

Amazon asks the Court to dismiss Plaintiffs' right of publicity claim for two reasons. First, Amazon argues that Plaintiffs have not pled facts establishing standing to assert the claim. Second, Amazon contends that under the Supremacy Clause of the U.S. Constitution, the Copyright Act expressly preempts Plaintiffs' state law claim because it is based solely on the alleged infringement of copyrighted works—namely, Amazon's reproduction and display of photographs depicting Karen Keller's young children. Dkt. # 8, p. 10.

[6] The Court makes no determination at this time as to whether Plaintiffs' factual allegations would be sufficient to survive the preemption analysis. As Amazon notes, to survive preemption, Plaintiffs' CPA claim must contain an "extra element[]" that "makes the rights asserted qualitatively different from the rights protected under the Copyright Act." *Blue Nile*, 478 F. Supp. 2d at 1249 (quotations and citations omitted). Plaintiffs have failed to squarely address this argument in the briefing.

1. Standing

The Complaint lacks a basis for inferring that Ms. Keller has standing to bring a right to publicity claim on behalf of her children. Plaintiffs contend that the Complaint's allegations of misappropriated images depicting Ms. Keller's "obviously minor" children should be sufficient for purposes of inferring standing. Dkt. # 11, p. 5. The Court disagrees.

The rights granted under RCW 63.60.040(3) "may be exercised by a personal representative, attorney-in-fact, parent of a minor child, or guardian, or as authorized by a court of competent jurisdiction." Here, the Complaint offers no factual basis demonstrating Ms. Keller's legal authority to serve as a personal representative for the children at issue. Furthermore, Plaintiffs fail to assert basic essential facts, such as the number of children at issue, their current ages, and when the photos at issue were taken. Accordingly, Plaintiffs' right of publicity claim, as drafted, is insufficient on its face.

2. Preemption

Amazon contends that even if Plaintiffs' standing defect were cured, Plaintiffs' right of publicity claim is preempted by the Copyright Act. The Complaint alleges that Amazon used "the photograph and/or likeness of Plaintiff Keller's children on goods, merchandise, or products" without authorization. Dkt. # 1, ¶ 20. Here, the essence of Plaintiffs' right of publicity claim is that Amazon reproduced and distributed photographs of the Keller children without authorization to do so.

Plaintiffs' right of publicity claim replicates Plaintiffs' copyright infringement claim. Six different photographic images of children with Milo & Gabby pillows are the basis of the right of publicity claim here. The same photos make up the marketing materials that form the basis of Plaintiffs' copyright infringement claim. These photographs of Ms. Keller's children are contained within the subject matter of copyright as "pictoral works." 17 U.S.C. § 102(5).

Case: 16-1293 Document: 18 Page: 61 Filed: 03/21/2016

Amazon characterizes Plaintiffs' copyright infringement and right of publicity claims as "duplicative and coextensive." Dkt. # 8, p. 13. Plaintiffs insist that the publicity rights being asserted by Ms. Keller's children are not equivalent to any rights asserted under copyright. Dkt. #11, p. 5. They argue that because the Keller children have no ownership interest in any of the copyrights at issue, their right of publicity claim is altogether exempt from preemption. *Id.* ("[A]ll the intellectual property rights (except the right-of-publicity claims) are owned by Milo & Gabby and/or Ms. Keller. The right of-publicity claims are held by Ms. Keller's children, who do not have any ownership interest in the other intellectual property rights.") In essence, Plaintiffs assert a de-facto non-equivalency argument because "the children's right to publicity claim cannot be equivalent to a claim which they do not have." *Id*. Plaintiffs' argument misses the mark.

Plaintiffs rely on *Jules Jordan Video, Inc. v. 144942 Canada Inc*., 617 F.3d 1146 (9th Cir. 2010), the sole authority cited in Plaintiffs' response brief, for the proposition that a state right of publicity claim can be preempted only where the rights asserted by the plaintiff are equivalent to the exclusive rights held by the copyright owner. Dkt. #11, p. 5. However, Plaintiffs' reliance is misplaced. The Ninth Circuit's decision in *Jules Jordan Video* actually supports Amazon's argument. In *Jules Jordan Video*, an adult movie actor asserted a right-of-publicity claim based on allegations that his "name, likeness, photograph and voice" appeared in counterfeit films without his authorization. 617 F.3d at 1154. The Ninth Circuit found that "[t]he essence of [the actor]'s claim is that the . . . defendants reproduced and distributed the [films] without authorization" and held his claim preempted by the Copyright Act. *Id.* at 1155. Here, the essence of Plaintiff Keller's right of publicity claim is that Amazon reproduced and distributed

photographs of the children without authorization—a claim “under the Copyright Act” and thus preempted by that Act. *Id*.

Plaintiffs attempt to distinguish the asserted publicity rights from the copyright claim by arguing that the publicity rights are owned by Ms. Keller’s children, while the copyrights are owned by Milo & Gabby and Ms. Keller. Dkt. #11, p. 5. But Amazon points to *Baltimore Orioles, Inc. v. Major League Baseball Players Ass’n*, 805 F.2d 663 (7th Cir. 1986)—which Plaintiffs have made no attempt to distinguish—where it made no difference for the preemption analysis that a baseball club owned the copyrighted telecast encompassing individual players’ alleged rights of publicity in their performances shown in the telecast. There, the Seventh Circuit held that the players’ right-of-publicity claims were preempted because the claims fell within the subject matter of copyright and were equivalent to the exclusive 17 U.S.C. § 106 right to distribute the telecast held by the baseball club. *See* 805 F. 2d at 676–78.

Here, as in *Baltimore Orioles*, the factual allegations under Plaintiffs’ right of publicity claim fall directly within the scope of federal copyright protection. The Complaint alleges that Amazon misappropriated the Milo & Gabby photographs by reproducing and distributing their copyrighted images without permission. Dkt. #1, ¶ 37–38. Such rights are exclusively reserved to the copyright holder under federal law. 17 U.S.C.A. § 106; *see also Baltimore Orioles*, 805 F.2d at 677–79 (7th Cir. 1986) (rejecting right of publicity claim as preempted by Copyright Act where claim implicated only violation of a copyright holder’s rights to copyrighted subject matter). Thus, Plaintiffs’ right of publicity claim is preempted. Because Plaintiffs’ right of publicity claim is both insufficient on its face and preempted by the Copyright Act, Count V is dismissed without prejudice.

**D. Count VII - Trademark Counterfeiting**

Amazon contends that the trademark counterfeiting claim under 15 U.S.C. § 1114[7] fails because Plaintiffs have not plausibly alleged either (1) that Amazon reproduced Plaintiffs' registered trademark, and (2) that Amazon intentionally used the mark knowing that it was counterfeit. Dkt. # 12, p. 14–16.

As an initial matter, Plaintiffs contend that Amazon's graphic reproduction of Milo & Gabby's registered word and design mark takes matters outside the pleadings and transforms this motion into one for summary judgment. Dkt. # 11, p. 6 (addressing Amazon's reliance on "new evidence" not found in the pleadings "to show that an exact copy of Milo & Gabby's registered trademark does not appear on the exhibits . . . attached to the complaint"). By displaying the mixed word and design mark in Amazon's motion to dismiss, Plaintiffs claim that Amazon is asking the Court to consider new evidence outside the pleadings. *Id*. Plaintiffs argue that, as a consequence, Amazon's motion is not properly presented under Fed. R. Civ. P. 12(b)(6) and must be treated as a motion for summary judgment. *Id*. (citing Fed. R. Civ. P. 12(d)). Plaintiffs request a full and fair opportunity to discover and present all material pertinent to Amazon's

---

[7] Title 15 U.S.C. § 1114(1) states as follows:

(1) Any person who shall, without the consent of the registrant--

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

motion, and urge the Court to defer ruling on Amazon's motion until adequate discovery has been afforded. *Id.* (citing Fed. R. Civ. P. 56(d)).

Federal courts have long recognized procedures for considering documents outside the pleadings when ruling on motions to dismiss. District courts may take judicial notice of key documents mentioned in the pleadings where there is no factual dispute about the documents' authenticity or enforceability. Fed. R. Evid. 201(b) (a court "may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). In the Ninth Circuit, district courts may take judicial notice of documents that the pleadings do not mention, provided the documents are integral to the plaintiff's claims. *See, e.g.*, *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies").

It is well settled that documents attached to or incorporated by reference, such as Plaintiffs' own exhibits to the Complaint, are properly before the Court for consideration on a Rule 12(b)(6) motion. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)). Here, Plaintiffs expressly base their claims on exhibits to the Complaint and have incorporated those exhibits by reference throughout the Complaint. *See* Dkt. #1 at ¶¶ 10, 14, 16, 17-21, 23, 25, 26.

Further, the Complaint expressly identifies Milo & Gabby's design mark as "protected by U.S. Trademark Registration Number 3291697." Dkt. # 1, ¶ 8**.** Federal Rule of Evidence 201

authorizes this Court to take judicial notice of such admission because it is "not subject to reasonable dispute" in that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Singh v. Ashcroft*, 393 F.3d 903, 905 (9th Cir. 2004). Thus, the Court may properly examine the nature and characteristics of the protected mark without converting Defendant's motion to dismiss into one for summary judgment.

