16-1290

# United States Court of Appeals
# for the Federal Circuit

MILO & GABBY LLC AND KAREN KELLER,

*Plaintiffs-Appellants,*

v.

AMAZON.COM, INC.,

*Defendant-Appellee,*

DA FANG SUN, AKA SETH L, CHONGQIN WORLD FIRST ELECTRONIC
COMMERCE CO., LTD., AKA WOTEFUSI, T. LIU, AKA BIN DEAL,
FAC SYSTEM, AKA FAC SYSTEM LLC, DINGDING ZOU,
AKA HAPPY SUNDAY, QIUMEI ZHANG, AKA HITECE, CHARLOTTE XIA,
NIMBLE JOY, AMANIALARASHI2165, MONAQO,

*Defendants.*

*Appeal from the United States District Court for the Western District of Washington in
Case No. 2:13-cv-01932-RSM, Judge Ricardo S. Martinez.*

## RESPONSE BRIEF OF DEFENDANT-APPELLEE AMAZON

John M. Hughes
Katherine L.I. Hacker
Joseph W. Doman
BARTLIT BECK HERMAN
    PALENCHAR & SCOTT LLP
1899 Wynkoop Street, 8th Floor
Denver, CO 80202
(303) 592-3100

Gregory G. Garre
Jonathan Y. Ellis
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Counsel for Defendant-Appellee
AMAZON.COM, INC.

April 21, 2016

## CERTIFICATE OF INTEREST

Counsel for the Defendant-Appellee certifies the following:

1. The full name of every party or amicus represented by me is:

   Amazon.com, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

   DURIE TANGRI LLP: Alexandra H. Moss, Daralyn J. Durie, Mark A. Lemley

   STOEL RIVES: Nathan C. Brunette, Brian C. Park, Vanessa S. Power

   BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP:
   John M. Hughes, Katherine L.I. Hacker, Joseph W. Doman

   LATHAM & WATKINS LLP: Gregory G. Garre, Jonathan Y. Ellis

April 21, 2016
/s/ John M. Hughes
John M. Hughes
Counsel for Defendant-Appellee
   AMAZON.COM, INC.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST..................................................................i

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF RELATED CASES ........................................................1

STATEMENT OF THE ISSUES................................................................2

INTRODUCTION ....................................................................................3

STATEMENT OF THE CASE....................................................................5

      A.    Amazon Creates an Online Marketplace Then Opens It to
            Third-Party Sellers Around the World ...........................................5

      B.    Third-Party Sellers, Not Amazon, Sell the Pillowcases ...........................10

      C.    The District Court Dismisses Most of Milo & Gabby's
            Claims but Allows the Direct Patent Infringement Claim to
            Proceed to Trial......................................................................13

      D.    An Advisory Jury Finds that Amazon Did Not Offer to Sell
            the Pillowcases, So the Court Rules that Amazon Did Not
            Commit Direct Patent Infringement ...........................................17

SUMMARY OF THE ARGUMENT ........................................................20

ARGUMENT ........................................................................................23

I.    Amazon Is Not Liable for Direct Patent Infringement .......................23

      A.    Milo & Gabby Waived the Argument that Amazon Should
            be Liable for Direct Patent Infringement for Selling the
            Pillowcases .............................................................................24

      B.    Third-Party Sellers, Not Amazon, Sold the Pillowcases...........................25

      C.    Amazon Did Not Sell the Pillowcases Even Under the Three
            U.C.C. Sections Cited by Milo & Gabby.....................................29

            1.    Amazon Did Not Act as a Consignee for the Third-
                   Party Sellers Under U.C.C. § 9-319 .....................................29

2.     Amazon Did Not Act as a Person in the Position of the Third-Party Sellers Under U.C.C. § 2-707........................................36

3.     Amazon Did Not Act as a Seller in a Sale-or-Return Transaction Under U.C.C. § 2-326....................................................37

II.    Amazon is Not Liable for Direct Copyright Infringement...................................39

A.    Amazon Did Not Distribute the Pillowcases by Sale ...............................39

B.    Amazon Did Not Actively Participate in or Directly Cause Any Copying of Images of the Pillowcases ...................................................41

C.    The Digital Millennium Copyright Act Safe Harbor Protects Amazon from Copyright Liability for Any Copying of Images of the Pillowcases..........................................................43

III.   Amazon Is Not Liable for a Lanham Act Palming-Off Claim...........................46

A.    Milo & Gabby Did Not Plead a Palming-Off Theory in Its Complaint.........................................................................................................46

B.    Even If Milo & Gabby Had Pled a Palming-Off Theory, the Claim Would Still Fail.............................................................................48

IV.   The Attorney-Fee Award Is Not Ripe for Review...................................................49

CONCLUSION AND STATEMENT OF RELIEF SOUGHT...................................51

PROOF OF SERVICE...........................................................................................................53

CERTIFICATE OF COMPLIANCE.................................................................................54

# TABLE OF AUTHORITIES

## Cases

*3D Sys., Inc. v. Aarotech Labs., Inc.,*
   160 F.3d 1373 (Fed. Cir. 1998) ..................................................17

*Atrium of Princeton, LLC v. N.L.R.B.,*
   684 F.3d 1310 (D.C. Cir. 2012) ..................................................31

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
   536 F.3d 121 (2d Cir. 2008) ......................................................42

*Cisneros v. UNUM Life Ins. Co. of Am.,*
   134 F.3d 939 (9th Cir. 1998) .....................................................30

*CoStar Grp., Inc. v. LoopNet, Inc.,*
   373 F.3d 544 (4th Cir. 2004) .....................................................42

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004) ...................................................43

*Enercon GmbH v. Int'l Trade Comm'n,*
   151 F.3d 1376 (Fed. Cir. 1998) ..................................................26

*Falana v. Kent State Univ.,*
   669 F.3d 1349 (Fed. Cir. 2012) .............................................. 50, 51

*Falk v. Brennan,*
   414 U.S. 190 ..........................................................................35

*Fox Broad. Co., Inc. v. Dish Network, L.L.C.,*
   747 F.3d 1060 (9th Cir. 2013) ............................................. 41, 42

*Grp. One, Ltd. v. Hallmark Cards, Inc.,*
   254 F.3d 1041 (Fed. Cir. 2001) ..................................................28

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
   769 F.3d 1371 (Fed. Cir. 2014) ............................................ 26, 27

*Hillis v. Heineman,*
   626 F.3d 1014 (9th Cir. 2010) ........................................24, 25, 37

*In re Music City RV, LLC,*
    304 S.W.3d 806 (Tenn. 2010) ........................................................33

*K-S-H Plastics, Inc. v. Carolite, Inc.,*
    408 F.2d 54 (9th Cir. 1969) ................................................... 22, 48

*Linear Tech. Corp. v. Micrel, Inc.,*
    275 F.3d 1040 (Fed. Cir. 2001) ...................................................28

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
    420 F.3d 1369 (Fed. Cir. 2005) ...................................................17

*Multicare Health Sys. v. Maplehurst Bakeries, Inc.,*
    265 F. App'x 685 (9th Cir. 2008) ......................................... 30, 31

*N. Am. Philips Corp. v. Am. Vending Sales, Inc.,*
    35 F.3d 1576 (Fed. Cir. 1994) ............................................. 28, 29

*NTP, Inc. v. Research In Motion, Ltd.,*
    418 F.3d 1282 (Fed. Cir. 2005) ....................................25, 26, 27

*Online Policy Grp. v. Diebold, Inc.,*
    337 F. Supp. 2d 1195 (N.D. Cal. 2004) .......................................41

*Orenshteyn v. Citrix Sys., Inc.,*
    691 F.3d 1356 (Fed. Cir. 2012) ............................................ 50, 51

*Overton v. Art Finance Partners LLC,*
    No. 15-cv-3927, 2016 WL 413128 (S.D.N.Y. Feb. 2, 2016) ............... 33, 34

*Parker v. Google, Inc.,*
    242 F. App'x 833 (3d Cir. 2007) .................................................42

*Pickern v. Pier 1 Imports (U.S.), Inc.,*
    457 F.3d 963 (9th Cir. 2006) ......................................................46

*Pinter v. Dahl,*
    486 U.S. 622 (1988) ........................................................... 27, 28

*Religious Tech. Ctr. v. Netcom On-Line Commc'ns Servs., Inc.,*
    907 F. Supp. 1361 (N.D. Cal. 1995) ................................41, 42, 43

*Rotec Indus., Inc. v. Mitsubishi Corp.*
    215 F.3d 1246 (Fed. Cir. 2000) ...................................................17

*Stephen W. Boney, Inc. v. Boney Servs., Inc.,*
    127 F.3d 821 (9th Cir. 1997) .................................................................. 23, 50

*Sweepstakes Patent Co., LLC v. Burns,*
    610 F. App'x 1006 (Fed. Cir. 2015) ........................................................... 24

*Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP,*
    661 F.3d 1378 (Fed. Cir. 2011) .................................................................. 23

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.,*
    617 F.3d 1296 (Fed. Cir. 2010) .................................................................. 17

*United States v. Idaho,*
    210 F.3d 1067, (9th Cir. 2000), *aff'd* 533 U.S. 262 (2001) ......................... 32

*Universal Health Servs. Inc. v. Thompson,*
    363 F.3d 1013 (9th Cir. 2004) .................................................................... 23

*Walter E. Heller & Co. Se. v. Riviana Foods, Inc.,*
    648 F.2d 1059 (5th Cir. 1981) .................................................................... 38

*Zoltek Corp. v. United States,*
    672 F.3d 1309 (Fed. Cir. 2012) (en banc) ................................................. 25

## Statutes and Rules

15 U.S.C. § 1117 .................................................................................................. 51

17 U.S.C. § 106 ............................................................................................. *passim*

17 U.S.C. § 512 ......................................................................................... 43, 44, 45

35 U.S.C. § 271 ............................................................................................. *passim*

35 U.S.C. § 285 .................................................................................................. 50

Federal Circuit Rule 28 ..................................................................................... 23

Federal Rule of Civil Procedure 8 .............................................................. 22, 46

Federal Rule of Civil Procedure 39 .................................................................. 17

**Miscellaneous**

3 C.J.S. Agency § 541 ...............................................................................31

32 Am. Jur. 2d Factors & Commission Merchants § 5 (2016) ........................................30

3A Anderson U.C.C. § 2-326:41 (3d ed. 2015) ...........................................30, 38

4A Part I Anderson U.C.C. § 2-707:3 (3d ed. 2015) ........................................36

Black's Law Dictionary (10th ed. 2014) ...............................................26

H.R. REP. NO. 105–551(I) (1998) ...............................................42

H.R. REP. NO. 105–551(II) (1998) ...............................................44

Restatement (Third) of Agency § 1.02 (2006) ...................................31

S. REP. NO. 105–190 (1998) ...............................................43

U.C.C. § 2-106 .................................................................26

U.C.C. § 2-326 ...........................................................37, 38

U.C.C. § 2-707 .......................................................16, 36, 37

U.C.C. § 9-101 ...........................................................32, 33

U.C.C. § 9-319 .......................................................29, 30, 33

Wash. Rev. Code § 62A.9A-319 ...............................................30

William W. Story, *A Treatise on the Law of Sales of Personal Property* § 1 (1853) ................26

## STATEMENT OF RELATED CASES

1.     No other appeal in or from the same civil action was previously before this or any other appellate court.

2.     Counsel is not aware of other pending cases that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

1.    Whether Amazon should be liable for direct patent infringement based on third-party sales of pillowcases on Amazon.com.

