No. 16-1290

IN THE

# United States Court of Appeals for the Federal Circuit

MILO & GABBY LLC AND KAREN KELLER,

*Plaintiffs-Appellants*,

*v.*

AMAZON.COM, INC.,

*Defendant-Appellee*,

DA FANG SUN, AKA SETH L, CHONGQIN WORLD FIRST
ELECTRONIC COMMERCE CO., LTD., AKA WOTEFUSI, T. LIU, AKA
BINGO DEAL, FAC SYSTEM, AKA FAC SYSTEM LLC, DINGDING ZOU,
AKA HAPPY SUNDAY, QIUMEI ZHANG, AKA HITECE, CHARLOTTE
XIA, NIMBLE JOY, AMANIALARASHI2165, MONAQO,

*Defendants*,

On Appeal from the United States District Court
for the Western District of Washington
No. 2:13-cv-01932-RSM
Hon. Ricardo S. Martinez

**BRIEF OF EBAY INC. AS *AMICUS
CURIAE* IN SUPPORT OF APPELLEE
AMAZON.COM, INC. AND AFFIRMANCE**

Mark P. Wine
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
(949) 567-6700

Matthew H. Poppe
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
(650) 614-7400

*Counsel for Amicus Curiae eBay Inc.*

## CERTIFICATE OF INTEREST

CERTIFICATE OF INTEREST

Counsel for Amicus Curiae certifies the following:

1.  We represent eBay Inc.

2.  That is the real name of the real party in interest.

3.  eBay Inc. has no parent corporations and no publicly held company owns 10 percent or more of its stock.

4.  The following law firm and partners or associates who are expected to appear in this Court are:

ORRICK, HERRINGTON & SUTCLIFFE LLP

Mark P. Wine, Matthew H. Poppe


Date:  April 28, 2016              ORRICK, HERRINGTON & SUTCLIFFE LLP

                                   */s/ Mark P. Wine*
                                   *Counsel for Amicus Curiae eBay Inc.*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ...................................................... i

TABLE OF AUTHORITIES ......................................................... iv

INTEREST OF THE *AMICUS CURIAE* ............................................ 1

INTRODUCTION .................................................................. 3

ARGUMENT ...................................................................... 5

I.     An Online Marketplace Operator Does Not Itself "Sell" Goods That Are Listed by Third Parties, Since It Never Has Title to Those Goods. ................................................. 5

II.    Public Policy Supports Not Holding Online Marketplace Operators Such as Amazon and eBay Liable as Direct Infringers When Their Users Sell Infringing Goods. ............................................................ 7

     A.    The Courts and Congress Have Immunized Online Platform Providers from Claims for Direct Copyright Infringement Based on the Conduct of Their Users. ........................................................ 7

     B.    Online Platform Providers Are Also Protected from Liability Based on User Conduct in Other Areas of Intellectual Property Law and Beyond. ....... 10

III.   The Policies That Have Led Courts and Congress to Exempt Providers of Online Services from Liability in Other Areas of Law Apply Even More Strongly in the Context of Claims for Direct Patent Infringement. ............ 12

     A.    Holding Online Platform Providers Liable for Direct Patent Infringement Based on User Conduct Would Have the Same or Worse Negative Consequences as in Other Areas of Law ..... 12

B.    Forcing Online Marketplaces to Remove Listings
of Allegedly Infringing Products Would
Effectively Grant Patent Owners Preliminary
Injunctive Relief Without Having to Satisfy the
Applicable Standard................................................... 16

CONCLUSION ...................................................................................... 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALS Scan, Inc. v. RemarQ Cmtys., Inc.*,
   239 F.3d 619 (4th Cir. 2001) ............................................................ 8, 9

*Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*,
   908 F.2d 951 (Fed. Cir. 1990) ............................................................ 15

*CoStar Grp. Inc. v. LoopNet, Inc.*,
   164 F. Supp. 2d 688 (D. Md. 2001) ...................................................... 8