The Lanham Act defines a counterfeit mark as a spurious mark that is identical to, or substantially indistinguishable from, a mark that is registered and in use. 15 U.S.C. § 1116 (d)(1)(B). Plaintiffs point to Exhibit C and Exhibit D to the Complaint in support of their allegations that Amazon infringed the Milo & Gabby trademark. Dkt. # 1, ¶ 20. Neither exhibit, however, depicts any such use of the Milo & Gabby mark. The photographs attached as Exhibit D display the alleged knock-off products bearing the mark "DOOMAGIC," but contain no mark bearing even the slightest similarity to Plaintiffs' registered mark. Similarly, a review of Exhibit B revealed nothing resembling Plaintiffs' registered mark. The protected mark is equally absent from all other exhibits offered by Plaintiffs to support their allegations of Amazon's misuse of Milo & Gabby materials.

Here, Plaintiffs fail to present plausible factual support for trademark counterfeiting beyond bare recitation of the reproduction element of the claim. As Amazon points out, Plaintiffs cannot sustain a claim for trademark counterfeiting based upon exhibits that do not show any reproduction of Plaintiff's registered mark. To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Complaint's allegations concerning unauthorized use of Plaintiffs' trademark do not meet this standard.

But even if Plaintiffs had presented sufficient factual support for trademark reproduction, Amazon maintains that Plaintiffs' trademark counterfeiting claim would nonetheless fail because it lacks any supporting allegations that Amazon either intentionally used the registered mark knowing it was counterfeit, or was willfully blind to such use. Dkt. # 8, p. 15. Further, Amazon argues that "intent" must be pled with specificity.

As to the issue of whether intent must be plead with specificity, Plaintiffs argue that Amazon has confused "fraud or mistake," which must be pled with specificity, with "intent, knowledge, and other conditions of a person's mind," which may be alleged generally. Dkt. # 11 (citing Fed. R. Civ. P. 9(b)). Plaintiffs also insist that their trademark counterfeiting claim has been adequately alleged because the Complaint asserts that Amazon violated Plaintiffs' intellectual property rights "with full knowledge of those rights." Dkt. # 1, ¶¶ 16, 17.

Here, the bare factual allegations supporting Plaintiffs' trademark counterfeiting claim establish neither counterfeiting nor intent. Rather, Plaintiffs simply provide a formulaic recitation of the elements establishing liability under 15 U.S.C. § 1114.[8] Plaintiffs have offered no plausible, factual basis for their allegations, and thus supply no more than mere "labels and conclusions." *Twombly*, 550 U.S. at 555. Further, Plaintiffs offer no factual basis to support the

---

[8] The relevant statutory language provides:

**(1)** Any person who shall, without the consent of the registrant—

**(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

**(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114 (1)(a)-(b).

intent and knowledge element of trademark counterfeiting. Accordingly, Plaintiffs' trademark counterfeiting claim and corresponding remedies are dismissed without prejudice.

**E. Prayer for Relief**

Plaintiffs' Prayer for Relief seeks to enjoin Amazon's "infringement, inducement, and contributory infringement." Dkt. #1, ¶ L. Construing the requested relief as a claim for indirect and willful infringement, Amazon urges the Court to dismiss Count I to the extent Plaintiffs are trying to allege induced or contributory patent infringement under 35 U.S.C. § 271(b) and (c). Amazon alternatively asks that the Court strike portions of Plaintiffs' Prayer for Relief based on any claim for induced, contributory, or willful patent infringement. Namely, Amazon requests that the Court strike Prayer paragraphs (C) (seeking enhanced damages), (D) (seeking a finding that case is "exceptional" under 35 U.S.C. § 285), and (L) (seeking injunctive relief related to induced and contributory infringement).

Similarly, Amazon seeks dismissal of Count II to the extent Plaintiffs assert indirect copyright infringement. In the alternative, Amazon asks the Court to strike Plaintiffs' request for injunctive relief against indirect copyright infringement.

1. Indirect and Willful Patent Infringement

A claim for indirect patent infringement requires a plaintiff to plead facts showing the defendant had knowledge of the patents at issue, as well as "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011).

To state a claim for willful patent infringement, Plaintiffs must provide factual matter to support the conclusion that Amazon had knowledge of the patents-in-suit. *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.3d 508, 511 (Fed. Cir. 1990) ("[A] party cannot be found

Case: 16-1293 Document: 18 Page: 68 Filed: 03/21/2016

to have 'willfully' infringed a patent of which the party had no knowledge."); *Pacing Techs., LLC v. Garmin Int'l, Inc.*, No. 12-cv-1067, 2013 U.S. Dist. LEXIS 15728, at *10 (S.D. Cal. Feb. 5, 2013) (to survive a motion to dismiss willful patent infringement claim, a complaint must plead more than bare allegation of actual knowledge).

Amazon contends that Plaintiffs have not pled a single fact supporting indirect or willful patent infringement by Amazon and thus are not entitled to the relief requested as to those causes of action. Dkt. # 8. Plaintiffs, on the other hand, insist they have properly pled their allegations of Amazon's indirect and willful infringement of their patent rights as alternative theories of recovery under the pleading rules.

Rule 8(d)(2) allows a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). If a party makes alternative statements, "the pleading is sufficient if any one of them is sufficient." *Id*. However, pursuit of alternate relief does not relieve plaintiffs of their obligation to plead sufficient factual allegations in support of that request. *Garcia v. M-F Athletic Co.*, No. 11-2430, 2012 WL 531008, at *2 (E.D. Cal. Feb. 17, 2012) (although plaintiffs are allowed to plead in the alternative, on a motion to dismiss the plaintiff must allege facts that "plausibly suggest an entitlement to relief" (quoting *Iqbal*, 556 U.S. at 680)).

Plaintiffs point to paragraphs 13, 16, 17, 18, and 21 of the Complaint to defend against the motion to dismiss. However, those paragraphs contain no factual allegations addressing the requisite elements to support claims for indirect and willful patent infringement, such as Amazons' knowledge of the patents at issue or Amazon's inducement of infringement by a third party.

2. Indirect Copyright Infringement

To state a claim for indirect copyright infringement, a plaintiff must plead facts showing that the defendant caused a third party's infringement or distributed a work with the intent to foster infringement by third parties. *See Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012). Here, Plaintiffs make no mention of a third party in their Complaint from which the Court can infer inducement. Furthermore, the Complaint contains no allegations that Amazon directed or influenced any third party to infringe upon the federal copyright or patent rights held by the Plaintiffs.

In sum, Plaintiffs have offered insufficient factual support for their alternate theories of recovery based on indirect or willful patent infringement and indirect copyright infringement. Accordingly, those portions of Plaintiffs' Prayer for Relief are stricken as follows: Paragraph C of the Complaint is STRICKEN IN PART as to the words "and increased or enhanced damages"; Paragraph D of the Complaint is STRICKEN; and Paragraph L of the Complaint is STRICKEN IN PART as to the words "inducement and contributory infringement."

## IV. CONCLUSION

Having considered the motion, the response and reply thereto, and the remainder of the record the Court hereby finds and ORDERS:

(1) Defendant's Motion to Dismiss, In Part (Dkt. # 8) is GRANTED;

(2) Counts III, V, and VII of the Complaint are dismissed without prejudice and with leave to amend;

(3) Paragraph C of the Complaint is STRICKEN IN PART as to the words "and increased or enhanced damages";

(4) Paragraph D of the Complaint is STRICKEN;

(5) Paragraph L of the Complaint is STRICKEN IN PART as to the words "inducement and contributory infringement";

(6) Plaintiffs are ORDERED to SHOW CAUSE within twenty one (21) days why FAC System, LLC should not be joined as a necessary party. Defendant is permitted to file a response brief within fourteen (14) days of Plaintiffs' Response to Order to Show Cause.

Dated this 11th day of April 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MILO & GABBY, LLC, and KAREN KELLER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | CASE NO. C13-1932RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment on the remaining claims in this action. Dkt. #30. Defendant, Amazon.com, Inc. ("Amazon"), argues that it is entitled to summary judgment on Plaintiffs' remaining claims for direct patent infringement, direct copyright infringement, false designation of origin under the Lanham Act, and violation of the Digital Millennium Copyright Act, primarily because the alleged infringing actions were committed by third-party vendors and not Defendant. *Id.* Plaintiffs argue in opposition that Defendant is liable under several theories of law, including vicarious liability, such that summary judgment is precluded. Dkt. #36. Having reviewed the parties' briefing, and having determined that no oral argument is necessary on this motion, the Court disagrees with Plaintiffs in part and GRANTS IN PART and DENIES IN PART Defendant's motion.

## II. BACKGROUND[1]

Plaintiff MILO & GABBY, LLC is a Washington State limited liability company that designs and sells animal-shaped pillow cases, among other accessories and bedding products. Plaintiff Karen Keller and her husband are the founders and product designers of Milo & Gabby, LLC ("Milo & Gabby"). Dkt. #1 at ¶ 7. According to Ms. Keller, the couple's four children and two family pets inspired the Kellers to create the Cozy Companion Pillowcases product line for Milo & Gabby. Dkt. #1 at ¶ 7. The line consists of eight animal shaped pillowcases that function as a combination between a pillow and a stuffed animal.

Plaintiffs are the authors and owners of various U.S. Copyrights and U.S. Design Patents. *See id.* at ¶ 10. On September 11, 2007, the Milo & Gabby design mark was registered with the U.S. Patent and Trademark office and was assigned U.S. Trademark Registration Number 3291697. *Id.* at ¶ 8. In addition, Milo & Gabby's website and marketing images are protected by valid U.S. copyrights. *Id.* at ¶ 10.