2.    Whether Amazon should be liable for direct copyright infringement for merely shipping pillowcases sold by a third party.

3.    Whether Milo & Gabby can pursue a meritless Lanham Act palming-off claim that it failed to plead in its complaint and raised for the first time in response to a motion for summary judgment.

4.    Whether this Court should review a non-final attorney-fee award before the district court determines the amount of that award.

## INTRODUCTION

Amazon started small by creating an online marketplace that sold only books out of a garage. Later Amazon built upon that foundation by adding other products like CDs, DVDs, video games, and software. In 1999—after spending years investing in technological and physical-distribution infrastructure—Amazon expanded its online marketplace by opening it to third-party sellers. Since then, third-party sellers have been able to offer and sell products on Amazon.com, competing directly with Amazon in what is now the largest online marketplace in the United States.

Today, as Milo & Gabby repeatedly observes, Amazon continues to offer and sell thousands of products on Amazon.com. But this case is not about products offered or sold by Amazon. This case concerns pillowcases offered and sold *only* by third-party sellers. Milo & Gabby chose not to sue those third-party sellers. The third-party sellers were only added to this case when the district court granted Amazon's motion to join them as necessary parties. Instead of pursuing the third-party sellers, Milo & Gabby seeks to hold Amazon liable for direct patent infringement, direct copyright infringement, and Lanham Act violations based on the third-party sellers' offers and sales of the pillowcases on Amazon.com.

At every turn, Milo & Gabby has tried to reshape its case to fit the direct infringement theories it pursued. In the district court, Amazon moved for summary judgment on Milo & Gabby's direct patent infringement claim and argued that Amazon did not make, use, offer to sell, or sell the pillowcases at issue. In response to that motion, Milo & Gabby did not argue that Amazon made, used, or *sold* any of the pillowcases. Instead, Milo & Gabby argued only that Amazon *offered to sell* the pillowcas-

3

es. Concluding that there were fact questions about whether Amazon offered to sell the pillowcases, the district court denied that part of Amazon's motion for summary judgment. So the case proceeded to trial on one question: whether Amazon offered to sell the pillowcases. After a three-day trial, a jury concluded that Amazon did not offer to sell the pillowcases and the district court entered judgment finding the same.

On appeal, Milo & Gabby does not challenge the jury's findings or the district court's judgment but pivots to a new theory that Amazon should be liable for actually selling the pillowcases. Milo & Gabby had an opportunity to prove its patent infringement claim in the district court. Although Milo & Gabby might be unhappy with the result, that does not entitle it to rewind this case to try again with a new argument never raised before this appeal.

Even if Milo & Gabby were given a do-over to pursue this new theory, its direct patent infringement claim would still fail. This Court gives "sell" in the context of patent infringement under 35 U.S.C. § 271 its ordinary meaning: to transfer title to a buyer for a price. It is undisputed that Amazon simply provided third-party sellers with a means to offer and sell their own pillowcases. Amazon never had title to any of the pillowcases in this case. Only the third-party sellers had title and the ability to transfer title of the pillowcases. For that reason, Amazon could not and did not sell the pillowcases. Therefore, Amazon should not be held liable for direct patent infringement.

Milo & Gabby's direct copyright infringement claim fails for a similar reason. Milo & Gabby claims that Amazon committed copyright infringement by providing one third-party seller with optional fulfillment services. Fulfillment services were lim-

ited to storing the third-party seller's pillowcases and shipping those pillowcases after they were sold by the third party. To be liable under 17 U.S.C. § 106, however, a party must distribute copies to the public *by sale* or other transfer of ownership. Again, Amazon never had title or any other ownership rights in the pillowcases. Amazon could not have distributed the pillowcases by sale or other transfer of ownership. So Amazon also should not be held liable for direct copyright infringement.

Milo & Gabby also pursues a meritless Lanham Act palming-off theory that it never pled in its complaint. Having not provided Amazon fair notice of that claim, Milo & Gabby should not be able to rely on it in this appeal.

Finally, Milo & Gabby asks this Court to review a non-final attorney-fee award. Although the district court ordered Milo & Gabby to pay attorney fees, the district court has not yet ruled on the amount of fees to be paid. Therefore, the attorney-fee award is not yet ripe for this Court's review.

## STATEMENT OF THE CASE

### I.    AMAZON CREATES AN ONLINE MARKETPLACE THEN OPENS IT TO THIRD-PARTY SELLERS AROUND THE WORLD

Jeff Bezos founded Amazon in 1994 as a retailer selling books online. (A2122–23.) To deliver books (and later other products) to customers as quickly and efficiently as possible, Amazon invested in a number of areas. First, Amazon created software for its website so that customers could easily search for and order products. (A2127.) Then Amazon built relationships with carriers, like the U.S. postal service, UPS, and FedEx, so that customers could pay low shipping costs but still receive orders as fast as possible. (A2127.) Amazon then hired and trained people to provide

top-notch customer service. (A2127.) Finally, Amazon purchased warehouses—known within Amazon as fulfillment centers—all around the country to "enable Amazon to deliver things promptly to customers." (A2127.)

Amazon realized the infrastructure it built to deliver books could also be used to deliver other products customers wanted. So Amazon began selling more items in its marketplace, from clothing to computers. But Amazon did not stop there.

With a firm belief that its customers would benefit from a competitive marketplace, in 1999 Amazon opened its virtual doors to let other third-party companies sell products on Amazon.com. (A2127–29.) Where industry analysts faulted Amazon for providing competitors an advantage to its own detriment, Amazon saw an opportunity to offer customers what they wanted: low prices and broad selection. (A2128.) Now over fifteen years later, "most of the hundreds of millions of products [on Amazon.com] are offered by third-party sellers, rather than Amazon itself." (A2128–29.)

Despite Milo & Gabby's attempt to conflate when Amazon itself offers or sells a product with when a third-party seller offers or sells a product, Amazon's website clearly identifies the offeror and the seller of each product. Every product has a "product-detail page" associated with it. (A2132.) For example, this product-detail page shows a soccer net shipped from and sold by Amazon itself:



(A3696; *see also* A2132.) In this example, Amazon is the seller of record offering to sell the soccer net. The box in the bottom right corner of this page, titled "Other Sellers on Amazon," indicates that multiple companies are offering to sell this soccer net in addition to Amazon. (A3696.) When customers click through that box, they go to the "offer listing page." (A2133.) On the offer listing page, customers can "see all the sellers who are selling this product." (A2133.) In the soccer net example, the offer listing page shows at least four sellers:



 (A3697.) "The first seller offering to sell this product is a company called ABCD Sales, and they're offering this product for $94.49." (A2134.) Amazon is listed as the second seller. (A3697; A2134.) A third company called Anthem Sports is offering to sell the soccer net for $95.95, and a fourth called Sarah's pro sports shop is offering to sell the soccer net for $103.81. (A3697; A2135.) For every product available on Amazon's website, a product-detail page like this one shows which entity or entities are offering to sell the product at what price.

In addition to providing third-party sellers access to its marketplace to sell products like the soccer net, Amazon provides sellers tools and services. Two are relevant here. First, Amazon offers payment processing services. (A2130.) When a customer purchases a product from a third-party seller on Amazon's website, Amazon processes the payment and then disburses the funds to the third-party seller. (A2130.)

Sellers can use this service, called "Pay with Amazon," on other websites too. (A2130.) Just like PayPal, a seller can use Pay with Amazon to process orders placed on the seller's own website. (A2130.)

Second, Amazon offers a service called Fulfillment by Amazon, which allows third-party sellers to take advantage of Amazon's logistics network. To use Fulfillment by Amazon, a seller sends its products to an Amazon fulfillment center. (A2162.) Amazon then places those products on a shelf. (A2162.) When a customer orders that seller's product, Amazon pulls the product off the shelf, packages it, and ships it to the customer on behalf of the seller. (A2162.) With fulfillment centers strategically placed around the country, Amazon can ship products from the closest fulfillment center to the customer "quicker than if the seller is shipping the product directly to the customer themselves." (A2163.)

Just like the Pay with Amazon service, third-party sellers can use Fulfillment by Amazon to store and ship products for sale in marketplaces other than Amazon.com. (A2164.) Instead of using FedEx's logistics and shipping services, a seller using eBay, Craigslist, or even its own website can send products to an Amazon fulfillment center for Amazon to fulfill and ship orders placed on those websites. (A2164–65.)

When third-party sellers use Fulfillment by Amazon to ship orders placed on Amazon or any other website, the product remains the third-party sellers' property at all times. (A2163–64.) Amazon "can't just take" a third-party's product to sell it. (A2164.) Similarly, if a third-party seller decided for any reason that it no longer wanted to use Fulfillment by Amazon, then the third-party seller could remove its stock at any time. (A2163.)

These tools and services have helped create the thriving Amazon marketplace that exists today. Like any marketplace, however, there is a risk that bad actors will attempt to abuse the system. This case involves that risk. In this case, third-party sellers offered and sold pillowcases that violated Milo & Gabby's intellectual property rights and Amazon's policies. When Amazon discovered the problem, it reacted by removing the listings and blocking the third-party sellers. Amazon did not, as Milo & Gabby claims, sell (or offer to sell) any of the pillowcases itself.