*Gentry v. eBay Inc.*,
   121 Cal. Rptr. 2d 703 (Cal. Ct. App. 2002).................................... 6, 11

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011).................................................................... 12, 14

*Hendrickson v. eBay Inc.*,
   165 F. Supp. 2d 1082 (C.D. Cal. 2001) ........................................ 11, 13

*Inman v. Technicolor USA, Inc.*,
   No. 2:11-cv-666-DSC, 2011 WL 5829024 (W.D. Pa.
   Nov. 18, 2011) .................................................................................. 6

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   985 F. Supp. 949 (C.D. Cal. 1997) ................................................ 15, 16

*Marobie-Fl, Inc. v. Nat'l Ass'n of Fire and Equip. Distribs.*,
   983 F. Supp. 1167 (N.D. Ill. 1997)........................................................ 8

*Mondo Polymers Techs., Inc. v. Monroeville Indus.
   Moldings, Inc.*,
   No. 2:07-cv-1054, 2009 WL 3698432
   (S.D. Ohio Nov. 3, 2009) ................................................................... 15

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995)....................................... 7, 8, 12, 14

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.*,
  No. 31063/94, 1995 WL 323710
  (N.Y. Sup. Ct. May 24, 1995) ............................................................. 10

*Zeran v. America Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) .................................................. 10, 13, 17

## Statutes

17 U.S.C. § 512 .................................................................................... 4, 9

17 U.S.C. § 512(b)(2)(E) ........................................................................... 9

17 U.S.C. § 512(g) ................................................................................... 9

17 U.S.C. § 512(g)(2) ............................................................................. 17

17 U.S.C. § 512(g)(4) ............................................................................. 17

35 U.S.C. § 271 ........................................................................ 3, 15, 17, 18

35 U.S.C. § 271(a) ................................................................................... 1

47 U.S.C. § 230 .......................................................................... 4, 10, 11

## Other Authorities

H.R. Rep. No. 105-551(I) (1998) ................................................................. 9

8 Donald S. Chisum, *Chisum on Patents* § 23.05[2] (2014) .................... 15

Mark Lemley and Carl Shapiro, *Patent Holdup and Royalty
  Stacking*, 85 Tex. L. Rev. 1991 (2007) .................................................. 13

Mike Masnick, *There Are 250,000 Active Patents That
  Impact Smartphones; Representing One In Six Active
  Patents Today* (2012), http://tinyurl.com/glurgjs .............................. 13

USPTO Patent Full-Text and Image Database,
Class 604/358, http://tinyurl.com/orwy26y ....................….............. 14

# INTEREST OF THE *AMICUS CURIAE*[1]

Amicus eBay Inc. is a technology company that operates an online marketplace on which millions of users can list products using eBay's automated product listing system.  Through eBay's platform, sellers of goods of all sorts—home wares, tech gadgets, clothing and more—reach over 162 million active buyers all over the world.  There are currently around 800 million active product listings on eBay.

This case presents a question of enormous practical importance: namely whether, under 35 U.S.C. § 271(a), a marketplace operator such as eBay or Amazon "sells" each of the goods listed on its website such that the marketplace operator is liable any time one of those goods infringes a patent.  eBay submits this brief to express its strong agreement with, and provide additional legal support for, the district court's conclusion that Amazon does not "sell" third-party-listed goods

---

[1] The parties have consented to the filing of this brief.  Pursuant to Federal Rule of Appellate Procedure 29(c)(5), Amicus eBay Inc. states that no counsel for any party authored this brief in whole or in part; no party or counsel for any party contributed money that was intended to fund preparing or submitting this brief; and no person other than eBay Inc. and its counsel contributed money that was intended to fund preparing or submitting this brief.

for purposes of § 271(a).  Reversing that ruling would have significant ramifications for eBay and its users.