For several years, Milo & Gabby has designed, sold, and distributed its products to retailers and e-tailers throughout the United States and internationally. *Id.* at ¶ 11. During this time, Milo & Gabby's animal-themed children's accessories have seen commercial success. *Id.* In 2012, Milo & Gabby entered into an exclusive license arrangement in Asia, and since then the company has made promising gains. *Id.* Milo & Gabby aims to further expand its operations by entering into license agreements throughout North America. *Id.* at ¶ 12. However, Milo & Gabby claims these efforts were halted when Amazon.com allegedly began selling direct knock-off copies of Milo & Gabby's Cozy Companion Products. *Id.* at ¶ 13.

---

[1] The Court draws this factual background from Plaintiffs' Complaint and Defendant's motion for summary judgment, as Plaintiffs failed to set forth their own separate statement of facts in opposition to the instant motion. *See* Dkt. #36.

Amazon is a company that operates a widely used internet service retail website at http://www.amazon.com. Dkt. #35 at ¶ 2. Amazon.com enables third-party vendors to sell and distribute a variety of products to the public, while Amazon "fulfills" the orders through Amazon.com. Dkt. #35 at ¶ ¶ 2-3 and 11.

When a third-party seller wants to offer a new product for sale on the Amazon.com platform, the third-party seller is responsible for sending Amazon, via an automated file upload system, content related to the new product, such as a product description, an image of the product, and the product's price. *Id.* at ¶ 5. This content is used to automatically generate a "product detail page" and, in some instances, to create advertisements related to the new product. *Id.* at ¶ 6; Dkt. #33 at ¶ 4; and Dkt. #32 at ¶ 2. The third-party seller is responsible for the uploaded content, and specifically represents and warrants that it has the right to grant Amazon a license to use all content, trademarks, and other materials provided by it. Dkt. #35, Ex. A at ¶ ¶ 4-5 & Definitions and Ex. B. Under Amazon's Intellectual Property Violations Policy, third-party sellers are responsible for ensuring that the products they offer for sale are legal. *Id.* at ¶ 9 and Ex. D. With respect to images, third-party sellers agree that it is their responsibility to "ensure that [they] have all the necessary rights for the images [they] submit." *Id.* at ¶ 10 and Ex. E.

Third-party sellers may ship their products to customers directly or, for a fee, use the "Fulfillment by Amazon" ("FBA") service. Dkt. #34 at ¶ 2. Third-party sellers who use Amazon's FBA service retain legal title to their products, while Amazon provides fulfillment services for the products, such as storage and shipping. *Id.* at ¶ ¶ 3-4.

Plaintiffs allege that Amazon offered and sold infringing pillowcases via Amazon.com, using their marks and copyrighted images in the pillowcase offerings. Plaintiffs contends that

Amazon is "the real 'seller' of the knock-off products" because: (1) the "products are advertised on the amazon.com domain"; (2) "[p]ayment is made directly to Amazon"; (3) "Amazon issues the invoice and tracking information"; (4) "Amazon ships the products in a box that bears the 'Amazon' logo"; and (5) "Amazon broadcasts email advertisements from its own account (not the manufacturer's) offering the knock-off products." Dkt. #11 at 3.

However, according to Amazon, all allegedly infringing pillowcases at issue in this case were offered and sold by third-party sellers. Dkt. #35 at ¶ 15. Amazon is not the seller of record for any of the allegedly infringing pillowcases. *Id.* and Dkt. #1, Ex. C. The content for the allegedly infringing pillowcases (including product name, description, and images) displayed by Amazon was provided by third-party sellers. Dkts. #35 at ¶ 16; #33 at ¶ 3; and #32 at ¶ 3. Amazon did not actively copy any of Plaintiffs' images. Dkt. #35 at ¶ 16. Nor did Amazon alter, modify, or remove any copyright registration information, or other information, related to any images or content supplied by third-party sellers in conjunction with third-party seller offerings of the allegedly infringing pillowcases. *Id.* In fact, all images and other content provided to Amazon by third-party sellers did not contain any visible patent, copyright, or trademark registration information. *Id.* Amazon did provide FBA services to one of the third-party sellers (FAC System LLC) that offered allegedly infringing pillowcases. *Id.* at ¶ 17.

Upon receipt of the instant lawsuit in October 2013, Amazon investigated Plaintiffs' allegations and removed within days the allegedly infringing pillowcase offerings. Dkt. #35 at ¶ 20. During the course of this case, additional third-party sellers have offered allegedly infringing pillowcases. *Id.* at ¶ 21. As soon as Amazon learned of, or was made aware of, the additional allegedly infringing offerings, Amazon also promptly removed the offerings. *Id.*

On October 24, 2013, Plaintiffs filed the instant lawsuit alleging that Amazon was using Plaintiffs' intellectual property to wrongfully market, sell, and distribute inferior-quality knockoffs of Plaintiffs' animal-shaped pillowcases on the amazon.com website. On April 11, 2014, the Court granted Defendant's Rule 12(b)(6) motion and dismissed Plaintiffs' claims for unfair competition under Washington's Consumer Protection Act; right of publicity; and trademark counterfeiting. Dkt. #13. The Court also struck Plaintiffs' claim for patent infringement based on any allegation of induced, contributory, or willful patent infringement, as well as Plaintiffs' claim for indirect copyright infringement. *Id.* The parties have since attempted to resolve this matter and have agreed that a *Markman* hearing is not necessary as the patents at issue are design patents. Accordingly, the instant motion is now ripe for review.

## III. DISCUSSION

### A. Plaintiffs' Overlength Brief

As an initial matter, the Court addresses Plaintiffs' overlength brief which was filed without permission of the Court. This Court's Local Rules specifically provide that motions for summary judgment and briefs in opposition thereto shall not exceed 24 pages in length. LCR 7(e)(3). Further, the Rules provide that, while disfavored, parties may seek permission to file overlength briefs, and such requests must be filed three days prior to the date the underlying brief is due. LCR 7(f). No such permission was sought by Plaintiffs in this case. Rather, Plaintiffs simply filed a 32-page opposition brief. Dkt. #36. Because Plaintiffs did not seek permission to file eight extra pages of briefing, the Court refuses to consider certain text not contained within the applicable page limits. LCR 7(e)(6). In this case, in an effort to review the substantive arguments made by Plaintiffs, the Court will exclude from consideration the first five pages of the brief, which encompass the introduction, summary judgment standard

and a motion to strike certain of Defendant's declarations supporting its motion for summary judgment. Dkt. #36 at 1-5. The Court also will not consider the final page of the brief, which consists of a one-sentence conclusion. DKt. #36 at 2. The Court will consider Plaintiffs' substantive arguments contained at pages 5-31 of their brief.[2]

**B. Plaintiffs' Motion to Strike**

Because Plaintiffs' motion to strike will not be considered, the Court will review all evidentiary material presented by Defendant, and will afford it due consideration as discussed herein.

**C. Legal Standard on Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). [T]he issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to

[2] The Court has also considered Plaintiffs' supplemental authority submitted on July 7, 2015. Dkts. #41 and #42.

require a jury or judge to resolve the parties' differing versions of the truth at trial. *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**D. Direct Copyright Infringement**

Plaintiffs allege that Amazon publicly displayed Plaintiffs' copyrighted images on the Amazon.com website and distributed allegedly infringing goods with Plaintiffs' copyrighted images on the product labels in violation of established copyright laws. Dkt. #1 at ¶ ¶ 28-31. Defendant argues that this claim must be dismissed because there is no evidence that Amazon actively participated in, or directly caused, the alleged copying of Plaintiffs' images, and even if there was such evidence, Amazon is immune from liability under the Section 512(c) safe harbor provision of the Digital Millenium Copyright Act ("DMCA"). The Court agrees with Defendant.

*1. Direct Copyright Infringement*

"'To establish a claim of copyright infringement by reproduction, the plaintiff must show ownership of the copyright and copying by the defendant.'" *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1066-67 (9th Cir. 2014) (quoting *Kelly v. Arriba Soft Corp.*,

336 F.3d 811, 817 (9th Cir. 2003)); *see also* 17 U.S.C. §§ 106(1), 501(a). Accordingly, infringement of the reproduction right requires "copying *by* the defendant," which comprises a requirement that the defendant cause the copying. *Fox Broad. Co.*, 747 F.3d at 1067 (emphasis added; citations omitted). In this case, there is no evidence in the record that Amazon actively reviewed, edited, altered or copied Plaintiffs' images. *See* Dkt. #35 at ¶ ¶ 17-18. Rather, the content of the website was provided by a third-party vendor, and was handled in an entirely automated manner to generate product detail pages or ads. Dkts. #35 at ¶ 6; #33 at ¶ 3; and #32 at ¶ 2. Plaintiffs respond with two arguments – first, that Defendant is vicariously liable for the third-party's infringement, and second, that Defendant is liable for direct infringement because it accepts and stores the infringing images. Dkt. #36 at 7-21.

The Court first addresses Plaintiffs' vicarious liability arguments. Dkt. #36 at 7-12 and14-21. A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from *another's* infringing activity and "has the right and ability to supervise" the infringing activity. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citations omitted). "Financial benefit exists where the availability of infringing material 'acts as a "draw" for customers.'" *Id.* at 1078 (citations omitted).