### A.    Third-Party Sellers, Not Amazon, Sell the Pillowcases.

Milo & Gabby began selling its animal-shaped pillowcases in 2005. (A1942.) After six years of mixed results selling the pillowcases at trade shows and trade marts, Milo & Gabby executed an exclusive license agreement with a Korean company named Petit Elin. (A2015; A2063−64; A2702.) Under that license agreement, Petit Elin received the exclusive right to manufacture and sell the pillowcases, initially in Korea, and then later also in Japan, China, Taiwan, Hong Kong, Singapore, Australia, and New Zealand. (A2021; A2702.) Since Milo & Gabby signed that license, Petit Elin has been the primary distributor of the pillowcases. (A2018.)

The license agreement gave Petit Elin not only the exclusive right to manufacture and sell the pillowcases but also the right to use Milo & Gabby's marketing material. To promote the pillowcases, Milo & Gabby's owners Karen and Steven Keller took photographs of their children with the pillowcases. (A1951−52.) Milo & Gabby then provided those photographs to Petit Elin. (A2015.) Petit Elin, in turn, used the photographs on its website. (A3718.)

10

Roughly a year after Milo & Gabby entered into the license agreement with Petit Elin, Milo & Gabby discovered that copies of the pillowcases were being sold on Alibaba.com using the same photographs provided to Petit Elin. (A1959.) Soon thereafter, Mrs. Keller discovered that some third-party sellers were offering pillowcases on Amazon's website too. (A1961.) Unlike the soccer net example, Amazon itself was not offering or selling the pillowcases. (A2160−61.) Instead, only third-party sellers[1] were offering to sell the pillowcases. (A2160−61.) The product-detail pages for each of those pillowcases showed that only third-party sellers were offering to sell the pillowcases. For example, this product-detail page from 2013 says, "Ships from and sold by Nimble Joy":



(A2533.)

---

[1] The following ten third-party sellers listed as Defendants in the caption actually sold pillowcases: (1) Da Fang Sun; (2) Chongqin World First Electronic Commerce Co., Ltd.; (3) T Liu; (4) FAC System; (5) Dingding Zhou; (6) Qiumei Zhang; (7) Charlotte Xia; (8) Nimble Joy; (9) Amanialarashi2165; and (10) Monaqo. (A55−56.)

Milo & Gabby misleadingly claims that the pillowcases were stored in Amazon fulfillment centers and shipped by Amazon, implying that all of the third-party sellers used Fulfillment by Amazon. (Br. at 8.) But only one of the ten third-party sellers used Fulfillment by Amazon: seller FAC System LLC. (A2164.) In other words, nine of the ten third-party sellers stored and shipped their own products independently of Amazon. Just like all of the other product-detail pages, the product-detail page for the one seller that used Fulfillment by Amazon made clear that the pillowcases were being sold by that seller, FAC System LLC, not by Amazon:



(A2479.)

Amazon received notice of Milo & Gabby's complaints for the first time when Milo & Gabby filed this lawsuit in October 2013. (A2183−84; A150.) Milo & Gabby's owner Karen Keller claims that she placed two telephone calls to Amazon and left a message to report the problem. (Br. at 9.) Not only does Mrs. Keller not have any records of those phone calls, but Amazon also checked the records it keeps and could not find any evidence of the message. (A2054; A2176−77.) In addition, Milo & Gabby did not fill out the form available on Amazon's website for reporting intellectual property violations. (A1974; A2177; A2183; A2328; A2340; A2479; A2803.) Upon receiving notice of this lawsuit, Amazon took the product listings down, suspended the third-party sellers, and kicked the third-party sellers out of the marketplace. (A2184−85.) When third-party sellers attempted to relist the pillowcases by changing the product names, Amazon again took the listings down and removed the sellers. (A2184−85.) Milo & Gabby admits that Amazon immediately took action to remove the pillowcases and to block the third-party sellers. (Br. at 9 n.1.)

### B.    The District Court Dismisses Most of Milo & Gabby's Claims but Allows the Direct Patent Infringement Claim to Proceed to Trial.

When Milo & Gabby first filed this case, the complaint included seven claims: (1) patent infringement; (2) copyright infringement; (3) unfair competition under Washington's Consumer Protection Act; (4) false designation of origin under the Lanham Act; (5) right of publicity under Washington state law; (6) removal of copyright management information under the Digital Millennium Copyright Act; and (7) trademark counterfeiting under the Lanham Act. (A156−58.) The district court granted Amazon's motion to dismiss the unfair competition, right of publicity, and

trademark counterfeiting claims. (A5.) The district court also dismissed Milo & Gabby's claims for contributory and induced patent and copyright infringement. (A20–22.) Although the district court granted Milo & Gabby leave to amend in that same order, Milo & Gabby never filed an amended complaint reasserting any of these claims.

The district court's motion to dismiss ruling, therefore, whittled the case down to four claims: (1) direct copyright infringement; (2) direct patent infringement; (3) false designation of origin under the Lanham Act; and (4) removal of copyright management information under the Digital Millennium Copyright Act. Amazon then filed a motion for summary judgment challenging all four remaining claims. (A426.)

First, Amazon challenged Milo & Gabby's copyright infringement claim. (A439–49.) Amazon explained that it could not be liable for displaying images of the pillowcases provided by third-party sellers on its website because it did not actively participate in or directly cause the alleged copying. (A439–41.) In addition, Amazon showed that the Digital Millennium Copyright Act ("DMCA") safe harbor in 17 U.S.C. § 512(c) protected it from liability for storing images for its website at the direction of third parties. (A442–49.) Finally, Amazon argued that it also could not be liable for shipping a customer's order for a third-party seller's pillowcases because Amazon never had an ownership interest in the pillowcases (A441–442.)

In response, Milo & Gabby first proffered some vicarious liability arguments that it no longer pursues. (A572–78.) Then Milo & Gabby focused almost entirely on its argument that Amazon should be liable for storing the images and displaying them on its website at the direction of the third-party sellers. (A587 ("Regardless of who

actually 'supplies' the images, it is undisputed that Amazon 'stores' the infringing images on its servers."); *see also* A578−587.) In the midst of that argument, Milo & Gabby sprinkled in a few statements referencing Amazon shipping the physical pillowcases. (A578 ("Amazon cannot hide behind the DMCA 512(c) protections for its control over the sales of physical goods in commerce.").) But Milo & Gabby never argued that Amazon actually sold the pillowcases.

In granting the part of Amazon's motion related to the copyright infringement claim, the district court addressed both of Milo & Gabby's arguments. Given that Milo & Gabby emphasized its argument concerning the images of the pillowcases, the district court spent the majority of its analysis on that issue. (A30−33.) The court concluded that Amazon did not actively participate or directly cause any copying and that, in any event, the DMCA safe harbor protected Amazon from that allegation. (A30−33.) The district court did not, however, leave Milo & Gabby's argument about Amazon shipping the pillowcases unaddressed. On that front, the district court concluded that the "third-party sellers retain[ed] full title to and ownership of the inventory." (A33.) Given that distribution must be by sale, Amazon could not be liable for direct copyright infringement. (A33.)

Amazon next challenged Milo & Gabby's remaining Lanham Act claim based on preemption and lack of a valid trademark, among other grounds. (A449−51, A450 n.9.) In response, Milo & Gabby attempted to save its trademark infringement claim by relying on two new theories—palming off and vicarious liability. (A588−94.) The district court rejected that attempt and concluded that Amazon was not liable for Lanham Act violations. (A39−44.)

15

Finally, on the direct patent infringement claim, Amazon argued that it was undisputed that Amazon did not make, use, sell, or offer to sell any of the pillowcases. (A455–56.) In response, Milo & Gabby argued *only* that Amazon offered to sell the pillowcases. (A594–97.) Milo & Gabby made no attempt to challenge Amazon's contention that undisputed facts demonstrated that Amazon did not sell the pillowcases. Milo & Gabby made its choice to pursue only an offer-to-sell theory clear in its summary judgment briefing: "Amazon is liable for direct patent infringement of [Milo & Gabby's] design patents by, at a minimum, 'offering to sell' infringing products." (A594.)

Milo & Gabby then offered two arguments to support this offer-to-sell theory. First, Milo & Gabby argued that "[i]n the patent context, the term 'offer for sale'" has a unique meaning different from the typical contractual law analysis of offer and sale. (A595.) Second, Milo & Gabby relied on a U.C.C. argument, stating that "the UCC [can] enlighten the analysis of whether Amazon can 'offer to sell' a product to which it does not have legal title." (A596.) Citing the Washington state law equivalent of U.C.C. § 2-707, Milo & Gabby argued that Amazon is a "person in the position of a seller." (A596.) In making its U.C.C. argument, Milo & Gabby also claimed without explanation that Amazon is "analogous" to a consignee. (A597.) Milo & Gabby relied on these arguments, however, to try to support its offer-to-sell theory, not to support the sale theory it now advances on appeal. (A594–97.)

When the district court ruled on the patent infringement claim, it recognized that Milo & Gabby was pursuing an offer-to-sell theory. The court explained that Milo & Gabby "argu[ed] that Amazon has indeed *offered to sell* the products within the

16

meaning of the statute." (A45 (emphasis added).) The district court then agreed with Milo & Gabby that fact questions precluded summary judgment on that issue. (A46.) So the case proceeded to a jury on a single issue: Did Amazon offer to sell the pillowcases?

### C. An Advisory Jury Finds that Amazon Did Not Offer to Sell the Pillowcases, So the Court Rules that Amazon Did Not Commit Direct Patent Infringement.

Although all parties agreed that the remaining issue—did Amazon offer to sell the pillowcases—was a question of law for the district court to decide, the court empaneled an advisory jury to answer underlying fact questions. *See* Fed. R. Civ. P. 39(c). Even though Milo & Gabby claimed that "offer to sell" has a unique definition in the context of patent liability on summary judgment,[2] in this appeal Milo & Gabby does not challenge the following instruction given to the jury by the district court:

> An offer to sell occurs when one communicates that it was willing to enter into a bargain so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.

> An offer to sell is a distinct act of infringement separate from an actual sale. An offer to sell differs from a sale in that an offer to sell need not be accepted to constitute an act of infringement.

> Mere advertisements directed to a national audience, however, are not offers to sell.

---

[2] Contrary to Milo & Gabby's argument, the term "offer to sell" is defined according to traditional contract law principles. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1308 (Fed. Cir. 2010); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254−55 (Fed. Cir. 2000); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed. Cir. 1998).