eBay takes seriously the intellectual property rights of others.  For example, eBay has a program that allows rights owners to bring intellectual property violations to eBay's attention, and it has spent millions of dollars in its effort to remove counterfeit listings that infringe trademarks and copyrights.  However, patents are different. Any of the hundreds of millions of products listed on eBay may incorporate thousands of patented inventions.  Patent analysis is legally complex and uncertain and requires technical acumen in the field of the invention.  Absent a prior court order adjudicating that a listed product infringes, it is not feasible for an online marketplace operator to police its site for patent infringement.  The rule advocated by Appellants would expose companies like eBay to an unreasonable level of liability and effectively hand patent owners unilateral power to demand the takedown of any product they claim infringes their patents, whether that claim is legitimate or not.  As eBay and its users would suffer under such a rule, eBay has a substantial interest in the question presented here.

# INTRODUCTION

This appeal presents the narrow question of whether a company like Amazon or eBay, merely by providing an online marketplace that enables millions of users to exchange goods with each other through an automated product listing system, can be considered a seller of all of the listed goods such that it is liable under 35 U.S.C. § 271 whenever any of those goods purportedly infringes a patent.

Amazon's brief answers that question in the negative, supported by a straightforward legal analysis regarding the meaning of "sells" in Section 271.  eBay fully agrees with that analysis.

The district court, in addressing the related question of whether Amazon "offers to sell" listed goods and finding that Amazon does not do so, said it was "troubled" by that outcome and felt it was an instance of "the law lag[ging] behind technology."  A100.  eBay submits this *amicus* brief to address that concern and explain that, to the contrary, holding that Amazon is not liable for direct patent infringement with respect to goods listed on its site by third party users is consistent with prevailing public policy regarding online marketplaces.  Indeed, when courts found online platform providers liable in other areas of law for the activities of

third parties on their platforms, Congress concluded *they* were out of step with technology and supplanted those decisions with laws like the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512 (1998), and the Communications Decency Act (CDA), 47 U.S.C. § 230 (1996), that immunized online providers, among other things.

As courts and Congress have recognized, to do otherwise would place an undue burden on companies that let third parties access and post content on the Internet and would create perverse incentives detrimental to all Internet users.  In the context of online marketplaces, holding companies like Amazon and eBay liable as sellers would force them to defend against patent claims involving products they likely have never possessed and technologies they do not understand.  Given the cost and difficulty of construing patents claiming unfamiliar technology and applying them to unfamiliar products, it also would incentivize online marketplace operators to respond to all notices of infringement by immediately removing listings of the accused products, whether or not the allegations have merit.[2]  In effect, patentees thus

---

[2] As discussed in Section III, *infra*, this task would be much more challenging and present different concerns than in the copyright and trademark contexts.

4

would be afforded the benefits of a preliminary injunction without having to make the requisite showing. The marketplace would shrink with likely adverse effects on competition, prices, and consumer choice. There would be an enormous potential for abuse, and all users of online marketplaces—sellers and buyers alike—would suffer.

The present case does not illustrate these dangers well, since Amazon does not dispute that the accused products infringe Appellants' design patent. However, the Court's ruling on what the term "sell" encompasses will apply equally in cases involving disputed design patents and even to utility patents covering complex technologies like semiconductors, mobile phones, and medical devices. Imposing liability would have far-reaching negative effects. eBay therefore urges the Court to affirm the judgment and rule that Amazon did not "sell" the accused products.

## ARGUMENT

## I. An Online Marketplace Operator Does Not Itself "Sell" Goods That Are Listed by Third Parties, Since It Never Has Title to Those Goods.