Plaintiffs have never raised this theory of vicarious liability in their Complaint, nor have they alleged any facts in their Complaint providing notice to Defendant that they intended to advance such a theory. *See* Dkt. #1. Rather, Plaintiffs have alleged that Amazon, "without authorization, is distributing copies of Milo & Gabby's copyrighted works as the Amazon knock-offs and as labels on the Amazon knock-offs. . . ., is publicly displaying numerous Milo & Gabby copyrighted images on the amazon.com website. . . ., [and] is distributing numerous Milo & Gabby copyrighted images on the labels of its Amazon knock-off products. . . ., [in]

violation of the U.S. Copyright Act, 15 U.S.C. § 501, *et. seq*." Dkt. #1 at ¶ ¶ 29-32; *see also* Dkt. #1 at ¶ ¶ 7-24. After the Court previously examined this copyright infringement claim and dismissed it to the extent the claim was based on a theory of indirect trademark infringement, Dkt. #13, the only remaining basis for the claim has been direct infringement. Plaintiffs never moved to amend the Complaint to add a claim for vicarious infringement or seek clarification that any theory of vicarious infringement had not been subsumed in the Court's ruling on indirect infringement. Accordingly, the Court will not consider Plaintiffs' vicarious liability arguments. *Pickern v. Pier 1 Imports (U.S.), Inc*., 457 F.3d 963, 965 (9th Cir. 2006) (finding that a district court need not address allegations raised for the first time in response to a motion for summary judgment if the plaintiff's "pleadings did not provide sufficient notice of those allegations."); *Williams v. Fed. Express Corp.*, 2013 U.S. Dist. LEXIS 72722 at *25 (W.D. Wash. May 22, 2013) (dismissing a claim on the basis that a plaintiff may not assert new causes of action or theories of recovery for the first time in an opposition to a motion for summary judgment).

Thus, the Court turns to Plaintiffs' argument that Defendant's acceptance and storage of the alleged infringing images alone is enough to violate the Copyright Act. Dkt. #36 at 12-14. Central to a finding of direct copyright infringement is the principle that a defendant must "actively" engage in one of the protected activities under the Copyright Act. In *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp.2d 1146 (C.D. Cal. 2002), the Central District of California collectively examined cases involving liability and computer technology. The *Perfect 10* Court noted that the Ninth Circuit and other District Courts have repeatedly rejected arguments of direct infringement where software or hardware schemes automatically produce copies of the allegedly infringing images and the defendants do not actively participate in such

activity. *Perfect 10*, 213 F. Supp.2d at 1167-69. The Court also noted that other courts had found direct infringement where the defendants were:

> encouraging subscribers to upload files onto its system, viewing the files in the upload file, and *then* moving the uploaded files into files generally available to subscribers. This transformed the defendants from passive providers of a space to active participants in the process of copyright infringement. The moving of the files, accomplished by employees constituted the distribution, and the display of those copies after the BBS's employees *placed* the files there violated the right of display.

*Perfect 10*, 213 F. Supp.2d 1168 (citations omitted; emphasis in original).

In the instant case, the Court finds the circumstances more akin to those where software or hardware schemes automatically produce copies of the allegedly infringing images and the defendants do not actively participate in such activity. Indeed, the evidence in the record demonstrates that the content of the detail pages and advertisements was supplied by third-parties via an automated file upload system, and did not originate from Amazon. Dkts. #33 at ¶ 4; #32 at ¶ ; and #35 at ¶ ¶ 6 and 17. This evidence has gone un-refuted by Plaintiffs. Thus, it does not appear that Amazon actively participated in the alleged copying of the digital images at issue.

Finally, the Court rejects Plaintiffs' contention that Amazon is liable for trademark infringement based on its sales and shipment of physical items. Here, the evidence demonstrates that Amazon is not the seller of the alleged infringing products. *See* Dkt. #35 at ¶ 12. Likewise, third-party sellers retain full title to and ownership of the inventory sold by the third party. Dkt. #34 at ¶ 4. Plaintiffs have provided no evidence to the contrary with respect to any specific third party involved with the products in this case. Accordingly, the Court concludes that Amazon was not the seller of the products at issue here. *Hendrickson v.*

*Amazon.com, Inc.*, 298 F. Supp.2d 914, 915 (C.D. Cal. 2003) (holding that under similar circumstances Amazon was an internet service provider for the third party and not a seller).

*2. Safe Harbor Provision Under DMCA*

Amazon also asserts that even if there was an issue of fact with respect to its alleged copying of Plaintiffs' images, it would be immune from liability under the DMCA's safe harbor provision under Section 512(c). Dkt. #30 at 10-17. Plaintiffs respond that Amazon does not meet the statutory requirements for the safe harbor provision. Dkt. #36 at 15.

In *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp.2d 1090 (W.D. Wash. 2004), this Court examined the safe harbor provision at issue here. The Court explained:

> The DMCA safe harbors do not render a service provider immune from copyright infringement. They do, however, protect eligible service providers from all monetary and most equitable relief that may arise from copyright liability. Thus, even if a plaintiff can show that a safe harbor-eligible service provider has violated her copyright, the plaintiff will only be entitled to the limited injunctive relief set forth in 17 U.S.C. § 512(j).
>
> The DMCA "safe harbors provide protection from liability for: (1) transitory digital network communications; (2) system caching; (3) information residing on systems or networks at the direction of users; and (4) information location tools."
>
> To be eligible for any of the safe harbors, a service provider must meet a series of threshold conditions. At the outset, a party seeking safe harbor must, in fact, be a "service provider" as that term is defined under the DMCA. If it fits within that definition, the service provider must then show that it
>
>> (A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and
>>
>> (B) accommodates and does not interfere with standard technical measures.

> A service provider that does not meet these threshold conditions may not invoke the DMCA's safe harbor limitations on liability.
>
> Once the threshold conditions have been met, a service provider must then satisfy the specific requirements for the particular safe harbor. Amazon asserts that it is entitled to protection for information residing on systems or networks at the direction of users. The § 512(c) safe harbor protects a service provider from liability for "infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider." To qualify for the § 512(c) safe harbor, a service provider must show that:
>
>> (1) it has neither actual knowledge that its system contains infringing materials nor an awareness of facts or circumstances from which infringement is apparent, or it has expeditiously removed or disabled access to infringing material upon obtaining actual knowledge of infringement;
>>
>> (2) it receives no financial benefit directly attributable to infringing activity; and
>>
>> (3) it responded expeditiously to remove or disable access to material claimed to be infringing after receiving from the copyright holder a notification conforming with requirements of § 512(c)(3).

*Corbis*, 351 F. Supp.2d at 1098-99 (citations omitted). Thus, the Court must examine whether Amazon meets the safe harbor requirements in this case.

a. <u>Service Provider</u>

For purposes of the § 512(c) safe harbor, a service provider is defined as "a provider of online services or network access, or the operator of facilities therefore." 17 U.S.C. § 512(k)(1)(B). As this Court has previously determined, [t]his definition encompasses a broad variety of Internet activities, and there is no doubt that Amazon fits within the definition." *Corbis*, 351 F. Supp.2d at 1100.

b. <u>Infringement Policies</u>

Next, the Court determines whether Defendant meets the infringement policy requirement. The Ninth Circuit has held that the DMCA's infringement policy requirement has

three prongs. *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004). In *Ellison*, the Court explained that to meet the requirement a service provider must: 1) adopt a policy that provides for the termination of service access for repeat copyright infringers in appropriate circumstances; 2) inform users of the service policy; and 3) implement the policy in a reasonable manner. *Id.* Amazon has satisfied each of these prongs.

First, Amazon has adopted a policy that provides for the termination of users who are repeat infringers. Dkt. #35 at ¶ ¶ 3, 4, 6-9 and 22 and Exs. A, C, D and E. Plaintiffs do not dispute this fact. Second, Amazon informs all third-party sellers of its policies. *Id.* Plaintiffs also do not dispute this fact. Third, Amazon has implemented its policy in a reasonable manner. It provides mechanisms for the filing of claims of infringement, a process for removal of infringing products, and processes for the permanent suspension of repeat offenders. Dkt. #35 at ¶ ¶ 22-24. Plaintiffs also do not dispute these facts. Thus, the Court finds Amazon has established that it has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers.

c. Standard Technical Measures

The Court also finds that Amazon does not interfere with standard technical measures used to identify and protect copyrighted works. The DMCA defines the term "standard technical measures" as "technical measures that are used by copyright owners to identify or protect copyrighted works" and (a) "have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process," (b) "are available to any person on reasonable and nondiscriminatory terms," and (c)

"do not impose substantial costs on service providers or substantial burdens on their systems or networks." 17 U.S.C. § 512(i)(2). Plaintiffs have not challenged Amazon's assertion that it meets this element. Accordingly, this element is satisfied. *See Corbis*, 351 F. Supp.2d at 1106 (finding that this element is established where the plaintiff did not challenge Amazon's assertion of compliance).

d. Knowledge of Infringement

In order to qualify for protection under the safe harbor provision, Amazon must also show that it (1) does not have actual knowledge that the material or an activity using the material on the system or network is infringing, and (2) is not aware of facts or circumstances from which infringing activity is apparent. If a service provider does obtain either actual or apparent knowledge, it may still invoke the safe harbor if it acts expeditiously to remove or disable access to the infringing material. A notice of infringement constitutes evidence of the service provider's knowledge. Under the DMCA, the service provider may attempt to refute this knowledge by showing that the notice failed to substantially comply with the DMCA's notice requirements.