(A2357.) In addition, Milo & Gabby never asked the district court for an instruction concerning the U.C.C. or consignment arguments it made on summary judgment. (A1803–1823.) And Milo & Gabby did not ask for the jury to decide whether it satisfied the factual predicate for those arguments. (A1764–65, 1824.)

Now, on appeal, Milo & Gabby mischaracterizes what happened at trial. Milo & Gabby claims that "Mr. Christopher Poad, Amazon's corporate representative, testified that Amazon acts as a seller in every step of a transaction." (Br. at 16–17.) Mr. Poad explained quite the opposite:

> Q    And Mr. Poad, you've familiarized yourself with the pillowcases at issue in this case?
>
> A    Yes, I have.
>
> Q    And was Amazon ever identified as the seller offering to sell the pillowcase, for any of the pillowcases?
>
> A    No.

(A2136.)

After a three-day trial, the jury returned the following answers to seven questions related to whether Amazon offered to sell the pillowcases:

> 1.    Do you find that Amazon, through its website, communicated a description of the allegedly infringing products?
>
>        No.
>
> 2.    Do you find that Amazon, through its website, communicated the price at which the allegedly infringing product could be purchased?
>
>        No.
>
> 3.    Do you find that Amazon provided the description of the allegedly infringing products?

No.

4.      Do you find that Amazon set the price at which the allegedly infringing products could be purchased?

No.

5.      Do you find that Amazon set the quantity(ies) of the allegedly infringing product(s) for sale on its website?

No.

6.      Do you find that Amazon, through its website, communicated that it was willing to enter into a bargain to sell the allegedly infringing products?

No.

. . .

8.      Have Plaintiffs proven that it is more likely than not that Amazon offered to sell the alleged infringing products?

No.

(A2415–17.) Adopting those factual findings, the district court issued an order concluding that Amazon did not offer to sell the pillowcases as a matter of law and, therefore, was not liable for direct patent infringement. (A96–101.) In this appeal, Milo & Gabby makes nothing more than a few generic statements that the district court erred in concluding that Amazon does not offer to sell the pillowcases. (Br. at 3, 4, 20.) But Milo & Gabby does not challenge the district court's factual findings or legal conclusion and makes no substantive argument that Amazon offered to sell the pillowcases. (Br. at 20–21.) Instead, Milo & Gabby challenges only the district court's pre-trial rulings on Amazon's motion for summary judgment and Amazon's motion for attorney fees.

## SUMMARY OF THE ARGUMENT

Milo & Gabby waived the main argument it offers to this Court—that Amazon should be liable for direct patent infringement for selling the pillowcases. Before the district court, Milo & Gabby argued that Amazon committed direct patent infringement by offering to sell the pillowcases at issue in this case under 35 U.S.C. § 271(a). Before this Court, Milo & Gabby effectively abandons that claim making no substantive argument that Amazon offered to sell the pillowcases. Instead, Milo & Gabby claims that Amazon committed direct patent infringement by actually selling the pillowcases. Having not raised that argument below, Milo & Gabby cannot pursue it now.

Even ignoring the waiver problem, Milo & Gabby's new argument that Amazon committed direct patent infringement by selling the pillowcases fails. Milo & Gabby does not even attempt to reconcile the unchallenged result of the trial—a legal finding that Amazon does not offer to sell the pillowcases—with its appellate theory that Amazon nevertheless sells the pillowcases. It does not do so because it cannot. In the context of § 271(a), this Court gives "sell" its ordinary meaning: to transfer title to a buyer for a price. Amazon undisputedly never held title to any of the pillowcases. For that reason, Amazon could not and did not transfer the title of the pillowcases to anyone. Unable to overcome the evidence that Amazon lacked title to the pillowcases, Milo & Gabby resorts to relying on a consignment theory and various sections of the U.C.C. to argue that "sell" in § 271(a) does not carry its ordinary meaning and does not require the transfer of title. But the undisputed facts show there was no consignment relationship here. And the other U.C.C. sections do not define what it means to

sell a product—under the Patent Act or in any other context—but instead help explain a seller's or creditor's rights in specific situations. Even so, Amazon did not sell or act as a seller of the pillowcases under the U.C.C. sections cited by Milo & Gabby. Therefore, this Court should affirm the district court's ruling on Milo & Gabby's direct patent infringement claim.

Milo & Gabby's attempt to hold Amazon liable for direct copyright infringement fails as well. Before the district court, Milo & Gabby argued that Amazon should be liable for direct copyright infringement for displaying images provided by third-party sellers of the Milo & Gabby pillowcases and for shipping some pillowcases. On appeal, Milo & Gabby no longer argues that Amazon should be liable for direct copyright infringement for displaying images of the Milo & Gabby pillowcases on its website. Instead, Milo & Gabby relies only on Amazon's role in shipping some pillowcases for one third-party seller. Distribution under 17 U.S.C. § 106(3) requires transferring ownership "by sale." The same weakness from Milo & Gabby's patent claim also dooms Milo & Gabby's copyright claim: Milo & Gabby has no evidence that Amazon had title to the pillowcases and the ability to transfer that title "by sale." Therefore, the Court should also affirm the district court's ruling on Milo & Gabby's direct copyright infringement claim.

Milo & Gabby's third argument—that Amazon should be liable for a Lanham Act palming-off claim—suffers from a similar problem as its patent infringement claim. Milo & Gabby never pled any allegations related to a Lanham Act palming-off claim in its complaint. Milo & Gabby cobbles together a few sentences from its motion to dismiss opposition about its state law unfair competition claim. That does not,

however, change the fact that Milo & Gabby never provided even a "short and plain" statement of these allegations in its complaint as required by Federal Rule of Civil Procedure 8(a).

Moreover, a Lanham Act palming-off claim requires the "unauthorized substitution of the goods of one manufacturer when the goods of another are requested by the customer." *K-S-H Plastics, Inc. v. Carolite, Inc.*, 408 F.2d 54, 59 (9th Cir. 1969). That did not happen here. To the contrary, all of the product-detail pages for the pillowcases identified the correct seller and manufacturer of the pillowcases. Milo & Gabby was not identified as either the seller or the manufacturer of any of the pillowcases at issue. In fact, the words Milo & Gabby never appeared on any of those pages. (A2479–91, A2513–36.) Milo & Gabby has identified no evidence that Amazon substituted pillowcases sold by the third-party sellers in response to a request for Milo & Gabby pillowcases. Therefore, this Court should also affirm that district court's ruling on Milo & Gabby's Lanham Act claim.

Finally, Milo & Gabby requests review of a non-final attorney-fee award. The district court properly granted Amazon's motion for attorney fees, but the district court has not yet established the amount of those fees. Under this Court's precedent, such an award is not final and appealable until the district court determines the amount of the attorney fees. This rule prevents piecemeal appeals of fee awards. The Court should follow that rule and refuse to address Milo & Gabby's argument concerning the district court's order awarding attorney fees.

## ARGUMENT

This Court applies the law of the regional circuit when reviewing a district court's grant of a motion for summary judgment.[3] *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1381 (Fed. Cir. 2011). The Ninth Circuit reviews the grant of a motion for summary judgment de novo. *Universal Health Servs. Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).

## I.  AMAZON IS NOT LIABLE FOR DIRECT PATENT INFRINGEMENT.

To establish a claim for direct patent infringement, a plaintiff must prove that the accused infringer made, used, offered to sell, or sold a patented invention. 35 U.S.C. § 271(a). Before the district court, Milo & Gabby argued exclusively that Amazon directly infringed by offering to sell the pillowcases, but Milo & Gabby now shifts its focus from the "offer to sell" prong of § 271(a) to the "sell" prong. Milo & Gabby waived the argument that Amazon directly infringed by selling the pillowcases. Even if it did not waive, the argument is meritless. The undisputed facts establish that Amazon never sold any of the pillowcases.

---

[3] Although Milo & Gabby included the district court's motion to dismiss order, summary judgment order, and final opinion in its addendum of orders challenged under Federal Circuit Rule 28(a)(12), the arguments in Milo & Gabby's brief do not concern the motion to dismiss or the final opinion. Therefore, the standard of review for motions for summary judgment applies to the entirety of this appeal with one exception. Milo & Gabby also argues that the district court erred in granting a motion for attorney fees. That order would be reviewed for abuse of discretion, *see Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 825 (9th Cir. 1997), though it is not yet ripe for review. *See infra* Section IV.

### A.    Milo & Gabby Waived the Argument that Amazon Should Be Liable for Direct Patent Infringement for Selling the Pillowcases.

"Waiver is governed by local circuit law"—in this case, the Ninth Circuit's. *Sweepstakes Patent Co., LLC v. Burns*, 610 F. App'x 1006, 1008 (Fed. Cir. 2015). In the Ninth Circuit, waiver prohibits parties from raising new arguments on appeal that were not raised before the district court. *See Hillis v. Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010).

Milo & Gabby abandoned any claim for patent infringement liability under the sell prong of § 271(a) by failing to raise that argument before the district court. Amazon moved for summary judgment on Milo & Gabby's direct patent infringement claim, arguing it was undisputed that Amazon did not make, use, offer to sell, or sell any patented products. In response, Milo & Gabby argued *only* that Amazon offered to sell the pillowcases: "Amazon is liable for direct patent infringement of [Milo & Gabby's] design patents by, at a minimum 'offering to sell' infringing products." (A594.) The district court recognized that choice. (*See* A45 ("Plaintiffs oppose the motion [for summary judgment], arguing that Amazon has indeed *offered to sell* the products within the meaning of the statute." (emphasis added)).) Then the district court agreed with Milo & Gabby that fact questions remained about whether Amazon offered to sell the pillowcases. (A46.) So that question proceeded to trial.

Instead of challenging the district court's finding that Amazon did not offer to sell the pillowcases, Milo & Gabby now pivots to a new theory. Essentially Milo & Gabby argues that even though Amazon did not offer to sell the pillowcases, Amazon somehow sold the pillowcases. (Br. at 22–29.) Milo & Gabby argues generally that

Amazon sold the pillowcases without explaining whether that argument applies to its patent or copyright claim. (Br. at 22–29.) By collapsing its argument about whether Amazon sold the pillowcases into one section, Milo & Gabby conflates the district court's rulings on its patent and copyright claims. (Br. at 22–29.) Milo & Gabby states that the district court dismissed "Milo and Gabby's copyright infringement and patent infringement claims based on its erroneous conclusion that Amazon is not a 'seller' of the accused products." (Br. at 29.) Only half of that statement is accurate. Although the district court dismissed Milo & Gabby's copyright infringement claim, the district court did *not* dismiss Milo & Gabby's patent infringement claim. (A46; *see also* A48 ("Plaintiffs' patent infringement claim remains.").) Instead, the district court allowed that claim to go to trial based on the sole theory argued by Milo & Gabby. The jury then rejected that theory, and the district court adopted the jury's findings. (A2415.)