Amazon's brief explains that it does not "sell" the goods listed by third parties on its online marketplace because it does not transfer title

of those goods to buyers.  Rather, title passes directly from third-party sellers to buyers, using Amazon merely to connect with each other and (in one transaction out of the ten at issue in this case) to ship the goods. Resp. Br. at 25-38.

eBay agrees with Amazon's analysis and will not repeat it.  eBay merely notes that while it appears this question has never been addressed for purposes of the Patent Act, courts have ruled in other contexts that online marketplace operators are not sellers of the goods listed on their sites by third parties.  *See, e.g.*, *Inman v. Technicolor USA, Inc.*, No. 2:11-cv-666-DSC, 2011 WL 5829024, *5-7 (W.D. Pa. Nov. 18, 2011) (holding that eBay was not a "seller" for purposes of assigning strict liability for alleged product defects under Pennsylvania law); *Gentry v. eBay Inc.*, 121 Cal. Rptr. 2d 703, 711 (Cal. Ct. App. 2002) (holding eBay not liable under a California statute relating to the sale of collectibles because "eBay is not in the business of selling or offering to sell the collectibles at issue; rather, it is the individual defendants who sold the items to plaintiffs, using eBay as a venue").

## II.    Public Policy Supports Not Holding Online Marketplace Operators Such as Amazon and eBay Liable as Direct Infringers When Their Users Sell Infringing Goods.

The district court's misgivings about finding Amazon not liable for direct patent infringement, *see* A100, were misplaced.  In fact, that result is fully in accord with established public policy.

### A.    The Courts and Congress Have Immunized Online Platform Providers from Claims for Direct Copyright Infringement Based on the Conduct of Their Users.

In the early days of the Internet, courts were divided on whether online platforms and service providers should be liable when their users posted infringing or other wrongful content.  The day was won by the seminal case of *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995) ("*Netcom*").  There, copyright infringement claims were filed against an online billboard service and an internet access provider based on a user's unauthorized posting of copyrighted material.  *Id.* at 1364.  The court found the defendants not liable because, like Amazon here, they "[did] not create or control the content of the information available to [their] subscribers; [they] merely provide[d] *access.*"  *Id.* at 1372 (emphasis added); *compare* A32 (concluding that Amazon "does not have the right and ability to control

7

the infringing material"). Stated differently, the defendants had not *caused* the unlawful copying by offering a system that "acts without any human intervention beyond the initial setting up of the system." *Netcom*, 907 F. Supp. at 1368-69. Direct copyright infringement requires "some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party." *Id.* at 1370. The defendants thus could be liable, if at all, only for contributory copyright infringement.[3] *Id.* at 1369, 1373.

*Netcom* heavily influenced subsequent court decisions. *See, e.g.*, *ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 621-22 (4th Cir. 2001) ("we find the *Netcom* court reasoning more persuasive" than the contrary view); *CoStar Grp. Inc. v. LoopNet, Inc.*, 164 F. Supp. 2d 688, 694-96 (D. Md. 2001) ("the *Netcom* approach is more persuasive"), *aff'd*, 373 F.3d 544 (4th Cir. 2004); *Marobie-Fl, Inc. v. Nat'l Ass'n of Fire and Equip. Distribs.*, 983 F. Supp. 1167, 1176-79 (N.D. Ill. 1997) (relying on

---

[3] The district court granted Amazon's motion to strike Appellants' allegations of indirect patent infringement. A5-23. Appellants do not challenge that ruling on appeal. Therefore, eBay does not address whether operators of online marketplaces should be liable for indirect patent infringement when their users list infringing goods except to note that similar claims have been narrowly circumscribed in copyright and trademark law. *See infra* at 14 n.6.

*Netcom* to find an internet service provider not liable for direct

copyright infringement).

Even more impactfully, Congress codified *Netcom*'s principles in

Title II of the Digital Millennium Copyright Act (DMCA), Pub. L. No.