In the instant matter, Amazon presents evidence that it did not have actual notice of infringement prior to this case being filed. Dkt. #35 at ¶ 19. However, Plaintiffs also assert that Amazon did have notice. *See* Dkt. #31, Ex. A at *Response to Interrogatory No. 15*. Regardless of whether Plaintiffs can establish actual notice, the Court finds that Amazon acted expeditiously to remove the allegedly infringing material in response to the instant lawsuit. Dkt. #35 at ¶ 20-21. There is no evidence in the record to the contrary. Accordingly, the Court finds this element to be satisfied.

e. <u>Right and Ability to Control Infringing Activity and Financial Benefit</u>

Finally, a service provider will be excluded from the 512(c) safe harbor if it (1) "has the right and ability to control" the infringing activity, and (2) receives "a financial benefit directly attributable to the infringing activity." 17 U.S.C. § 512(c)(1)(B). Both elements must be met for the safe harbor to be denied. *See* 3 NIMMER ON COPYRIGHT, § 12 12B.04[A][1], at 12B-50.

Amazon argues that it does not have the practical ability to control the allegedly infringing conduct. Dkt. #30 at 15-17. In order to have the "right and ability to control," the service provider must "exert[] substantial influence on the activities of users." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1030 (9th Cir. 2013). However, a service provider does not have the practical ability to stop or limit infringing conduct simply because (1) the infringing content resides on the service provider's system; (2) the service provider had the ability to remove such material; (3) the service provider could have implemented, and did implement, filtering systems; and (4) the service provider could have searched for potentially infringing content. *See UMG Recordings*, 718 F.3d at 1030 ("Such circumstances are not equivalent to the activities found to constitute substantial influence in *Cybernet* and *Grokster*."). Rather, the law requires "something more." *Id.* In this case, the Court agrees with Amazon that Plaintiffs have failed to identify the "something more" such that Amazon had the *practical ability* to control infringement.

It is undisputed that "Amazon lacks the ability to analyze every image it receives from third party sellers, compare the submitted image to all other copyrighted images that exist in the world, and determine whether each submitted image infringes someone's copyright interest." Dkt. #35 at ¶ 26. As a result, Amazon lacks the ability to control the infringing activity. *See*

*Hendrickson*, 298 F. Supp.2d at 918 (finding that Amazon did not have the ability to control its users); *Corbis*, 351 F. Supp.2d at 1110 (concluding that "Amazon did not have the right or ability to control vendor sales"). Because Amazon does not have the right and ability to control the infringing material, it is not necessary for this Court to inquire as to whether Amazon receives a direct financial benefit from the allegedly infringing conduct. *Corbis*, 351 F. Supp.2d at 1110. Accordingly, the Court finds that Defendant meets all of the requirements for protection under the Section 512(c) safe harbor provision.

*3. Intentional Removal or Alteration of Copyrighted Material*

Plaintiffs have also alleged that Amazon violated the DMCA by intentionally removing or altering copyright management information from their copyrighted images. Dkt. #1 at ¶ 39. Amazon asserts that there is no evidence that it has done so, and provides evidence to refute the accusation. *See* Dkts. #31, Ex. A, *Response to Interrogatory No. 8* and #35 at ¶ ¶ 6 and 18. While Plaintiffs argue that Amazon's assertions are unsupported, an argument with which the Court disagrees, Plaintiffs fail to point to any evidence in the record rebutting Amazon's assertions. Indeed, Plaintiffs ignore the basic tenet that on a motion for summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251. Accordingly, the Court rejects Plaintiffs' argument.

For all of these reasons, the Court dismisses Plaintiffs' copyright infringement claim in its entirety.

**E. False Designation of Origin**

The Court next turns to Plaintiffs' claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). Dkt. #1 at ¶ ¶ 35-36.

*1. Claim Preemption*

Amazon first argues that Plaintiffs' Lanham Act claim should be dismissed because it is duplicative of the copyright claim. Dkt. #30 at 18-19. Lanham Act trademark claims that overlap with copyright claims are preempted when the Copyright Act provides an adequate remedy. *Dastar Corp. v. Twentieth Cent. Fox Corp.*, 539 U.S. 23, 34, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003); *Shaw v. Lindheim*, 919 F.2d 1353, 1364-65 (9th Cir. 1990). Plaintiffs respond that their trademark claim has been mischaracterized by Defendant and that it is not duplicative of the copyright claim. Dkt. #36 at 22-24.

In their Complaint, Plaintiffs allege their Lanham Act claim as follows:

> 35. Defendant Amazon's unauthorized use of Plaintiff's marketing materials and its reproduction and emulation of Plaintiffs' photographs, images, and products are intended to cause confusion, mistake or to deceive consumers as to the source of origin of their products. Defendant's actions are likely to cause members of the public who search for Milo & Gabby's genuine products to believe that the goods being offered for sale, sold, and imported by Amazon to believe that the Amazon knock-offs have an affiliation, connection, association, origin, or sponsorship relationship with Milo & Gabby.
>
> 36. Defendant's actions constitute a false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

Dkt. #1 at ¶ ¶ 35-36. In response to discovery, Plaintiffs described the factual basis of their claim:

> Amazon has violated M&G's rights in the following marks: MILO & GABBY; COZY COMPANIONS; Original M&G TM Number – 3291697; Additional M&G TM Number – 4644732.
>
> **INTERROGATORY NO. 17:** Describe in detail the facts supporting all allegations of Amazon's allegedly unauthorized use of Plaintiffs' asserted trademark.
>
> **RESPONSE**:
> The response to this Interrogatory can be derived from documents being produced by M&G, specifically a screen shot of Amazon's website where

> Milo & Gabby's Trademark was clearly readable. In addition, Amazon's wholesale copying of all of M&G's marketing materials, which were replete with references to M&G trademarks, including numerous misrepresentations that the products being purchased from Amazon were being sold in connection with the M&G marks.

Dkt. #31, Ex. A at *Response to Interrogatory Nos. 16 and 17.*

Trademark and copyright law have fundamentally different purposes. "Trademark law is concerned with the protection of symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp.2d 556, 563 (C.D. Cal. 2005) (quoting *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 63 (2d Cir. 2000)). In contrast, copyright law "protects the artist's right in an abstract design or other creative work." *Id.* Therefore, trademark law protects the distinctive source-distinguishing mark, while copyright law protects the work as a whole. *See Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp.2d 1, 13 (D.D.C. 2004).

The fact that the two areas of law protect against different wrongs is reflected in the many cases in which courts have analyzed the same set of facts under both trademark and copyright law without concluding that the trademark claims were "piggybacking" on the copyright claims. *See Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) (holding that an artist who developed a series of photographs which depicted Barbie in various absurd positions did not violate Mattel's copyright or trademark rights in Barbie doll); *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) (affirming a preliminary injunction prohibiting the publication of *The Cat NOT in the Hat! A Parody by Dr. Juice*, a rhyming summary of highlights from the O.J. Simpson trial, as violating Dr. Seuss's copyright and trademark rights); *Nintendo of Am., Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007 (9th Cir. 1994) (affirming district court's award of damages under both copyright and

trademark law where defendant copied Nintendo games (copyright infringement) and then sold the games as a package, but advertised that they were Nintendo products (trademark violation)); *Toho Co., Ltd. v. William Morrow & Co.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998) (issuing a preliminary injunction based on plaintiff's likelihood of success on both trademark and copyright claims where publisher was about to release book entitled "Godzilla" (trademark violation) that included images and photographs from original Godzilla film as well as descriptions of the character of Godzilla (copyright violations)).

In this case, Amazon argues that Plaintiffs' copyright and trademark claims overlap because the Complaint relies on similar factual allegations of copying for both its trademark and copyright claims. *See* Dkt. #1 at ¶ ¶ 28-31. But as Plaintiffs point out, Plaintiffs are seeking remedies for distinct wrongs under each legal framework. Plaintiffs' rights in the image and physical construct of the pillow case (a puffy animal-shaped pillow case/stuffed animal) are being asserted under copyright law because the images and physical construct are the creative work, while the name and title of the pillow cases ( Milo & Gabby and Cozy Companion) are protected under trademark law because it is the name and title that are the source-identifying marks associated with Plaintiffs. Dkt. #36 at 23.

The Court agrees that Plaintiffs' claims sound in both trademark and copyright law. The Court will therefore consider the merits of Plaintiffs' trademark claims.

*2. Trademark Infringement*

As noted above, Plaintiffs' trademark infringement claim is based on section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides, in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of

Case: 16-1290 Document: 18 Page: 90 Filed: 08/21/2016

> fact, which -- (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To prevail on such a claim, Plaintiffs must show that they have a valid, enforceable mark entitled to protection under the Act, and that Defendant's use of the mark creates a likelihood of confusion. *See Brookfield Communs., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

In this case, Plaintiffs' claim fails because there is no evidence of a valid, enforceable mark entitled to protection under the Act. Plaintiffs have asserted that their trademark claim rests on alleged violations of "MILO & GABBY; COZY COMPANIONS; Original M&G TM Number – 3291697; Additional M&G TM Number – 4644732". Dkt. #31, Ex. A at *Response to Interrogatory No. 16*. "MILO & GABBY; COZY COMPANIONS" is a mixed word and design mark registered as U.S. Trademark No. 3291697 (the "Design Mark"). "MILO & GABBY" is a character mark registered as U.S. Trademark No. 4644732 (the "Word Mark"). Dkt. #31 at ¶ 10 and Ex. A at *Response to Interrogatory No. 16*. Defendants assert, and Plaintiffs have offered no evidence in rebuttal, that there is no evidence of any alleged use by Amazon of the Design Mark. Rather, it appears Plaintiffs assert an alleged use of the Word Mark via an image that allegedly depicts Plaintiffs' marketing materials and reflects the text "Milo & Gabby." *Id.* However, that Word Mark was not registered until November 25, 2014, over a year after the lawsuit was filed and the mark allegedly used. Dkt. #31 at ¶ 11 and Ex. B. Therefore, there was no presumption of validity at the time of alleged use. *See Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 789 (9th Cir. 1981) (explain that without federal registration, there is no presumption of validity).