This Court should not allow Milo & Gabby to attack the district court's finding that Amazon did not offer to sell the pillowcases without appealing it directly. Milo & Gabby cannot resurrect its direct patent infringement claim by arguing for the first time on this appeal that Amazon is liable for actually selling the pillowcases. *See Hillis*, 626 F.3d at 1019.

### B.   Third-Party Sellers, Not Amazon, Sold the Pillowcases.

Even if Milo & Gabby had raised the sell prong before the district court, Milo & Gabby's argument would still fail. Although the patent statute does not define "sale" for purposes of § 271(a), this Court has consistently ruled that "sale" takes on its "ordinary meaning." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir. 2005), *abrogated on other grounds by Zoltek Corp. v. United States*, 672 F.3d 1309, 1323

(Fed. Cir. 2012) (en banc); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1379 (Fed. Cir. 2014) (relying on the "ordinary meaning" of "sale" for patent infringement analysis); *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1381−82 (Fed. Cir. 1998) (relying on the ordinary meaning from dictionaries and traditional contract principles to define "sale" under the Tariff Act). To discern that ordinary meaning, this Court has turned to "dictionaries and to the Uniform Commercial Code." *NTP*, 418 F.3d at 1319. Black's Law Dictionary defines "sale" as "a transfer of the absolute title to property for a certain agreed price." Black's Law Dictionary (10th ed. 2014) (citing William W. Story, *A Treatise on the Law of Sales of Personal Property* § 1, at 1 (1853)). Similarly, the U.C.C. defines "sale" as the "passing of title from the seller to the buyer for a price." U.C.C. § 2-106(1). Based on those definitions, this Court has held that "[p]lainly, the common, or usual meaning of the term sale includes those situations in which a contract has been made between two parties who agree to transfer title and possession of specific property for a price." *Enercon*, 151 F.3d at 1382; *see also Halo*, 769 F.3d at 1379 ("A 'sale' consists in the passing of title from the seller to the buyer for a price." (citing U.C.C. § 2-106)).

To determine who sold the pillowcases, the Court should look to who held title and had the ability to transfer it. It is undisputed in this case that the third-party sellers, not Amazon, always held and transferred title. (A492−93; A2163−64.) Amazon never had title to any of the pillowcases. Even when a third-party seller used Fulfillment by Amazon, the third-party seller retained title and all other property rights in the pillowcases. The Fulfillment by Amazon agreement made clear that the third-party seller represents and warrants that they "have valid legal title to all Units." (A2760.)

26

Amazon did not and could not sell the pillowcases because it never had title to the pillowcases that would allow it to transfer them to a buyer for a price.

In the face of these undisputed facts, Milo & Gabby does not attempt to argue that Amazon had title to the pillowcases or the ability to transfer title for a price as is required by this Court's definition of "sell" under § 271(a) in *NTP* and *Halo*. Instead, Milo & Gabby maintains that Amazon can be liable as a seller under § 271(a) even if it did not transfer title to the pillowcases. Milo & Gabby cites two cases for this theory. Neither support extending the definition of "sell" under § 271(a) to the facts of this case.

First, Milo & Gabby points to *Pinter v. Dahl*, a case in which the Supreme Court determined whether a purchaser of oil and gas securities was a "seller" under the Securities Act even though he never owned or passed title. 486 U.S. 622, 642–43 (1988). The Court began its analysis by recognizing that the Securities Act covers "buyer-seller relationship[s]" under "traditional contract[]" law where the owner "passed title, or other interest in the security, to the buyer for value." *Id.* at 642. The Court then explained that the Securities Act would apply to someone who "was not a seller in this conventional sense . . . *only if* [Securities Act] liability extends to persons other than the person who passes title." *Id.* (emphasis added). In other words, the Supreme Court assumed that "seller" should not be defined more broadly than a person who transfers title for a price unless Congress expressly expands that definition. In the Securities Act, Congress did just that. For the Securities Act, "Congress expressly intended to define ['sale' and 'offer to sell'] broadly"— so broadly that a "seller" under the Securities Act "includes brokers and others who *solicit* offers to purchase securities[.]" *Id.* at

646 (emphasis added). The Court explained that this broad definition "promote[d] full and fair disclosure of information to the public in the sales of securities." *Id.*

Congress did not adopt a similarly broad, unconventional definition of "sell" under the Patent Act. Indeed, this Court has explained that mere solicitation does not fall within the scope of the Patent Act. *See Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1051 (Fed. Cir. 2001) (finding that an advertisement "may have prompted requests to buy" an infringing product but did not amount to an offer to sell); *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041 (Fed. Cir. 2001) (concluding that letters sent to generate interest in a device "did not add up to a commercial offer to sell"). So *Pinter*'s definition of seller cannot be used in this case. Nevertheless, the Supreme Court's reasoning in *Pinter* actually supports Amazon. As the Supreme Court explained, the traditional contract law definition of a seller as the person who passes title should govern unless Congress expressly expands that definition. *Pinter*, 486 U.S. at 642. Unlike the Securities Act, Congress did not expressly expand that definition in the Patent Act. So *Pinter* teaches that its ordinary meaning applies and the seller is limited to the party that held and transferred title.

Milo & Gabby also relies on *North American Philips Corp. v. American Vending Sales, Inc.* for its claim that Amazon is liable as a seller under § 271(a) notwithstanding the undisputed fact that Amazon did not transfer title of the pillowcases. (Br. at 24.) In *Philips*, this Court addressed the location in which a sale of an allegedly infringing article took place to determine whether jurisdiction was proper in Illinois. 35 F.3d 1576, 1578–80 (Fed. Cir. 1994). The defendant argued that jurisdiction should only be proper in "the place where legal title passes" instead of the place of contracting or de-

28

livery. *Id.* at 1579. Milo & Gabby excerpts a sentence from this Court's discussion of why it would be inappropriate for jurisdiction to only be proper where title transferred: "Appellees have pointed to no policy that would be furthered by according controlling significance to the passage of legal title here." *Id.* at 1579–80. Milo & Gabby offers no explanation for why this jurisdictional analysis is relevant here. *Philips* answered a question—where a sale took place—that differs from the question raised in this appeal—who was the seller. *Philips* has no relevance here.

This Court should focus on the undisputed facts here through the lens of cases that actually address and discuss the definition of sell in § 271(a). According to those cases, selling requires transferring title to a buyer for a price. All the parties and the district court agreed that Amazon never had title to the pillowcases. For each of these sales, it is undisputed that only the third-party sellers had or transferred title. Therefore, Amazon could not and did not sell the pillowcases.

**C.    Amazon Did Not Sell the Pillowcases Even Under the Three U.C.C. Sections Cited by Milo & Gabby.**

**1.    Amazon Did Not Act as a Consignee for the Third-Party Sellers Under U.C.C. § 9-319.**

Setting aside a passing reference in response to Amazon's motion for summary judgment, Milo & Gabby argues for the first time on appeal that Amazon was the seller of the pillowcases under § 271(a) because it purportedly acted as a consignee. In opposing Amazon's motion for summary judgment, Milo & Gabby mentioned the word "consign" twice without any explanation about why Amazon should be considered a consignee or how that affects the outcome of this case:

> If anything, Amazon's status regarding the infringing products is analogous to that of a "consignee" of the products. And as a consignee, "while the goods are in the possession of [Amazon], [Amazon] is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer."

(A597 (citing Wash. Rev. Code § 62A.9A-319 (codifying U.C.C. § 9-319)).) Without an explanation for this passing reference, the district court did not have an opportunity to analyze this issue. Therefore, this Court should not address Milo & Gabby's consignment argument. *See Cisneros v. UNUM Life Ins. Co. of Am.*, 134 F.3d 939, 948 (9th Cir. 1998) (declining to review an argument mentioned in passing in summary judgment briefing but not fully developed before the district court). Further confirming its waiver, after summary judgment Milo & Gabby did not pursue this argument at trial.

Even if Milo & Gabby had provided the district court with enough to rule on this issue, Milo & Gabby still would not have prevailed. A consignment relationship is just a particular form of an agency relationship. "A true consignment sale is merely an agency coupled with a bailment. . . ." 3A Anderson U.C.C. § 2-326:41 (3d ed. 2015). "Agency is a crucial element of the consignment relationship existing between a principal and a traditional factor; in effect, a consignment is a special kind of agency involving the delivery of goods to one who may be a broker for the purpose of finding a purchaser for the goods." 32 Am. Jur. 2d Factors & Commission Merchants § 5 (2016). Without agency, there can be no consignment.

An "agency relationship generally arises when two parties consent that one shall act under the control of the other." *Multicare Health Sys. v. Maplehurst Bakeries, Inc.*, 265 F. App'x 685, 686 (9th Cir. 2008). In *Multicare Health*, the Ninth Circuit explained that the record did not show that one party acted under the other's control. *Id.* at

686–87. "To the contrary, the contract between [the two parties] explicitly disclaimed the existence of an agency relationship between the two parties." *Id.* at 687.

In this case, Milo & Gabby has never attempted to meet its burden to prove that Amazon acted as an agent for the purpose of finding a purchaser of the pillowcases. *See Atrium of Princeton, LLC v. N.L.R.B.*, 684 F.3d 1310, 1315 (D.C. Cir. 2012) ("[T]he party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence." (quoting Restatement (Third) of Agency § 1.02 cmt. d (2006))); *see also* 3 C.J.S. Agency § 541 ("The party asserting the existence of an agency relationship has the burden of proving the existence, extent, and nature of the relationship, affirmatively, including the burden to prove apparent authority or estoppel, and the scope of authority sought to be imposed.").

Milo & Gabby cannot meet its burden. Like the parties in *Multicare Health*, Amazon and the third-party sellers expressly disclaimed an agency relationship. Every third-party seller agreed to the terms in Amazon's Business Solutions Agreement. (A2140.) That agreement explicitly disclaims the existence of an agency relationship between Amazon and the third-party sellers: "[N]othing in this Agreement will create any partnership, joint venture, agency, franchise, sales representative, or employment relationship between us." (A2727.) Beyond the explicit disclaimer in the Business Solutions Agreement, Amazon did not have the authority to sell the pillowcases on behalf of the third-party sellers. (A2329–30.)