105-304, tit. II, § 202(a), 112 Stat. 2877 (codified at 17 U.S.C. § 512

(1998)).  The DMCA's legislative history expressly recognizes that the

Act "essentially codifies the result in the leading and most thoughtful

judicial decision to date," namely *Netcom*, and "overrules" contrary

authority.  H.R. Rep. No. 105-551(I), at 11 (1998); *see also ALS Scan,*

*Inc.*, 239 F.3d at 622 (recognizing "Congress' codification of the *Netcom*

principles in Title II of the DMCA").  The effect was that, "[a]s to direct

infringement, liability is ruled out for passive, automatic acts engaged

in through a technological process initiated by another."  H.R. Rep. No.

105-551(I), at 11; *see* 17 U.S.C. § 512.[4]

---

[4] The DMCA "distinguishes between direct infringement and secondary
liability, treating each separately."  H.R. Rep. No. 105-551(I), at 11.  It
did not completely eliminate the possibility that online providers could
be secondarily liable for copyright infringement, but it erected a notice-
and-takedown procedure to allow them to avoid such liability.  *See, e.g.,*
17 U.S.C. § 512(b)(2)(E), (g).  Once again, no claims of indirect patent
infringement are at issue in this appeal, so eBay does not address the
extent to which that procedure or the policies that underlie it can or
should be applied in the patent context.

**B.    Online Platform Providers Are Also Protected from Liability Based on User Conduct in Other Areas of Intellectual Property Law and Beyond.**

The principles of *Netcom* have been extended beyond the realm of copyright.  For example, Congress granted providers of internet services broad immunity from liability arising from content supplied by their users when it passed the Communications Decency Act, Pub. L. No. 104-104, § 509, 110 Stat. 56 (codified at 47 U.S.C. § 230 (1996)).  Section 230, which provides that "no provider or user of an interactive service shall be treated as the publisher or speaker of any information provided by another information content provider," was in part a reaction to a 1995 decision that held service providers liable as "publishers" when they assumed an editorial role with respect to third-party provided information.  *See Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997) (citing *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995)).  Congress' purpose in providing this immunity was to "maintain the robust nature of Internet communication" by ensuring that service providers—the backbone of the internet—did not curtail access under the pressure of crushing liability.  *Id*. at 330.  The protections of the CDA apply to

online marketplace operators. *See, e.g., Gentry*, 121 Cal. Rptr. 2d at 711 (upholding eBay's immunity under § 230 of the CDA from liability for not posting a warranty of authenticity for items on its site that proved to be counterfeit).

Immunity from liability has also been recognized in the context of trademark infringement. For example, in *Hendrickson v. eBay Inc.*, 165 F. Supp. 2d 1082 (C.D. Cal. 2001), the court held that "eBay has no affirmative duty to monitor its own website for potential trade dress violation" and would not be liable for damages based on third parties' posting of allegedly infringing content on eBay's website without eBay's knowledge. *Id*. at 1095. eBay also would not be enjoined from allowing violations to occur: "such an injunction would effectively require eBay to monitor the millions of new advertisements posted on its website each day and determine, on its own, which of those advertisements infringe Plaintiff's Lanham Act rights." *Id*. The court found no legal authority for such a burdensome requirement.

The public policy underlying the above legislative acts and court rulings equally supports the judgment below that Amazon is not liable for patent infringement as an alleged "seller" of goods listed by its

users.  Indeed, as discussed in the following section, the policy applies

even more strongly in the patent context.  To prevail against operators

of online marketplaces based on goods listed for sale on their sites by

third parties, patentees should have to satisfy the strict requirements of

a claim for induced infringement.  *See Global-Tech Appliances, Inc. v.

SEB S.A.*, 563 U.S. 754,764-66 (2011) (to be liable for induced

infringement, the defendant must have known that the induced acts

would constitute patent infringement).

## III.  The Policies That Have Led Courts and Congress to Exempt Providers of Online Services from Liability in Other Areas of Law Apply Even More Strongly in the Context of Claims for Direct Patent Infringement.

### A.  Holding Online Platform Providers Liable for Direct Patent Infringement Based on User Conduct Would Have the Same or Worse Negative Consequences as in Other Areas of Law.