Moreover, to the extent Plaintiffs now claim that Amazon is infringing "COZY COMPANION," a purported common-law mark, *see* Dkt. #36 at 22-23, this Court takes judicial notice of the fact that COZY COMPANION is not a registered trademark. Dkt. #39 at 11, fn. 15. Further, Plaintiffs have failed to provide any evidence from which a jury could conclude that they own any rights in a COZY COMPANION mark, that this alleged mark serves as an identifier of source in the minds of consumers such that it is entitled to legal protection, or that there is any evidence of confusion. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014) (a plaintiff asserting an unregistered, common-law trademark must establish both ownership and protectability of the mark, including proof of distinctiveness).

Finally, the Court addresses Plaintiffs' arguments with respect to vicarious liability under the Lanham Act or "palming off" in violation of the Lanham Act, which have been raised for the first time in response to Defendant's summary judgment motion. Plaintiffs have never raised these theories of liability in their Complaint, nor have they alleged any facts in their Complaint providing notice to Defendant that they intended to advance such theories. *See* Dkt. #1. Accordingly, the Court will not consider Plaintiffs' arguments. *Pickern*, 457 F.3d at 965; *Williams*, 2013 U.S. Dist. LEXIS 72722 at *25.

For all of these reasons, the Court dismisses Plaintiffs' Lanham Act claim in its entirety.

**F. Direct Patent Infringement**

Lastly, the Court turns to Plaintiffs' patent infringement claim. Plaintiffs allege as the basis for their patent infringement claim:

> 26. As set forth above, Plaintiff Milo & Gabby is the owner of several design patents that protect the Milo & Gabby Cozy Companion Products. Defendant Amazon is making, using, selling, offering for sale, and/or importing the Amazon knock-offs which are virtually indistinguishable (but for quality) from Plaintiff Milo & Gabby's patented designs.

> 27. Defendant Amazon's actions constitute patent infringement under 35 U.S.C. § 271, *et seq*.

Dkt. #1 at ¶ ¶ 26-27. To succeed on a claim of direct patent infringement, a plaintiff must establish ownership of the patents and show that the accused infringer, without authorization, made, used, offered to sell, sold, or imported the patented invention. 35 U.S.C. § 271(a).

On summary judgment, Defendant argues that there is no evidence Amazon has ever "sold" or "offered to sell" such products within the meaning of 35 U.S.C. § 271(a). Dkt. #30 at 23-24. Plaintiffs oppose the motion, arguing that Amazon has indeed offered to sell the products within the meaning of the statute. Dkt. #36 at 28-31.

The Federal Circuit Court of Appeals has examined the term "offered to sell" in the context of patent litigation:

> We have defined liability for an "offer to sell" under section 271(a) "according to the norms of traditional contractual analysis." Thus, the defendant must "communicate[] a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude'" it. We considered the meaning of "offer to sell" in *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373 (Fed. Cir. 1998). The defendants in *3D Systems* provided potential California customers with price quotations, brochures, specification sheets, videos, and sample parts related to their product. *Id*. at 1379. Based on this activity, the patentee sued the defendants in the United States District Court for the Central District of California for infringement of a variety of patents, arguing that the defendants were liable for "offering to sell" the patented inventions. *Id.* at 1377. The defendants moved to dismiss the suit for lack of personal jurisdiction. *Id.* The district court granted the motion to dismiss; on appeal, this court reversed. We concluded that although the "price quotation letters state on their face that they are purportedly not offers," the letters could be "regarded as 'offers to sell' under section 271 based on the substance conveyed in the letters, *i.e.*, a description of the allegedly infringing merchandise and the price at which it can be purchased." We also noted that "one of the purposes of adding 'offer[] to sell' to section 271(a) was to prevent exactly the type of activity Aaroflex has engaged in, *i.e.*, generating interest in a potential infringing product to the commercial detriment of the rightful patentee."

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005).

The Court agrees with Plaintiffs that under the applicable definition of "offer to sell," questions of fact preclude summary judgment on this claim. As illustrated in Exhibit B to the Complaint, Amazon displays photos of the item for sale and invites the purchaser to place an order and buy the item through Amazon. Dkt. #1, Ex. B. While Amazon notes that the item is "sold" by a third-party vendor and "fulfilled" by Amazon, the fact that the item is displayed on the amazon.com website and can be purchased through the same website, could be regarded as an offer for sale for the reasons discussed in *MEMC, supra.* Likewise, looking at the website, a potential purchaser may understand that his or her assent is all that is required to conclude the deal. Indeed, the website notes the price, allows the buyer to choose a quantity, and allows the buyer to then conclude the purchase. For these reasons, summary judgment is inappropriate on this claim, and the Court will not dismiss it.

However, the Court clarifies the scope of the patent infringement claim to include <u>only the five patents actually alleged to have been infringed in the Complaint</u>. Dkt. #1 at ¶ 25. Defendant notes that Exhibit G to the Complaint reflects a sixth patent, U.S. Design Patent No. D545, 605 (the "'605 patent") that Plaintiffs are apparently attempting to put into contention now. *See* Dkt. #31 at ¶ 12 and Ex. A at *Response to Interrogatory No. 2*. However, infringement of that patent was never alleged in the Complaint, nor was it included in Plaintiffs' Preliminary Infringement Contentions, Dkts. #1 and #31 at ¶ 12 and Exs. C and D, and Plaintiffs have never moved to amend their Complaint to assert such a claim. Accordingly, the '605 patent will not be at issue in this matter.

**G. Unavailability of the Court for Trial Date**

This matter is currently scheduled for trial on September 28, 2015. However, the Court will be unavailable on that date due to other scheduled matters. Accordingly, the Court will be contacting the parties to discuss a new trial date. The Court advises that the parties meet and confer in the meantime to discuss mutually-agreeable potential trial dates and the length of the trial.

**H. Joinder of Necessary Party**

This Court previously asked Plaintiffs to show cause why FAC System, LLC, should not be joined as a necessary party to this action. Dkt. #13 at 3, fn. 2. Plaintiffs filed a response, to which Defendant replied; however, the Court has not since addressed the issue, and no party has ever actually moved for such joinder. Because the Court has determined that Plaintiffs' copyright infringement and Lanham Act claims should be dismissed, but their patent infringement claim shall proceed, the Court invites Defendant to make a formal motion for joinder should Defendant believe such joinder is necessary, no later than 10 days from the date of this Order. Any such motion shall be noted on the Court's motion calendar in accordance with the Local Rules. Plaintiffs shall file any response in accordance with the Court's Local Rules. The parties should also address the affect of any joinder of a new party on the trial date in their briefing.

## IV. CONCLUSION

Having reviewed the parties' cross-motions, the responses in opposition thereto and replies in support thereof, along with the supporting declarations and exhibits and the remainder of the record, the Court hereby FINDS and ORDERS:

1) Defendant's Motion for Summary Judgment (Dkt. #30) is GRANTED IN PART AND DENIED IN PART as discussed above.

2) Plaintiffs' copyright and Lanham Act claims are dismissed in their entirety. Plaintiffs' patent infringement claim remains.

3) The scope of Plaintiffs' patent infringement claim includes only the five patents actually alleged to have been infringed in the Complaint at Dkt. #1, ¶ 25.

DATED this 16th day of July 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MILO & GABBY, LLC, and KAREN KELLER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | ) | CASE NO. C13-1932RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES |

## I. INTRODUCTION

This matter comes before the Court on Defendant Amazon's Motion for Attorney's Fees and Costs. Dkt. #53. Defendant argues that it is entitled to fees and costs as the prevailing party under both the Copyright Act and the Lanham Act. *Id.* In response, rather than address the fee issue directly, Plaintiffs appear to re-argue many of the issues raised in their prior opposition to summary judgment. Dkt. #61. Having reviewed the parties' briefing, and having determined that no oral argument is necessary on this motion, the Court now GRANTS Defendant's motion.

## II. BACKGROUND

A more complete background has been set forth in this Court's Order on summary judgment, which is incorporated by reference herein. Dkt. #44. On October 24, 2013, Plaintiffs filed the instant lawsuit alleging that Amazon was using Plaintiffs' intellectual

property to wrongfully market, sell, and distribute inferior-quality knockoffs of Plaintiffs' animal-shaped pillowcases on the amazon.com website. On April 11, 2014, the Court granted Defendant's Rule 12(b)(6) motion and dismissed Plaintiffs' claims for unfair competition under Washington's Consumer Protection Act; right of publicity; and trademark counterfeiting under the Lanham Act. Dkt. #13. The Court also struck Plaintiffs' claim for patent infringement based on any allegation of induced, contributory, or willful patent infringement, as well as Plaintiffs' claim for indirect copyright infringement. *Id.* On July 16, 2015, this Court granted in part and denied in part Defendant's motion for summary judgment, dismissing Plaintiffs' copyright and remaining Lanham Act claims in their entirety, but allowing a direct patent infringement claim to proceed. Dkt. #44 at 25. Defendant now seeks fees and costs based on the dismissed claims.