Milo & Gabby's consignment theory also is undermined by the district court's finding that Amazon did not offer to sell the pillowcases. The district court adopted the jury's findings that Amazon did not provide the descriptions of the pillowcases,

set the price of the pillowcases, or set the quantity of pillowcases available. (A2415–16.) The district court also concluded that Amazon did not offer to sell the pillowcases, which implies that the third-party sellers themselves made the offers to sell without Amazon's involvement. (A2415.) Milo & Gabby does not challenge those factual findings, which should now be accepted as true on appeal. *See United States v. Idaho*, 210 F.3d 1067, 1073 (9th Cir. 2000), *aff'd* 533 U.S. 262 (2001) (explaining that when a party does not challenge "underlying factual findings," courts accept those facts as given). Here the unchallenged facts make clear that Amazon did not act as an agent selling products on behalf of the third-party sellers. If Amazon did not offer to sell the pillowcases, then it could not have acted as a consignee charged with selling pillowcases on behalf of the third-party sellers.

Fulfillment by Amazon, which only one seller utilized, does not change that conclusion. Fulfillment by Amazon simply offers third-party sellers a shipping service similar to FedEx. In fact, third-party sellers can use Fulfillment by Amazon to ship products sold on any other website, just like a seller could ship a product with FedEx. (A2164–65.) Imagine a third-party seller taking a product that it sold to a FedEx store to ship to the buyer. A FedEx employee would wrap the product, place it in a FedEx box, and stick a FedEx label to the box. By doing that, FedEx did not become the third-party seller's agent for the purpose of selling the product. The same holds true for Amazon.

Instead of addressing the agency relationship required for a consignment, Milo & Gabby relies on an inapplicable section from U.C.C. Article 9. Article 9 addresses the treatment of certain consignments in the context of secured transactions. U.C.C.

§ 9-101 cmt. 1 ("[Article 9] provides a comprehensive scheme for the regulation of security interests in personal property and fixtures."). Article 9 does not do away with the common law agency requirement. Instead, it defines a specific type of consignment relationship. *See In re Music City RV, LLC*, 304 S.W.3d 806, 809 (Tenn. 2010) ("Revised Article 9, however, does not define 'consignments' so broadly as to include all true consignment transactions. . . ."). In instances where that specific definition is satisfied, consignees (and ultimately their creditors) obtain a security interest in consigned goods superior to that of the consignors who own the goods. U.C.C. § 9-319. The purpose of the limited consignment relationship defined in Article 9 is to "protect general creditors of the consignee from claims of consignors that have undisclosed consignment arrangements with the consignee that create secret liens on the inventory." *Overton v. Art Finance Partners LLC*, No. 15-cv-3927, 2016 WL 413128, at *9 (S.D.N.Y. Feb. 2, 2016). This case does not involve creditor's rights or the application of Article 9. Article 9 provides no guidance about whether Amazon was authorized to sell the pillowcases as an agent of the third-party sellers.

Even if the Court were to look to Article 9, Amazon still would not fit its definition of a consignee. U.C.C. § 9-102 establishes the following definition of consignment so that consigned goods will be property of the consignee's bankruptcy estate if all of these elements are satisfied:

> "Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:
>
> (A) The merchant:
>
> > (i) deals in goods of that kind under a name other than the name of the person making delivery;

(ii) is not an auctioneer; and

(iii) is not generally known by its creditors to be substantially engaged in selling the goods of others;

(B) with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;

(C) the goods are not consumer goods immediately before delivery; and

(D) the transaction does not create a security interest that secures an obligation.

U.C.C. § 9-102 (a)(20). "[T]he burden of proof falls on the party claiming applicability of § 9-102 (a)(2) to show that each element of the definition is satisfied." *Overton*, 2016 WL 413128, at *9. Milo & Gabby did not even attempt to demonstrate the applicability of this definition before the district court. Nor does it do so here.

Setting aside Milo & Gabby's failure to meet its burden, the evidence demonstrates that Article 9's definition of consignment does not apply here. First, only one of the ten third-party sellers—FAC System—used Amazon's fulfillment services. Milo & Gaby does not suggest that the remaining nine third-party sellers ever delivered their pillowcases to Amazon. Second, and more importantly, the definition of consignment in Article 9 requires delivery of goods to the consignee "for the purpose of sale" *by the consignee*. This is clear from the definition itself, which refers to whether the consignee is "substantially engaged in selling the goods of others." U.C.C. § 9-102(a)(20)(A)(iii). The commentary to this section also explains that an intermediate company that merely ships products for the owner is not a consignee: "[I]f a merchant-processor-bailee will not be selling the goods itself but will be delivering to buyers to which the owner-bailor agreed to sell the goods, the transaction would not be a

consignment." U.C.C. § 9-102 cmt. 14. Here the evidence establishes that Amazon was not authorized to sell the pillowcases and that the pillowcases were never delivered to Amazon for sale by Amazon. So Amazon was not a consignee under § 9-102.

In support of its consignment theory, Milo & Gabby also cites *Falk v. Brennan*, 414 U.S. 190 (1973). (Br. at 25.) *Falk* does not address the circumstances giving rise to an agency or consignment relationship, much less support a finding of a such a relationship here. Instead, the case addresses the dollar volume limitation in the Fair Labor Standards Act, which is measured by "annual gross volume of sales made or business done." 414 U.S. 190, 197 (1973). The Court was specifically addressing whether the commissions received by an apartment rental company rather than the total rent collected met the level of annual gross volume of sales made or business done. *Id.* Milo & Gabby quotes two sentences of dicta where the Court explained that a consignment seller "might" be in a position similar to a seller in terms of the amount of business done for the purposes of the Fair Labor Standards Act:

> For example, a consignment seller's gross sales might properly be measured by his gross receipts from sales of the product, even though he did not actually hold title to the product that he sold. Realistically, such a seller is in the business of selling the product that is consigned to him, and he is functionally in a position no different from that of a seller who has purchased the product before resale.

*Id.* at 199. Given that the Court decided *Falk* in the context of the Fair Labor Standards Act and that *Falk* does not address whether a party acted as a consignee, it does not change the conclusion that Amazon did not act as an agent or consignee for the third-party sellers in this case.

### 2.    Amazon Did Not Act as a Person in the Position of the Third-Party Sellers Under U.C.C. § 2-707.

Milo & Gabby's next U.C.C. argument fares no better. To start, § 2-707 does not apply to determining whether Amazon sold the pillowcases for purposes of patent infringement. Section 2-707 falls within a part of the U.C.C. addressing the remedies available to parties when contracts are not fulfilled. "U.C.C. § 2-707 extends to persons regarded as being in the position of the seller certain of the remedies available to the seller." 4A Part I Anderson U.C.C. § 2-707:3 (3d ed. 2015). Section 2-707 does not, however, "create an additional class of defendants who may be held liable" as a seller. *Id.*

Even if § 2-707 somehow did create an additional class of seller liability, Amazon does not qualify as a "person in the position of a seller." A "person in the position of a seller" includes "an agent who has paid or become responsible for the price of goods on behalf of his principal or anyone who otherwise holds a security interest or other right in goods similar to that of a seller." U.C.C. § 2-707(a) . Milo & Gabby argues that Amazon acted as a "person in the position of a seller" under this section by fulfilling and shipping orders for one of the third-party sellers. (Br. at 26−27.)[4] In making its argument, Milo & Gabby truncated this section by omitting the first part of the definition that requires an agency relationship. (Br. at 26−27.) Setting aside Milo &

---

[4] Milo & Gabby also mentions that "Amazon can freely commingle the accused products with its own." (Br. at 26.) Amazon did not commingle the pillowcases at issue in this case because only one third-party seller used Fulfillment by Amazon and Amazon itself did not offer to sell any of the pillowcases. (A2296−97; A2306−10; A2325.) Therefore, there were not multiple sellers whose pillowcases could have been commingled at fulfillment centers.

Gabby's tacit admission that Amazon did not act as an agent for the third-party sellers, Amazon does not meet the second half of the definition either.

Amazon did not have a security interest in or any other right to the pillowcases. (A495–96; A2146; A2163–64.) The jury's finding that Amazon did not offer to sell the pillowcases supports this conclusion. If Amazon did not offer to sell the pillowcases, how could Amazon act in the position of a seller of the pillowcases? By its plain terms, § 2-707 does not apply to Amazon.

### 3.    Amazon Did Not Act as a Seller in a Sale-or-Return Transaction Under U.C.C. § 2-326.

Once again, Milo & Gabby raises a new argument for the first time on appeal that should not be considered by this Court. *See Hillis*, 626 F.3d 1014, 1019 (9th Cir. 2010). Milo & Gabby implies that Amazon acted as a seller in a sale-or-return transaction under U.C.C. § 2-326. (Br. at 27.) Milo & Gabby, however, never mentioned sale-or-return transactions once before the district court. (A594–97.)

Moreover, this case does not involve such a transaction. A sale-or-return transaction "is a sale to a merchant whose unwillingness to buy is overcome only by the seller's engagement to take back the goods (or any commercial unit of goods) in lieu of payment if they fail to be resold." U.C.C. § 2-326 n.1. A sale-or-return transaction deals "with a power given by the contract to turn back the goods even though they are wholly as warranted." *Id.* n.2. In other words, a sale-or-return transaction gives a buyer the right to return the goods for any reason, not just nonconformity of the goods.

For a sale-or-return transaction to occur, a sale must occur—not just a shipment for other purposes. "When a warehouse . . . serves as a distribution center for its customer, there is no sale or return between the customer and the warehouse." 3A Anderson U.C.C. § 2-326:20. For example, in *Walter E. Heller & Co. Se. v. Riviana Foods, Inc.*, a defendant used a warehouse to store and deliver food that it sold to its military customers. 648 F.2d 1059, 1059–60 (5th Cir. 1981). In that case, the court explained that a sale-or-return transaction only occurs "if the goods [ar]e delivered 'for sale.'" *Id.* at 1061. Because the warehouse "had no independent authority to sell defendant's merchandise," no sale-or-return transaction occurred. *Id.* at 1062.