As explained above, providers of online platforms and services are

not liable as direct infringers or wrongdoers when their users engage in

unlawful conduct on their websites.  This immunity is justified by (1)

the lack of causation between a provider's mere act of creating a website

that provides automated services to the public and customers' use of the

website to violate the rights of others, *Netcom*, 907 F. Supp. at 1368-69;

(2) a provider's inability, as a practical matter, to monitor the millions of transactions that occur on its website, *Hendrickson*, 165 F. Supp. 2d at 1095[5]; and (3) the harmful effects widespread liability would have on online providers and their users, *Zeran*, 129 F.3d at 330-31.

These concerns apply equally—indeed, more so—to an online marketplace operator accused of patent infringement. The customers of Amazon and eBay list hundreds of millions of products for sale on their websites. A2128-29. A single product may embody literally thousands of patented inventions, many of which relate to a product's internal operations that cannot be evaluated based on the information in an online product listing. *See, e.g.,* Mark Lemley and Carl Shapiro, *Patent Holdup and Royalty Stacking*, 85 Tex. L. Rev. 1991, 1991-92, 2027 (2007); Mike Masnick, *There Are 250,000 Active Patents That Impact Smartphones; Representing One In Six Active Patents Today* (2012), http://tinyurl.com/glurgjs. Even a seemingly low-tech product like a diaper has generated over a thousand U.S. patents, most with multiple

---

[5] Similarly, the district court noted below that "[i]t is undisputed that 'Amazon lacks the ability to analyze every image it receives from third party sellers, compare the submitted image to all other copyrighted images that exist in the world, and determine whether each submitted image infringes someone's copyright interest.'" A32.

claims.  *See* USPTO Patent Full-Text and Image Database,

http://tinyurl.com/orwy26y (last visited April 27, 2016) (collecting 1,114

patents in classification 604/358, which covers diapers and similar

devices).

Patent infringement would thus require much more monitoring

and analysis to detect than other types of infringement.  Indeed, the

task would be so enormous as to be impossible given the complexity of

patent analysis, the frequently uncertain meaning and scope of patent

claims, online marketplace operators' unfamiliarity with most of the

technologies embodied in listed products, and the fact that, in the vast

majority of cases, companies like Amazon and eBay never possess the

listed goods.[6]

---

[6] Not only do these complexities argue in favor of immunizing online
marketplace operators from liability for direct patent infringement,
they should also render futile most claims for indirect infringement
since they make it impossible to know whether listed products actually
infringe a given patent.  *See Global-Tech*, 563 U.S. at 764-66 (describing
the knowledge requirement).  Even claims for copyright and trademark
infringement are deemed too complex in most cases for secondary
liability to be imposed on online providers.  *See, e.g.*, *Netcom*, 907 F.
Supp. at 1374 ("Where a [billboard] operator cannot reasonably verify a
claim of infringement, either because of a possible fair-use defense, the
lack of copyright notices on the copies, or the copyright holder's failure
to provide the necessary documentation to show that there is a likely
infringement, the operator's lack of knowledge will be found reasonable

While the patents at issue here are design patents that do not involve complex technology, determining whether an item infringes a design patent can still be challenging.[7] Moreover, the term "sells" in 35 U.S.C. § 271 must be given the same meaning for design patents and utility patents alike. Thus, a ruling in this case that Amazon was a seller of the accused pillowcases would mean that online marketplace operators likely would be deemed the sellers of *all* products listed on

---

and there will be no liability for contributory infringement for allowing the continued distribution of the works on its system."); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 964 (C.D. Cal. 1997) ("the degree of uncertainty over infringing uses of domain names makes it inappropriate to impose contributory [trademark] liability on" a domain name registry), *aff'd*, 194 F.3d 980 (9th Cir. 1999).