## III. DISCUSSION

### A. Fees for Prevailing Party on Copyright Claim

This Court has discretion to grant attorney's fees and costs to a prevailing party on a copyright claim. The United States Supreme Court has mandated that "[p]revailing plaintiffs and prevailing defendants are to be treated alike" by the courts. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Relevant to the consideration of such an award is:

> the Copyright Act's primary objective, "to encourage the production of original literary, artistic, and musical expression for the good of the public"; the fact that defendants as well as plaintiffs may hold copyrights and "run the gamut from corporate behemoths to starving artists"; the need to encourage "defendants who seek to advance a variety of meritorious copyright defenses ... to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement"; and the fact that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright."

*Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 557-58 (9th Cir. 1996) (ellipsis in original; citations omitted) (*Fogerty*, 510 U.S. at 524-27). Defendant argues that its successful defense of Plaintiffs' copyright claims furthered the policies of the Copyright Act under the circumstances of this case, and therefore an award of fees and costs is appropriate. Dkt. #53 at 3-5.

Plaintiffs do not directly respond to Defendant's motion. First, they attack the validity of the Declarations previously relied on by Defendant's to support its motion for summary judgment, but which have not been cited in support of the instant motion for fees and costs and are therefore irrelevant. Dkt. #61 at 1-2. Plaintiffs then rehash at length their arguments previously raised in opposition to summary judgment pertaining to whether Defendant is a "seller" for purposes of the Copyright Act, asserting that the issue has not been fully resolved by the Court. Dkt. #61 at 2-4. Plaintiffs also appear to believe that this Court never addressed the sale of physical products. Such arguments completely ignore the rulings of this Court. Indeed, in its prior ruling on summary judgment, this Court expressly rejected:

> Plaintiffs' contention that Amazon is liable for [copyright][1] infringement **based on its sales and shipment of physical items**. Here, the evidence demonstrates that Amazon is not the seller of the alleged infringing products. *See* Dkt. #35 at ¶ 12. Likewise, third-party sellers retain full title to and ownership of the inventory sold by the third party. Dkt. #34 at ¶ 4. Plaintiffs have provided no evidence to the contrary with respect to any specific third party involved with the products in this case. Accordingly, the Court concludes that Amazon was not the seller of the products at issue here. *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp.2d 914, 915 (C.D. Cal. 2003) (holding that under similar circumstances Amazon was an internet service provider for the third party and not a seller).

Dkt. #44 at 10-11 (emphasis added).

---

[1] While the Court inadvertently used the term "trademark" infringement in its order, it should have been obvious to all parties that the Court was actually discussing copyright infringement, as the legal discussion referenced the Copyright Act, the title of the section of the Order referenced "Direct Copyright Infringement," and the parties argued copyright infringement in their briefs. *See* Dkts. #30, #36, #39 and #44 at 7-11.

The Court assumes that Plaintiffs have raised these arguments to demonstrate the reasonableness of their underlying opposition on summary judgment, which is one of the factors that may be considered on a motion for attorney's fees and costs. *Halicki Films, LLC v. Sanderson Sales and Marketing*, 547 F. 3d 1213, 1230 (9th Cir. 2008). The Court has considered Plaintiffs' arguments, and, although the Court does not find them directly on point, ultimately, even though Plaintiffs claims were summarily dismissed, it cannot be said that Plaintiffs claims were frivolous, that legal or factual arguments underlying those claims were objectively unreasonable, or that an award of costs is necessary to advance considerations of deterrence. As a result, the Court denies Defendant's motion for fees and costs under the Copyright Act.

**B. Fees for Prevailing Party on Lanham Act Claim**

Thus, the Court turns to Defendant's request for fees and costs under the Lanham Act. Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Ninth Circuit has held that "this requirement is met when the case is *either* 'groundless, unreasonable, vexatious, *or* pursued in bad faith.'" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002) (emphasis in original); *accord Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 687 (9th Cir. 2012). The Ninth Circuit has explained that the "exceptional circumstances" requirement is to be construed narrowly. *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008). Where a plaintiff is "able to provide some legitimate evidence" in support of his claims, the case will "likely fall on the unexceptional side of the dividing line." *Secalt*, 668 F.3d at 688.

As the Supreme Court recently held construing identical language under the Patent Act, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, __ U.S. __, 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014). However, "the mere absence of bad faith on [the losing party's part] does not render [the prevailing party] ineligible for attorneys' fees." *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d at 687 (quoting opinion below and affirming). Although the Lanham Act may not require *subjective* bad faith, a defendant seeking attorneys' fees under the Lanham Act must demonstrate, at minimum, that "the plaintiff has no reasonable or legal basis to believe in success on the merits." *Id.*

In this case, the Court finds Plaintiffs' Lanham Act claims to have been groundless and unreasonable. As an initial matter, the Court dismissed Plaintiffs' trademark counterfeiting claim for Plaintiffs' failure to state a plausible claim for relief. Dkt. #13 at 11-16. The Court noted:

> Plaintiffs fail to present plausible factual support for trademark counterfeiting beyond bare recitation of the reproduction element of the claim. As Amazon points out, Plaintiffs cannot sustain a claim for trademark counterfeiting based upon exhibits that do not show any reproduction of Plaintiff's registered mark. To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Complaint's allegations concerning unauthorized use of Plaintiffs' trademark do not meet this standard.
>
> . . .
>
> Here, the bare factual allegations supporting Plaintiffs' trademark counterfeiting claim establish neither counterfeiting nor intent. Rather, Plaintiffs simply provide a formulaic recitation of the elements establishing liability under 15 U.S.C. § 1114. Plaintiffs have offered no plausible, factual basis for their allegations, and thus supply no more than mere

> "labels and conclusions." *Twombly*, 550 U.S. at 555. Further, Plaintiffs offer no factual basis to support the intent and knowledge element of trademark counterfeiting. Accordingly, Plaintiffs' trademark counterfeiting claim and corresponding remedies are dismissed without prejudice.

Dkt. #13 at 14-16 (footnote omitted). Plaintiffs did not amend the Complaint at any point to re-plead this claim.

Next, the Court dismissed Plaintiffs' remaining Lanham Act claims in their entirety on summary judgment, in part because they failed to show any evidence of a valid enforceable mark entitled to protection. Dkt. #44 at 20. For reasons this Court does not understand, Plaintiffs now argue that the Lanham Act issues have yet to be decided and therefore fees under the Act should be denied. *See* Dkt. #61 at 5-6. Yet, the Court's prior Order on summary judgment could not be more clear:

> In this case, Plaintiffs' claim fails because there is no evidence of a valid, enforceable mark entitled to protection under the Act. Plaintiffs have asserted that their trademark claim rests on alleged violations of "MILO & GABBY; COZY COMPANIONS; Original M&G TM Number – 3291697; Additional M&G TM Number – 4644732". Dkt. #31, Ex. A at *Response to Interrogatory No. 16*. "MILO & GABBY; COZY COMPANIONS" is a mixed word and design mark registered as U.S. Trademark No. 3291697 (the "Design Mark"). "MILO & GABBY" is a character mark registered as U.S. Trademark No. 4644732 (the "Word Mark"). Dkt. #31 at ¶ 10 and Ex. A at *Response to Interrogatory No. 16.* Defendants assert, and Plaintiffs have offered no evidence in rebuttal, that there is no evidence of any alleged use by Amazon of the Design Mark. Rather, it appears Plaintiffs assert an alleged use of the Word Mark via an image that allegedly depicts Plaintiffs' marketing materials and reflects the text "Milo & Gabby." *Id.* However, that Word Mark was not registered until November 25, 2014, over a year after the lawsuit was filed and the mark allegedly used. Dkt. #31 at ¶ 11 and Ex. B. Therefore, there was no presumption of validity at the time of alleged use. *See Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 789 (9th Cir. 1981) (explain that without federal registration, there is no presumption of validity).
>
> Moreover, to the extent Plaintiffs now claim that Amazon is infringing "COZY COMPANION," a purported common-law mark, *see* Dkt. #36 at 22-23, this Court takes judicial notice of the fact that COZY COMPANION is not a registered trademark. Dkt. #39 at 11, fn. 15. Further, Plaintiffs

> have failed to provide any evidence from which a jury could conclude that they own any rights in a COZY COMPANION mark, that this alleged mark serves as an identifier of source in the minds of consumers such that it is entitled to legal protection, or that there is any evidence of confusion. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014) (a plaintiff asserting an unregistered, common-law trademark must establish both ownership and protectability of the mark, including proof of distinctiveness).
>
> Finally, the Court addresses Plaintiffs' arguments with respect to vicarious liability under the Lanham Act or "palming off" in violation of the Lanham Act, which have been raised for the first time in response to Defendant's summary judgment motion. Plaintiffs have never raised these theories of liability in their Complaint, nor have they alleged any facts in their Complaint providing notice to Defendant that they intended to advance such theories. *See* Dkt. #1. Accordingly, the Court will not consider Plaintiffs' arguments. *Pickern*, 457 F.3d at 965; *Williams*, 2013 U.S. Dist. LEXIS 72722 at *25.
>
> For all of these reasons, the Court dismisses Plaintiffs' Lanham Act claim in its entirety.