Just like *Heller*, a third-party seller using Fulfillment by Amazon as a distribution center does not create a sale-or-return transaction. The pillowcases sent by a third-party seller to an Amazon fulfillment center were not sold to Amazon. (A492–93; A2163–64.) In addition, Amazon does not have independent authority to sell third-party products delivered to a fulfillment center. (A2164.) Therefore, U.C.C. § 2-326 is inapplicable here and cannot serve as a basis for patent infringement liability for purposes of § 271(a).

Even using Milo & Gabby's proposed definition of sell based on these three U.C.C. sections, Amazon did not sell the pillowcases. If this Court makes it past Milo & Gabby's waiver, Milo & Gabby still cannot prove that Amazon committed direct patent infringement.

## II.    AMAZON IS NOT LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT.

The Copyright Act grants copyright holders a bundle of exclusive rights. *See* 17 U.S.C. § 106. Before the district court, Milo & Gabby focused mainly on its argument that Amazon violated its right to "reproduce the copyrighted work in copies" by posting photographs of the pillowcases on its website. *See id.* § 106(1). Milo & Gabby abandons that argument on appeal and instead claims only that Amazon violated its right to "distribute copies . . . to the public" by shipping the physical pillowcases. *See id.* § 106(3). Milo & Gabby's claim for direct copyright infringement fails under either theory.

### A.    Amazon Did Not Distribute the Pillowcases by Sale.

To be liable for direct copyright infringement, a party must "distribute" copies[5] of the copyrighted work "to the public *by sale* or other transfer of ownership." 17 U.S.C. § 106(3) (emphasis added). In other words, to distribute an allegedly infringing product, one has to sell it. Even Milo & Gabby recognizes that distribution requires a sale. (*See* Br. at 30 ("The Copyright Act defines copyright infringement as a distribution of unauthorized copies of a work *by sale* or other transfer of ownership." (empha-

---

[5] Milo & Gabby claims that "Amazon conceded that the accused products are substantially similar to Milo [and] Gabby's proprietary intellectual property." (Br. at 31.) Once again, Milo & Gabby plays fast and loose with the record in this case. In making this statement, Milo & Gabby cites the parties' joint pretrial order. (Br. at 31 (citing A2425−26).) That filing only pertained to Milo & Gabby's patent infringement claim as that was the only claim going to trial. The filing said nothing about the copyright infringement claim. Amazon has never admitted that Milo & Gabby has valid copyrights or that the pillowcases copied those copyrights.

sis added)).) Like the Patent Act, the Copyright Act does not define "sale," and, thus, it takes its ordinary meaning.

As discussed above, the undisputed evidence shows that Amazon never sold or otherwise transferred ownership of the pillowcases. *See supra* subsections I(B)–(C). Amazon never had title to any of the pillowcases, so Amazon never had an ability to transfer that title through a sale or otherwise. (A492–93; A2163–64.) Only the third-party sellers had title to the pillowcases and the ability to sell them. (A492–93; A2163–64.) Therefore, only the third-party sellers, not Amazon, could have distributed the pillowcases under § 106(3).

Milo & Gabby does not dispute those facts. Instead, Milo & Gabby argues that Amazon stored and shipped some of the pillowcases and that somehow constitutes distributing a work by sale. (Br. at 32–34.) Milo & Gabby does not cite a single case to support its conclusion that storing and shipping a product meets the statutory definition of distribution by sale. Milo & Gabby can find no case to support its argument.

Just like the logical problem with Milo & Gabby's patent infringement argument, this would extend copyright infringement far beyond its current boundaries. Under Milo & Gabby's definition of distribution with no sale requirement, shipping companies like the U.S. Postal Service, UPS, and FedEx could be liable for direct copyright infringement for shipping a product dropped off by a third party. This Court should reject Milo & Gabby's invitation to extend direct copyright infringement to those situations.

### B.    Amazon Did Not Actively Participate in or Directly Cause Any Copying of Images of the Pillowcases.[6]

Not only did Amazon not distribute the pillowcases under § 106(3), but Amazon did not copy images of the pillowcases within the meaning of the Copyright Act. Cases across the country, starting with *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995), have established that a defendant cannot be held liable for direct copyright infringement when the defendant did not actively participate in or directly cause the alleged copying. In *Netcom*, a third-party customer of an Internet service provider ("ISP") posted a copyrighted work that was automatically reproduced by the ISP's computer. *Id.* at 1369–70. The district court refused to impose direct liability on the ISP, reasoning that "[a]lthough copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party." *Id.* at 1370; *see also, e.g.*, *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1199 (N.D. Cal. 2004) (explaining that to be liable for direct copyright infringement, the defendant must both "'actively engage in' and 'directly cause' the copying").

Appellate courts, including the Ninth Circuit, have followed the approach *Netcom* established. In *Fox Broadcasting Co., Inc. v. Dish Network, L.L.C.*,  the Ninth Circuit concluded that the mere fact that Dish Network "operat[ed] a [DVR] system used to make copies at the user's command does not mean that the system operator, rather

---

[6] Milo & Gabby's brief does not expressly argue that Amazon committed direct copyright infringement by copying images of the pillowcases. But given some ambiguous references in Milo & Gabby's brief, (Br. at 14, 31–32), and the evolution of its arguments throughout this case, Amazon includes this explanation of why it did not copy images of the pillowcases out of an abundance of caution.

than the user, caused copies to be made." 747 F.3d 1060, 1067 (9th Cir. 2013). "Infringement of the reproduction right requires copying *by* the defendant, which comprises a requirement that the defendant cause the copying." *Id.* (internal citation omitted); *see also Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 133 (2d Cir. 2008) ("[C]opies produced by [a DVR] system are 'made' by the [DVR] customer, and Cablevision's contribution to this reproduction by providing the system does not warrant the imposition of direct liability."); *Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007) (concluding that Google did not commit direct copyright infringement by automatically copying and archiving an online bulletin board where a third-party had posted copyrighted material); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) ("[T]o establish *direct* liability under . . . the Act, something more must be shown than mere ownership of a machine used by others to make illegal copies.").

Congress even relied on *Netcom* when passing the DMCA, explaining that a party cannot be held liable for direct copyright infringement for passive, automated acts in a technological process initiated by a third party:

> As to direct infringement, liability is ruled out for passive, automatic acts engaged in through a technological process initiated by another. Thus the bill essentially codifies the result in the leading and most thoughtful judicial decision to date: *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995).

H.R. REP. NO. 105–551(I), at 11 (1998).

Amazon did not actively engage in or directly cause any copying of images of the pillowcases. When third-party sellers list products for sale on Amazon, the third-party seller provides the images. (A495, A2144–45.) In this case, the third-party sellers

42

provided all of the images of the pillowcases used in their listings. (A2145.) Amazon did not modify the images that the third-party sellers provided. (A2146.) Instead, software used those images and other information provided by the third-party sellers to automatically create a product-detail page. (A495.) Under *Netcom* and the other cases addressing this issue, Amazon's operation of software that used a third-party seller's inputs to automatically create a product listing does not mean that Amazon itself copied any images of the pillowcases.

### C. The Digital Millennium Copyright Act Safe Harbor Protects Amazon from Copyright Liability for Any Copying of Images of the Pillowcases.

The Court does not even need to address the DMCA safe harbor under 17 U.S.C. § 512(c) given Milo & Gabby's move away from its argument that Amazon committed copyright infringement by displaying images of the pillowcases on its website. If, however, the Court finds that Milo & Gabby has raised that argument on appeal, then the DMCA safe harbor applies.

Congress enacted the DMCA in 1998 to resolve the unique copyright enforcement problems caused by the widespread use of the Internet. *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Tackling these problems required Congress to balance competing interests. On one side, Congress recognized that copyright owners needed a mechanism for addressing potentially infringing conduct in the modern era when "digital works can be copied and distributed worldwide virtually instantaneously." S. REP. NO. 105−190, at 8 (1998). On the other side, Congress needed to provide "greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities." S. REP. NO. 105−190, at 20

(1998); H.R. REP. NO. 105−551(II), at 49−50 (1998). This balancing act resulted in a statute that creates "strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in the digital network environment." H.R. REP. NO. 105−551(II), at 49 (1998).

The DMCA creates a safe harbor to protect ISPs that cooperate in this process from "monetary relief . . . for infringement of copyright." 17 U.S.C. § 512(c). To get protection under the safe harbor, the ISP must first show that it has set up the following general business practices that align with the DMCA:

> (A)    [The ISP] has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and
>
> (B)    accommodates and does not interfere with standard technical measures.

*Id.* § 512(i). If the ISP meets those threshold conditions, then it still must show that it satisfies the following requirements in each specific case:

> (A)    [The ISP] (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing; (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
>
> (B)    does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

> (C)    upon notification of claimed infringement . . . responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

*Id.* § 512(c).

Amazon met all of these conditions. Even though Milo & Gabby did not attempt to engage in the DMCA's process by reaching out to Amazon before filing suit, (A2054, A2176−77), Amazon cooperated fully by removing the pillowcases and the third-party sellers as soon as it received notice of potential copyright infringement, (A2183−84, A150). Based on Amazon's actions, the district court determined that Amazon satisfied each of the DMCA's safe harbor eligibility criteria. (A35−39.)

Milo & Gabby does not attack the district court's analysis of the safe harbor eligibility criteria and its conclusion that Amazon satisfied each of them. (Br. at 36−37.) Instead, Milo & Gabby claims that the district court should not have applied the DMCA safe harbor because it does not "apply to [the] distribution of physical goods." (Br. at 36.) This criticism stems from the evolution of Milo & Gabby's argument. When Milo & Gabby argued in the district court that Amazon committed direct copyright infringement under 17 U.S.C. § 106(1) by displaying images of the pillowcases provided by the third-party sellers on its website, the DMCA safe harbor protected Amazon in its role as an ISP. The district court did not apply that safe harbor to Milo & Gabby's argument about Amazon shipping the physical pillowcases. The district court ruled against Milo & Gabby on that argument for a different reason. (*See* A33.) By abandoning its argument concerning Amazon's display of images provided by third-party sellers, Milo & Gabby should not be able to attack the district court's correct application of the DMCA safe harbor. If Milo & Gabby tries to maintain the

same argument it raised before the district court—that Amazon should be liable for displaying images of the pillowcases provided by the third-party sellers—then the DMCA safe harbor still applies.

## III. AMAZON IS NOT LIABLE FOR A LANHAM ACT PALMING-OFF CLAIM.

Federal Rule of Civil Procedure 8 requires a plaintiff to include a "short and plain statement of the claim" in its complaint. Fed. R. Civ. Proc. 8(a)(2). Although a statement alleging a claim can be "short and plain," it still must be included in the complaint. "Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (internal quotation and citation omitted). Milo & Gabby gave Amazon no fair notice of a Lanham Act palming-off claim, a claim that would fail on the merits in any event.