[7] For example, design patents may raise such difficult issues as whether a design is ornamental or functional, whether an "ordinary observer" would consider two designs to be "substantially the same," and whether a patented design on a certain type of article is infringed by use of the design on a different type of article. *See, e.g.*, *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 954 (Fed. Cir. 1990) (the distinction between ornamental and functional "is a complex issue and one that continues to be the subject of considerable judicial attention"); *Mondo Polymers Techs., Inc. v. Monroeville Indus. Moldings, Inc.*, No. 2:07-cv-1054, 2009 WL 3698432, *3 (S.D. Ohio Nov. 3, 2009) (in an "ordinary observer" infringement inquiry, "there are multiple potential tracks that the relevant analysis might take"); 8 Donald S. Chisum, *Chisum on Patents* § 23.05[2], at 23-186 (2014) ("Whether a patent on the design on a certain article of manufacture is infringed by use of the identical design on a different article is a long-standing problem that has never been satisfactorily resolved.").

their websites, including any products accused of infringing complex

utility patents.

### B. Forcing Online Marketplaces to Remove Listings of Allegedly Infringing Products Would Effectively Grant Patent Owners Preliminary Injunctive Relief Without Having to Satisfy the Applicable Standard.

A likely consequence of such a ruling would be that operators of

online marketplaces would respond to every notice of alleged patent

infringement by removing the corresponding listings from their sites,

regardless of whether the listed products actually infringe, in order to

reduce their risk of liability.  Every notice of infringement thus would

effectively operate as a preliminary injunction against the user who

listed the item for sale, without any showing that the patentee would be

likely to prevail on an infringement claim or suffer irreparable harm if

the listing remained.  *Cf. Lockheed Martin Corp.*, 985 F. Supp. at 965

("Such an expansion of contributory liability would give Lockheed a

right in gross to control all uses of [the trademarked term] in domain

names.").  Patentees—especially unscrupulous patent trolls—would be

given unfair leverage in licensing negotiations and would have an

incentive to abuse the notice process.  Competitors could accuse each

other's products of infringement, resulting in entire classes of products

becoming unavailable through online marketplaces until litigation resolves the disputes.  Consumers would suffer most of all.  Such reductions of Internet commerce and communication are exactly the results that Congress and the courts have sought to avoid.  *See, e.g., Zeran*, 129 F.3d at 330 (observing that the DMCA was enacted, in part, "to maintain the robust nature of Internet communication").

Although Congress implemented a notice-and-takedown procedure in the DMCA, it also gave alleged infringers the right to have their content restored by providing an appropriate notice to the online service provider.  17 U.S.C. § 512(g)(2).  The service provider can comply with the notice without liability to the copyright owner.  *Id*. § 512(g)(4).  The dispute then becomes one between the copyright owner and the alleged infringer.  No such statutory safe harbor exists in patent law, however, so an online marketplace operator treated as a seller would have to choose between removing listed items accused of patent infringement and risking patent infringement liability.

Considering these practicalities leads to the same conclusion as reviewing the language of 35 U.S.C. § 271, Congressional enactments like the DMCA and CDA, and court decisions related to copyrights and

other areas of law:  online marketplace operators like Amazon and eBay should not be deemed sellers of the items listed by third parties on their websites and they should not otherwise be held liable for direct patent infringement based on those listings.

## CONCLUSION

For the reasons stated above, eBay respectfully requests that the Court affirm the judgment below that Amazon did not "sell" the accused products and thus is not liable for patent infringement.  Contrary to the concerns expressed by the district court below, the result dictated by the plain language of 35 U.S.C. § 271 is not contrary to public policy.

Respectfully submitted,

*/s/ Mark P. Wine*
Mark P. Wine
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
(949) 567-6700

Matthew H. Poppe
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
(650) 614-7400

*Counsel for Amicus Curiae eBay Inc.*

April 28, 2016

18

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 3820 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/Mark. P. Wine*
*Counsel for Amicus Curiae eBay Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on April 28, 2016.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Mark P. Wine*
*Counsel for Amicus Curiae eBay Inc.*