Dkt. #44 at 20-21. In this case, Plaintiffs essentially pursued a claim for which they had no evidentiary basis, and then attempted to circumvent that problem by improperly raising legal arguments never pled in their Complaint.[2]

Finally, Plaintiffs continue to assert that they will pursue their Lanham Act claims, stating in their opposition to the instant motion that: "M&G had, and has, ample basis to continue the Lanham Act causes of action given Amazon's intimate involvement in the selection, retention, and redistribution of images that bear M&G's trademarks." Dkt. #61 at 6. That assertion again ignores the prior rulings of this Court. The Court reminds Plaintiffs that, in no uncertain terms, their Lanham Act claims have been dismissed in their entirety, and warns Plaintiffs that if they continue to ignore this Court's rulings on those claims, they will be

[2] Plaintiffs also seem to believe that this Court's prior Minute Order directing a response to Defendant's motion for reconsideration on Plaintiffs' patent infringement claim has some bearing on the Lanham Act claim. *See* Dkt. #61 at 5 (referencing Dkt. #58). Nothing in the Court's Minute Order pertains to the Lanham Act claims at issue here, nor does the Minute Order lend any weight to Plaintiffs' arguments on the Lanham Act claims.

subject to sanction. The Court also agrees with Defendant that Plaintiffs' apparent willful ignorance of the Court's dismissal of their Lanham Act claims serves as another basis to find frivolousness in this matter.

As a result, for all of the reasons discussed herein, the Court finds this case to be "exceptional" under the Lanham Act and therefore awards attorney's fees and costs to Defendant.

## IV. CONCLUSION

Having reviewed Defendant's motion, the response in opposition thereto and reply in support thereof, along with the remainder of the record, the Court hereby FINDS and ORDERS:

1) Defendant's Motion for Fees and Costs (Dkt. #53) is GRANTED.

2) **Within fourteen (14) days from the date of this Order**, Defendant shall file a Supplemental Motion for Award of Fees and Costs, supplying this Court with detailed documentation supporting the requested fees and costs. Defendant shall note the Motion for consideration no later than two Fridays after the motion is filed. Plaintiffs shall file a response not to exceed ten (10) pages, no later than the Monday prior to the noting date. **No reply shall be filed**. Upon the completion of briefing, the Court will take this matter under consideration without oral argument.

DATED this 1 day of September 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MILO & GABBY, LLC, *et al.*

Plaintiffs,

vs.

AMAZON.COM, *et al.*

Defendants.

Case No. C13-1932RSM

OPINION OF THE COURT

## I. INTRODUCTION

In this action, Plaintiffs, Milo & Gabby, LLC and Karen Keller, sought money damages from Defendant, Amazon.com, Inc. ("Amazon"), for its "offering to sell" products that allegedly infringe certain design patents. Plaintiffs also sought an Order from this Court which would prevent Amazon from importing, offering to sell, or selling these products in the future. Amazon has stipulated that the allegedly infringing products are substantially similar to the designs covered by the Milo & Gabby patents. Further, the Court has previously determined that certain Third Parties – Da Fang Sun, Chongqin World First Electronic Commerce Co., Ltd., T Liu, FAC System, Dinding Zou, Qiumei Zhang, Charlotte Xia, Nimble Joy, Amanialarashi2165, and Monaqo – were responsible for providing the products that were accused of infringement. The Court has also previously determined that Amazon did not sell any of the allegedly infringing

products. Throughout the pendency of this case, Amazon has denied that it "offered to sell" the allegedly infringing products.

On October 26, 27 and 28, 2015, the Court conducted a Jury trial in this matter, with the agreement and understanding by the parties that any verdict would be only advisory in nature given that whether something constitutes an "offer to sell" is a question of law for the Court. However, the Court and the parties recognized that the answer to that question is dependent on underlying factual findings, which the Court found appropriate for the Jury to determine.

Following the trial, the Jury found in favor of Amazon, answering all of the following questions in the negative:

1. Do you find that Amazon, through its website, communicated a description of the allegedly infringing products? No.
2. Do you find that Amazon, through its website, communicated the price at which the allegedly infringing product could be purchased? No.
3. Do you find that Amazon provided the descriptions of the allegedly infringing products? No.
4. Do you find that Amazon set the price at which the allegedly infringing products could be purchased? No.
5. Do you find that Amazon set the quantity(ies) of the allegedly infringing product(s) for sale on its website? No.
6. Do you find that Amazon, through its website, communicated that it was willing to enter into a bargain to sell the allegedly infringing products? No.
7. . . .

8. Have Plaintiffs proven that it is more likely than not that Amazon offered to sell the alleged infringing products? No.

Dkt. #149.

The Court has since considered the evidence and testimony presented at trial, reviewed the parties' exhibits, and considered the Verdict of, and facts determined by, the Jury, and now enters the following Order also concluding that Amazon did not "offer to sell" the alleged infringing products and therefore is not liable to Plaintiffs for patent infringement.

## II. BACKGROUND

The Court has previously set forth the background of this matter and incorporates that background by reference herein. *See* Dkt. #44.

## III. DISCUSSION

The Federal Circuit defines "§ 271(a)'s 'offer to sell' liability according to the norms of traditional contractual analysis." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). "One of the purposes of adding 'offer [ ] to sell' to section 271(a) was to prevent . . . generating interest in a potential infringing product to the commercial detriment of the rightful patentee." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (quoting *3D Sys., Inc.*, 160 F.3d at 1379). "An offer to sell is a distinct act of infringement separate from an actual sale. An offer to sell differs from a sale in that an offer to sell need not be accepted to constitute an act of infringement." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1308 (Fed. Cir. 2010).

While the Federal Circuit has most often addressed "offer to sell" liability in the jurisdictional context, analyzing where the offer took place, this Court is not aware of any Federal Circuit case directly addressing the central issue before this Court – that is, <u>who</u> made the alleged "offer to sell." Thus, this Court acknowledges its difficulty in reaching its conclusion in this matter.

Nonetheless, based on the factual determinations made by the Jury, the Court concludes that Amazon did not "offer to sell the alleged infringing products in this case. Indeed, as noted above, the Jury specifically found the following:

- Amazon, through its website, did not communicate a description of the allegedly infringing products;
- Amazon, through its website, did not communicate the price at which the allegedly infringing product could be purchased;
- Amazon did not provide the descriptions of the allegedly infringing products;
- Amazon did not set the price at which the allegedly infringing products could be purchased;
- Amazon did not set the quantity(ies) of the allegedly infringing product(s) for sale on its website;
- Amazon, through its website, did not communicate that it was willing to enter into a bargain to sell the allegedly infringing products

Dkt. #149.

Based on these findings, and having reviewed the evidence and testimony presented in this matter, the Court can only conclude that Amazon did not offer to sell the alleged infringing products because there was no manifestation of the willingness of Amazon to enter into a

bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.

However, the Court is troubled by its conclusion and the impact it may have on the many small retail sellers in circumstances similar to the Plaintiffs. There is no doubt that we now live in a time where the law lags behind technology. This case illustrates that point. Amazon's representative, Christopher Poad, testified that Amazon completely changed the online market place by creating a platform where any seller can offer products to Amazon's customers. He further testified that Amazon allows sellers to offer their products with minimal effort, by simply filling out an online information form, clicking on an agreement to Amazon's terms and conditions, and providing certain banking information. Amazon then offers those sellers both payment processing and fulfillment services, all with an asserted interest in providing the best service to their customers. Mr. Poad also testified that when customers cannot resolve problems with a particular seller, Amazon will often step in to make things right. As a result, Amazon enables and fosters a market place reaching millions of customers, where anyone can sell anything, while at the same time taking little responsibility for "offering to sell" or "selling" the products.[1] Indeed, under the current case law, Amazon has been able to disavow itself from any responsibility for "offering to sell" the products at all. As noted above, the purpose of "adding 'offer [ ] to sell' to section 271(a) was to prevent . . . generating interest in a potential infringing

---

[1] The Court recognizes that Amazon asserts and embraces an interest in preventing counterfeit and dangerous products from being sold through its Amazon.com website, that it reserves the right to unilaterally remove such products from the website, and has created a mechanism by which intellectual property owners can complain about violations of property rights. The Court also acknowledges that Amazon removed the alleged infringing products in this case from the Amazon.com website, continued to monitor and remove those product pages throughout the litigation, and barred the other Defendant sellers from selling at all on Amazon.com.

product to the commercial detriment of the rightful patentee." *MEMC Elec. Materials, Inc.*, 420 F.3d at 1376. In this instance, the Court is not convinced that such purpose has been fulfilled. However, that is a subject which must be addressed to Congress and not the courts.

For the reasons above, the Court adopts the verdict of the Jury and finds that Amazon is not liable for "offering to sell" the alleged infringing products at issue in this matter. Judgment shall be entered in favor of Amazon. All Plaintiffs' claims against Amazon are dismissed.

DATED this 3 day of November 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

# United States Court of Appeals for the Federal Circuit

16-1290

---

Milo & Gabby LLC and Karen Keller,
*Plaintiffs-Appellants,*

v.

Amazon.com,
*Defendant-Appellee.*

------------------------------------------------------------------------------------------------

## CERTIFICATE OF SERVICE

Being duly sworn according to law, and being over the age of 18, upon my oath I depose and say that:

On the date indicated below, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: March 21, 2016. *<u>/s/ John Whitaker</u>*

John Whitaker

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

This brief contains 7,479 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(&)B)(iii) and Federal Circuit Rule of Appellate Procedure 32(b). The word count was performed by the automated word-counting function of counsel's word processing software.

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5,6). This brief has been prepared in a proportionally spaced typeface using LibreOffice in a 14 point "Century Schoolbook" font.

Dated: March 7, 2016. Respectfully submitted,

*/s/ John Whitaker*
John Whitaker