### A. Milo & Gabby Did Not Plead a Palming-Off Theory in Its Complaint.

Of the seven claims included in Milo & Gabby's complaint, only two alleged violations of the Lanham Act. (A157, A158.) The first Lanham Act claim was for "a false designation of origin." (A157.) The second Lanham Act claim was for trademark counterfeiting. (A158.) Neither of those claims referenced a palming-off theory.

Milo & Gabby never attempted to plead a palming-off claim under the Lanham Act in its complaint even after the district court dismissed both of its Lanham Act claims. The district court dismissed the Lanham Act trademark counterfeiting claim at the motion-to-dismiss stage, finding that Milo & Gabby failed to present plausible fac-

tual support that anyone reproduced Milo & Gabby's registered mark. (A18−19.) The court, however, dismissed this claim "without prejudice" and "with leave to amend." (A20, A22.) Yet, Milo & Gabby did not take that opportunity to amend its complaint. At that point, Milo & Gabby had only one Lanham Act claim remaining, its false designation of origin claim. Amazon challenged that claim in its motion for summary judgment. (A449−54.) In response, Milo & Gabby crafted three theories of Lanham Act violations that had never been raised before in the case. (A588−94.) One of those new theories was the palming-off claim that Milo & Gabby complains about in this appeal. (A588−94.)

Not being able to point to anything in the complaint alleging a palming-off theory, Milo & Gabby resorts to citing its response to Amazon's motion to dismiss describing its state law unfair competition claim. Milo & Gabby claims that it sufficiently pled its Lanham Act palming-off claim by referring to a palming-off claim in this briefing. (Br. at 40−41.) That briefing shows that, if anything, such a palming-off theory only related to Milo & Gabby's state law unfair competition claim: "Palming off is the most classic form of unfair competition." (A262.) The district court granted Amazon's motion to dismiss that unfair competition claim. (A8−12.) Once again, the court dismissed this claim "without prejudice." (A12.) Yet, Milo & Gabby never amended its complaint to try to plead a Lanham Act palming-off claim.

Rule 8 requires plaintiffs to put defendants on fair notice by pleading the claims alleged in a complaint, not in subsequent briefing, to prevent the very conduct that occurred in this case. Milo & Gabby treated the allegations in its complaint as malleable, bending and stretching them to fit its changing needs as the case developed.

When Milo & Gabby lost on one theory, it would attempt to raise a new theory without providing Amazon fair notice. Milo & Gabby continues to employ this strategy even on appeal. Having never raised a palming-off theory under the Lanham Act in its complaint, Milo & Gabby should not get the opportunity to reverse the case it already pursued and lost to try a new approach.

In one last-ditch effort, Milo & Gabby claims that it provided fair notice to Amazon of its palming-off theory because Amazon's counsel had a billing entry totaling less than one hour for researching a Lanham Act palming-off claim. (Br. at 42.) That billing entry does not change the analysis. In a case where Milo & Gabby changed theories on multiple occasions, Amazon should not be faulted for its attorneys' research of the requirements of claims that it theorized Milo & Gabby might attempt to raise. That research did not relate to the claims actually included in Milo & Gabby's complaint. That research did not relieve Milo & Gabby of its burden under Rule 8 to provide fair notice that it intended to pursue such a claim. Milo & Gabby never provided that notice. Therefore, this Court should not allow Milo & Gabby to pursue a Lanham Act palming-off claim.

### B.    Even If Milo & Gabby Had Pled a Palming-Off Theory, the Claim Would Still Fail.

Even rewriting history as Milo & Gabby hopes to do could not revive its flawed Lanham Act claim. To sustain a palming-off theory under the Lanham Act, Milo & Gabby must prove an "unauthorized substitution of the goods of one manufacturer when the goods of another are requested by the customer." *K-S-H Plastics, Inc.*

*v. Carolite, Inc.*, 408 F.2d 54, 59 (9th Cir. 1969). Milo & Gabby cannot carry that burden.

Milo & Gabby has no evidence that Amazon substituted goods made by another party in response to a customer order specifically requesting Milo & Gabby pillowcases. In fact, the undisputed evidence shows the opposite. All of the product-detail pages for the pillowcases identified a third party other than Milo & Gabby as the manufacturer of the product. (A2479–91, A2513–36.) The product-detail pages stated, for example, "by Cute Pillowcase" or "by Monaqo." (A2479–91, A2513–36.) None of those pages identified Milo & Gabby as the seller or manufacturer. (A2479–91, A2513–36.) None of those pages even included the words Milo & Gabby. (A2479–91, A2513–36.) So no evidence suggests that any customer requested a Milo & Gabby pillowcase. Nor is there any evidence that suggests Amazon intentionally substituted pillowcases manufactured or sold by third parties in response to a request for Milo & Gabby pillowcases. This provides yet another reason for this Court to affirm the district court's dismissal of Milo & Gabby's Lanham Act claim.

## IV.    THE ATTORNEY-FEE AWARD IS NOT RIPE FOR REVIEW.

At the end of its brief, Milo & Gabby seeks reversal of the district court's attorney-fee award without any citation or explanation of the context for that ruling. The full context shows that, although the district court properly determined that Amazon is entitled to fees and costs,[7] that decision is not yet ripe for this Court's review.

---

[7] Contrary to the impression left by Milo & Gabby's paragraph on this issue, (Br. at 43), the district court awarded attorney fees due to conduct that reached beyond Milo & Gabby's attempt to assert a Lanham Act palming-off claim. Among other things, the district court noted that Milo & Gabby pled a trademark counterfeiting

This Court has held that a district court order granting sanctions or attorney fees "is a separate order which is not final and appealable until the district court has decided the amount of sanctions." *Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1358 (Fed. Cir. 2012); *see also Falana v. Kent State Univ.*, 669 F.3d 1349, 1359–62 (Fed. Cir. 2012). For example, in *Falana*, a defendant tried to appeal a final district court decision on inventorship as well as a non-final award of unquantified attorney fees. 669 F.3d at 1359–60. Although the Court reviewed the decision on inventorship, the Court refused to exercise pendent jurisdiction over the unquantified attorney-fee award. *Id.* at 1359–62. The Court explained that "[t]his rule prevents piecemeal appeals involving . . . a first appeal to contest the exceptional finding *per se*, and a second appeal to contest the amount of the attorney fees." *Id.* at 1360 (internal citation and quotation marks omitted). Although *Falana* dealt with attorney fees awarded under the Patent Act, the same reasoning applies to the attorney fees awarded by the district court in this case under the Lanham Act. *Compare* 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."), *with* 15 U.S.C.

---

claim with nothing more than a "formulaic recitation of the elements establishing liability." (A61.) Then when Milo & Gabby could not support its remaining Lanham Act claim with evidence of an enforceable mark, Milo & Gabby raised three unpleaded theories of Lanham Act liability in summary-judgment briefing. (*See* A63 ("In this case, Plaintiffs essentially pursued a claim for which they had no evidentiary basis, and then attempted to circumvent that problem by improperly raising legal arguments never pled in the Complaint.").) Finally, Milo & Gabby ignored the district court's dismissal of its Lanham Act claim and stated that it would continue to pursue the dismissed Lanham Act claim in the case. (A64.) All of this conduct taken together shows that the district court did not abuse its discretion in awarding attorney fees. *See Boney*, 127 F.3d at 825.

§ 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").

In this case, the district court has not yet entered an order determining the amount of attorney fees that Milo & Gabby must pay. In granting Amazon's motion for fees, the district court requested additional briefing with documentation supporting the requested fees. (A64.) After the parties provided that briefing, the Court ordered Amazon to submit a new calculation of the fees deducting certain amounts. (A76.) Amazon provided that recalculation. (A1648–51.) The district court, however, has not yet ruled on the final amount to be awarded. Therefore, the district court's order granting attorney fees is not yet ripe for this Court's review under *Orenshteyn* and *Falana*. While reversing the order granting attorney fees could potentially eliminate a second appeal, affirming the order could result in a separate appeal concerning the amount of fees. Therefore, the Court should not address Milo & Gabby's argument concerning the district court's order granting attorney fees.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

This Court should affirm the district court's rulings on Milo & Gabby's direct patent infringement, direct copyright infringement, and Lanham Act claims. First, Milo & Gabby failed to show that Amazon committed direct patent infringement, even under its new sell theory. Second, Milo & Gabby failed to prove that Amazon committed direct copyright infringement, because Amazon did not distribute the pillowcases by sale. Third, this Court should not allow Milo & Gabby to pursue an unpleaded palming-off claim under the Lanham Act, a claim that fails on the merits in any

event. Finally, the Court should refuse to review the district court's non-final attorney-fee award.

April 21, 2016                                  Respectfully submitted,

                                                 /s/  John M. Hughes
                                                John M. Hughes
                                                Katherine L.I. Hacker
                                                Joseph W. Doman
                                                BARTLIT BECK HERMAN
                                                  PALENCHAR & SCOTT LLP
                                                1899 Wynkoop Street, 8th Floor
                                                Denver, CO 80202
                                                Tel: (303) 592-3100
                                                Fax: (303) 592-3140
                                                john.hughes@bartlit-beck.com
                                                kat.hacker@bartlit-beck.com
                                                daniel.taylor@bartlit-beck.com

                                                Counsel for Defendant-Appellee
                                                  AMAZON.COM, INC.

**PROOF OF SERVICE**

I hereby certify that on April 21, 2016, I electronically filed the foregoing Response Brief of Defendant-Appellee Amazon with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users. I further certify that the foregoing was served via electronic mail upon the following:

Philip P. Mann
Timothy J. Billick
MANN LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, Washington 98101
(206) 436-0900
phil@mannlawgroup.com
tim@mannlawgroup.com

John Whitaker
WHITAKER LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, Washington 98101
(206) 436-8500
john@wlawgrp.com

*Counsel for Plaintiff-Appellant*

*/s/ John M. Hughes*
John M. Hughes
Counsel for Defendant-Appellee
    AMAZON.COM, INC.

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 13,635 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word version 2016 in 14-point, Garamond font.


April 21, 2016                                   */s/ John M. Hughes*
                                                 John M. Hughes
                                                 Counsel for Defendant-Appellee
                                                   AMAZON.COM, INC.